# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>Deborah S. Hunt<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  June 02, 2015

Mr. Joshua J. Bond
Hodges, Doughty & Carson
617 Main Street
Knoxville, TN 37902

Mr. Kenneth S. Schrupp
Mr. Samuel Joseph Welborn
Smith, Cashion & Orr
231 Third Avenue, N.
Nashville, TN 37201

Mr. James Kidwell Scott
Stokes, Williams, Sharp & Davies
P.O. Box 2644
Knoxville, TN 37901

Re:  Case No. 14-6207, *Greg Adkisson, et al v. Jacobs Engineering Group, Inc*
Originating Case Nos. : 3:13-cv-00505 ; 3:13-cv-00666 ; 3:14-cv-00020

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Debra Poplin

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GREG ADKISSON et al.,

*Plaintiffs-Appellants,*

*v.*

No. 14-6207

JACOBS ENGINEERING GROUP, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
Nos. 3:13-cv-00505; 3:13-cv-00666; 3:14-cv-00020—Thomas A. Varlan, Chief District Judge.

Argued:  April 29, 2015

Decided and Filed:  June 2, 2015

Before: GILMAN, ROGERS, and SUTTON, Circuit Judges.

───────────────

### COUNSEL

**ARGUED:**  James K. Scott, STOKES, WILLIAMS, SHARP & DAVIES, Knoxville, Tennessee, for Adkisson Appellants.   Joshua J. Bond, HODGES, DOUGHTY & CARSON, Knoxville, Tennessee, for the Thomas and Smith Appellants.  S. Joseph Welborn, SMITH, CASHION & ORR, PLC, Nashville, Tennessee, for Appellee.  **ON BRIEF:**  James K. Scott, STOKES, WILLIAMS, SHARP & DAVIES, Knoxville, Tennessee, Joshua J. Bond, HODGES, DOUGHTY & CARSON, Knoxville, Tennessee, for Appellants.  S. Joseph Welborn, SMITH, CASHION & ORR, PLC, Nashville, Tennessee, for Appellee.

───────────────

### OPINION

───────────────

RONALD LEE GILMAN, Circuit Judge.  This case arises out of the cleanup and remediation work that Jacobs Engineering Group, Inc. (Jacobs) performed at the Kingston Fossil

Fuel Plant (KIF plant) following a December 2008 coal-ash spill.  Jacobs managed the on-site work pursuant to a contract with the Tennessee Valley Authority (TVA), which owns and operates the KIF plant.

Individuals who worked on the coal-ash cleanup, along with some of their spouses (collectively, the Plaintiffs), filed three separate lawsuits against Jacobs, claiming that the workers suffered negative health impacts as a result of Jacobs's failure to monitor the fly ash (which is the finer particles of coal ash), to protect the workers from the fly ash, and to disclose the fly ash's toxic nature.  The district court dismissed all of the Plaintiffs' claims based on a lack of subject-matter jurisdiction, concluding that Jacobs was entitled to government-contractor immunity as a corollary of the discretionary-function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2674, 2680.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.    TVA and the coal-ash spill

TVA is a corporate agency and instrumentality of the United States, created by and existing pursuant to the Tennessee Valley Authority Act of 1933.  16 U.S.C. § 831 *et seq.*; *see also Tenn. Valley Auth. v. Kinzer*, 142 F.2d 833, 837 (6th Cir. 1944).  The KIF plant is a coal-fired plant generating electricity in Roane County, Tennessee.  A byproduct of burning coal for the generation of electricity is coal ash.  On December 22, 2008, a coal-ash containment dike at the KIF plant failed, spilling approximately 5.4 million cubic yards of coal-ash sludge over 300 acres of adjacent land.  *Chesney v. Tenn. Valley Auth.*, 782 F. Supp. 2d 570, 571-73 (E.D. Tenn. 2011).

TVA and the Environmental Protection Agency (EPA) responded to the coal-ash spill as required by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) and the EPA's National Oil and Hazardous Substances Pollution Contingency Plan.  *See Mays v. Tenn. Valley Auth.*, 699 F. Supp. 2d 991, 998 (E.D. Tenn. 2010).  During this initial emergency-response phase, the EPA delegated its authority to TVA to remove the coal ash.  *Id.* (citing 42 U.S.C. §§ 9604(a)-(b); *id.* § 9615; 40 C.F.R. § 300.5).  TVA has been the lead

agency authority for all further coal-ash cleanup, removal, and remediation since the EPA terminated the initial emergency-response phase on January 11, 2009.  *Id.*

**B.      Jacobs's contract with TVA**

In February 2009, Jacobs entered into a contract with TVA to serve as the prime contractor providing project planning, management, and oversight to assist in the overall recovery and remediation associated with the coal-ash spill.  Jacobs, pursuant to its contract, subsequently prepared and provided to TVA a comprehensive Site Wide Safety and Health Plan (SWSHP).  The SWSHP applies to all general construction activities at the site, as well as to CERCLA remediation activities in accordance with the EPA's Standard Operating Safety Guide and 29 C.F.R. § 1910.120, which governs hazardous-waste operations and emergency response.

A wide range of topics is addressed in the SWSHP, including the site's potential hazards, health-hazard monitoring, and training.  The SWSHP also sets forth the minimum personal protective equipment (PPE) required for workers, as well as a protocol for site controls, work zones, and personal hygiene.  Additional protection, such as a respirator, is mentioned in the SWSHP as a possibility that might be required at times, depending on the type of work being performed (e.g., tasks with the highest potential exposure to fly ash).

**C.      Three lawsuits**

The Plaintiffs are individuals who worked on the remediation of the coal-ash spill at the KIF Plant, plus some of their spouses.  Greg Adkisson, along with 48 other individuals, filed suit against Jacobs in the United States District Court for the Eastern District of Tennessee in August 2013, alleging claims of outrageous conduct, battery, negligence, negligence per se, intentional and/or reckless failure to warn, reckless infliction of emotional distress, fraud, misrepresentation and fraudulent concealment, and strict liability for ultrahazardous or abnormally dangerous activity.  *See Adkisson et al. v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505.  The Plaintiffs allege that Jacobs improperly monitored the fly ash; inadequately trained the workers about the hazards associated with inhaling toxic fly ash; inadequately monitored their medical conditions; denied their requests for respirators, dust masks, and PPE; exposed them to high concentrations of fly-ash toxic constituents; and fraudulently concealed and denied that they had been so exposed.

No. 14-6207          *Adkisson et al. v. Jacobs Eng'g Grp., Inc.*          Page 4

Alleging "eye problems, sinus problems, pulmonary problems, heart problems and other health-related problems" from their work on site, the Plaintiffs seek compensatory and punitive damages.

In November 2013, Kevin Thompson, Joy Thompson, and Shaun Travis Smith filed a substantially similar suit against Jacobs in the same jurisdiction. *See Thompson et al. v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-666. Joe and Taylor Cunningham then sued Jacobs on the same grounds in January 2014, also in the Eastern District of Tennessee. *See Cunningham et al. v. Jacobs Eng'g Grp., Inc.*, No. 3:14-CV-20. Jacobs moved to dismiss all three actions for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the first motion being filed in November 2013 and the latter two in February 2014.

In July 2014, the magistrate judge who was assigned to the case granted a motion by the *Thompson* plaintiffs to consolidate the three cases, with *Adkisson*, as the first to be filed, serving as the lead case. Two months later, the district court granted Jacobs's Rule 12(b)(1) motion to dismiss all of the Plaintiffs' claims for lack of subject-matter jurisdiction based on Jacobs's eligibility for government-contractor immunity as a corollary of the discretionary-function exception to the FTCA. This timely appeal followed.

## II. ANALYSIS

### A.    The Plaintiffs' case should not have been dismissed for lack of subject-matter jurisdiction

All of the Plaintiffs' claims were dismissed under Rule 12(b)(1) because the district court concluded that Jacobs is immune from suit based on so-called "derivative discretionary-function immunity." In so doing, the court relied heavily on its prior opinion in *Chesney v. Tennessee Valley Authority*, 782 F. Supp. 2d 570 (E.D. Tenn. 2011). The court in *Chesney* ruled that engineering contractors working for TVA on the same coal-ash spill were entitled to derivative immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), under the discretionary-function doctrine. *Chesney*, 782 F. Supp. 2d at 586. It dismissed the complaint on jurisdictional grounds based on its conclusion that *Yearsley* entitles government contractors to sovereign immunity. *Id.* Because we conclude that *Yearsley* immunity is not jurisdictional in nature, the district court here erred in dismissing the Plaintiffs' complaints on that basis.

### 1.  *Government-contractor immunity under* Yearsley

If Jacobs is eligible for any sort of immunity, it is derivative of the immunity that the federal government would be entitled to in the same situation.  The United States, as a sovereign entity, is immune from suit unless it consents to be sued.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  Under the FTCA, the United States has waived its sovereign immunity to tort suits, but with certain exceptions. 28 U.S.C. § 2674.  One of those exceptions is for discretionary functions, meaning that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  *Id.* § 2680(a).  TVA, as a federal agency, is a beneficiary of the FTCA's discretionary-function exemption.  *Id.* § 2671 ("[T]he term 'Federal agency' includes . . . corporations primarily acting as instrumentalities or agencies of the United States . . . ."); *see also id.* § 2674 (entitling TVA to assert the same defenses to tort claims as the United States, based on judicial or legislative immunity).

On the other hand, the FTCA explicitly excludes independent contractors from its scope. *See id.* § 2671 ("[T]he term 'Federal agency' . . . does not include any contractor with the United States.").  But Jacobs argues—and the district court held—that Jacobs is nevertheless entitled to derivative sovereign immunity for discretionary functions based on *Yearsley*.  In *Yearsley*, the Supreme Court held that a contractor who built river dikes pursuant to a contract with the U.S. government, as authorized by Congress, could not be held liable for a Fifth Amendment taking when the contractor was simply an agent acting under its validly conferred authority.  309 U.S. at 21-22.  *Yearsley* thus stands for the proposition that "if [the contractor's] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will."  *Id.* at 20-21. Unfortunately, the Court never explained the basis of that protection.

Over the years, other circuits have recognized the concept of immunity for government contractors based on *Yearsley*.  *See In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 343 (4th Cir. 2014) (recognizing *Yearsley* immunity for "contractors and common law agents acting within the

scope of their employment for the United States"); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 206-207 (5th Cir. 2009) (upholding the district court's dismissal of a case involving a public-works project where the "plaintiffs did not allege that the contractor defendant 'exceeded his authority or that it was not validly conferred'" (quoting *Yearsley*, 309 U.S. at 21)); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963) ("To the extent that the work performed by [the contractor] was done under its contract with the Bureau of Public Lands, and in conformity with the terms of said contract, no liability can be imposed upon it for any damages claimed to have been suffered by the appellants.").

*Yearsley*'s spare reasoning, however, creates uncertainty as to the scope of the decision. One circuit that previously endorsed the doctrine now questions whether it sweeps as far as its language purports to reach.  *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879-80 (9th Cir. 2014), *cert. granted*, No. 14-857, 2015 WL 246885 (U.S. May 18, 2015) (commenting in dicta that *Yearsley* is limited to "claims arising out of property damage caused by public works projects").  And the Supreme Court has cast *Yearsley* in terms of preemption, explaining that the "'uniquely federal' interest" in the performance of government contracts justified displacing state-law liability.  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 505-06 (1988).

If *Yearsley* really does stretch as broadly as its language suggests, the Supreme Court in *Boyle* would presumably not have invented a new test to govern the liability of military procurement contractors; it could have simply cited *Yearsley* and called it a day.  But we need not resolve the thorny questions these developments present.  Because the Plaintiffs do not challenge *Yearsley*'s applicability on appeal, we will assume without deciding that Jacobs benefits from *Yearsley*'s protection on *Yearsley*'s terms.  *See* 309 U.S. at 20–21.

## 2.  **Yearsley** *immunity is not jurisdictional in nature*

Even assuming *Yearsley*'s applicability, however, we face a question of first impression in this circuit:  does *Yearsley* immunity pose a jurisdictional bar?  The Fourth Circuit has held, albeit without elaboration, that the bar is indeed jurisdictional.  In *Butters v. Vance International, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000), the court characterized *Yearsley* as derivatively extending sovereign immunity to a private contractor.  More recently, the Fourth Circuit in *In re KBR* repeatedly referred to *Yearsley* immunity as "derivative sovereign immunity" and, although

it vacated the district court's dismissal, did not take issue with the lower court's review of the case for lack of subject-matter jurisdiction under Rule 12(b)(1). *In re KBR*, 744 F.3d at 345-46.

The Fifth Circuit, however, has explicitly reached the opposite conclusion. That court first acknowledged that "[i]f the basis for dismissing a *Yearsley* claim is sovereign immunity, then a *Yearsley* defense would be jurisdictional." *Ackerson*, 589 F.3d at 207. But because "*Yearsley* does not discuss sovereign immunity or otherwise address the court's power to hear the case," the Fifth Circuit held that "concluding Yearsley is applicable does not deny the court of subject-matter jurisdiction." *Id.* at 207-08.

We agree with the Fifth Circuit's conclusion that *Yearsley* is not jurisdictional in nature. Although the FTCA is a jurisdictional statute, *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012), Jacobs's potential immunity derives not from the FTCA but from *Yearsley*, which the Fifth Circuit correctly notes does not address sovereign immunity. *Yearsley* immunity is, in our opinion, closer in nature to qualified immunity for private individuals under government contract, which is an issue to be reviewed on the merits rather than for jurisdiction. *See Filarsky v. Delia*, 132 S. Ct. 1657, 1665-68 (2012) (holding that a private attorney retained by the municipal government is entitled to the same qualified immunity from suit under 42 U.S.C. § 1983 that city employees enjoy because immunity for such individuals protects the "government's ability to perform its traditional functions" and helps "ensur[e] that talented candidates are not deterred from public service").

**B.    The district court should have considered Jacobs's motion to dismiss for failure to state a claim**

Because of our conclusion that *Yearsley* immunity is not jurisdictional, Jacobs's motion to dismiss should have been considered under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, not under Rule 12(b)(1) for lack of subject-matter jurisdiction. Although we are permitted to *sua sponte* consider Jacobs's motion under the Rule 12(b)(6) standard, we should do so only if the district court's analysis did not depend on the distinction between the two standards. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (declining to remand the case and proceeding to consider the petitioners' allegations under the Rule 12(b)(6) standard because "nothing in the analysis of the courts below turned on

the mistake" of using the Rule 12(b)(1) standard). But we cannot be sure that the erroneously applied Rule 12(b)(1) standard here had no effect on the district court's analysis.

When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, as Jacobs's motion did, the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists. *See Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). On the other hand, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014).

### 1. *Is Jacobs entitled to* Yearsley *immunity?*

The district court below stated that "[n]one of the allegations of any of the complaints alleges that defendant exceeded any scope of authority granted to it by TVA, nor that any authority TVA granted to defendant was not validly conferred," suggesting that it could have dismissed on that basis alone. Although this conclusion would seemingly be unaffected by using the Rule 12(b)(1) standard versus the Rule 12(b)(6) standard (because the ruling deals solely with the Plaintiffs' allegations), we have no way to be sure because the district court did not elaborate on its conclusion. We thus do not know if the court looked outside the pleadings in concluding that the allegations were insufficient on this issue.

Moreover, we do not necessarily agree with the district court's conclusion when analyzed under the Rule 12(b)(6) standard. Although the Plaintiffs do not allege that Jacobs's contract with TVA was invalid, they claim on appeal that Jacobs "acted outside the scope of TVA's quasi-governmental authority and did not comply with Federal and State laws or regulations," and that Jacobs "acted in a manner that was converse to statutory authorization and TVA's contractual directives." (Emphasis omitted.)

The Plaintiffs' complaints, although admittedly less clear in this regard, could plausibly be construed as alleging that Jacobs violated the scope of its agreement with TVA. For example, the complaint in *Adkisson* contends that Jacobs, despite its duties under its contract with TVA, misrepresented the harmfulness of fly ash. But because the differences between the standards

used to assess a Rule 12(b)(1) motion versus a Rule 12(b)(6) motion may have affected the district court's conclusion on this issue, we leave it to the district court to consider in the first instance whether Jacobs is eligible for *Yearsley* immunity under the Rule 12(b)(6) standard.

### 2. Does Jacobs's conduct fall under the discretionary-function exception?

Even if the district court determines that Jacobs is eligible for *Yearsley* immunity, Jacobs's exemption from liability will depend on whether its specific conduct at issue would fall under the corollary of the discretionary-function exception of the FTCA. Because the court made numerous references to documents outside of the pleadings in discussing the application of the discretionary-function exception, the Rule 12(b)(1) standard almost certainly affected its analysis here. We therefore remand the case for the district court to consider in the first instance whether Jacobs's conduct qualifies for the exception under the narrower Rule 12(b)(6) standard, and write further solely to clarify the scope of conduct to which the discretionary-function exception potentially applies.

A two-part test governs whether conduct is protected by the discretionary-function exception. First, the conduct must be discretionary, meaning that "it involves an element of judgment or choice." *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Jacobs therefore remains subject to tort liability if its course of action was nondiscretionary, or "specifically prescribe[d]." *See id.* In addition to being discretionary, the conduct must also be of the type that the discretionary-function exception was designed to shield. *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997) (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). "[W]here there is room for policy judgment and decision, there is discretion of the sort protected by Section 2680(a)." *Id.* (citing *Dalehite v. United States*, 346 U.S. 15, 36 (1953)).

The district court, in holding that the discretionary-function exception applied, found that various regulations, contractual provisions, and the SWSHP all failed to prescribe a specific course of action that Jacobs had to follow. But just because certain conduct fails to be specifically mandated does not necessarily mean that the government contractor is protected from liability. Discretionary conduct may fall outside the protection of the discretionary-function exception if the conduct is not a "deliberate or necessary result of a discretionary general policy"; in other words, government conduct "does not necessarily amount to an exercise

of a discretionary function merely because carrying out the general policy provided the opportunity for the negligent act." *Bultema v. United States*, 359 F.3d 379, 383-85 (6th Cir. 2004) (holding that the prison staff's alleged failure to carry out the prison's bunk-pass-notification policy was not protected by the discretionary-function exception because, even if the policy allowed for discretion, the staff's alleged negligence was "not a necessary concomitant of the prison's notification policy").

Even clearly discretionary conduct is thus not necessarily protected by the discretionary-function exception. Assume, for example, that a Jacobs employee negligently injured a third party while driving toward the KIF plant with a truckload full of safety equipment. Or that the employee, while removing coal ash from the spill site, negligently caused that coal ash to fall from the truck. Jacobs's counsel conceded at oral argument that in neither scenario would Jacobs be exempt from tort liability, despite the decidedly discretionary conduct involved.

The distinction between these two examples and, say, deciding what PPE on-site workers should wear, stems from the second part of the test for the discretionary-function exception, in that the exception was arguably designed to protect decisions regarding the health and safety of those working on post-spill cleanup at the KIF plant. Such "[d]ecisions concerning the proper response to hazards are protected from tort liability by the discretionary function exception." *See Rosebush*, 119 F.3d at 443-44 (holding that the National Forest Service's decisions "to have open fire pits, [regarding] the design of the pits, whether to enclose them within railings, and whether to warn of their dangers" fall within the discretionary-function exception, which precluded claims for related personal injuries). On the other hand, Congress expressly wanted to exclude "ordinary common-law torts" from falling under the exception. *Dalehite*, 346 U.S. at 28 (discussing § 2680(a)'s legislative history and Congress's express desire to waive immunity for tort liability such as "negligence in the operation of vehicles").

In sum, we leave it to the district court on remand to decide in the first instance whether the Plaintiffs have failed to state a claim under Rule 12(b)(6). The court specifically should consider whether, based on the pleadings, (1) Jacobs is eligible for government-contractor immunity under *Yearsley*, and (2) Jacobs's conduct would fall under the corollary of the discretionary-function exception to the FTCA.

No. 14-6207          *Adkisson et al. v. Jacobs Eng'g Grp., Inc.*                    Page 11

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 14-6207

GREG ADKISSON et al.,

> Plaintiffs - Appellants,

v.

JACOBS ENGINEERING GROUP, INC.,

> Defendant - Appellee.

```
┌─────────────────────────────┐
│            FILED            │
│        Jun 02, 2015         │
│    DEBORAH S. HUNT, Clerk   │
└─────────────────────────────┘
```

Before: GILMAN, ROGERS, and SUTTON, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk