# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| GREG ADKISSON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.    3:13-CV-505-TAV-HBG |
| | ) | **JURY DEMANDED** |
| JACOBS ENGINEERING GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| KEVIN THOMPSON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.    3:13-CV-666-TAV-HBG |
| | ) | |
| JACOBS ENGINEERING GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| JOE CUNNINGHAM, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.    3:14-CV-20-TAV-HBG |
| | ) | |
| JACOBS ENGINEERING GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |

---

## AMENDED COMPLAINT

---

Come now Plaintiffs, by and through counsel, as a matter of right and pursuant to the

Order entered by this Court on or about April 14, 2016, to hereby bring their Amended

Complaint and incorporate all previous allegations consistent with this Complaint by reference

1

verbatim. This action is for personal injuries from toxic fly ash exposure. Plaintiffs allege upon personal knowledge, information and belief as to the acts as follows:

## THE PARTIES

1.     Plaintiff Greg Adkisson is an individual and a citizen of the state of Tennessee. He currently resides at 1087 Fairview Road, Harriman, Tennessee 37748.

2.     Plaintiff Donna Adkisson is an individual and a citizen of the state of Tennessee. She currently resides at 1087 Fairview Road, Harriman, Tennessee 37748.

3.     Plaintiff Leonard Ronald Bledsoe is an individual and a citizen of the state of Tennessee. He currently resides at 4713 Macmont Circle, Powell, Tennessee 37849.

4.     Plaintiff Julie Bledsoe is an individual and a citizen of the state of Tennessee. She currently resides at 4713 Macmont Circle, Powell, Tennessee 37849.

5.     Plaintiff Carl Booker is an individual and a citizen of the state of Tennessee. He currently resides at 170 Bower Hollow Road, Luttrell, Tennessee 37779.

6.     Plaintiff Karen Booker is an individual and a citizen of the state of Tennessee. She currently resides at 170 Bower Hollow Road, Luttrell, Tennessee 37779.

7.     Plaintiff Jeffery Brewer is an individual and a citizen of the state of Tennessee. He currently resides at 946 Russell Gap Road, New Market, Tennessee 37820.

8.     Plaintiff Tammy Brewer is an individual and a citizen of the state of Tennessee. She currently resides at 946 Russell Gap Road, New Market, Tennessee 37820.

9.     Plaintiff Ansol Clark is an individual and is citizen of the state of Tennessee. He currently resides at 1201 Andes Road, Knoxville, Tennessee 37931

10.    Plaintiff Anna Clark is an individual and a citizen of the state of Tennessee.  She currently resides at 1201 Andes Road, Knoxville, Tennessee 37931.

11.    Plaintiff Dan Cody is an individual and a citizen of the state of Tennessee. He currently resides at 281 North Rushy Spring Road, Talbott, Tennessee 37877.

12.    Plaintiff Elaine Cody is an individual and a citizen of the state of Tennessee. She currently resides at 281 North Rushy Spring Road, Talbott, Tennessee 37877.

13.    Plaintiff John D. Cox, Jr. is an individual and a citizen of the state of Tennessee. He currently resides at 8657 Foust Hollow Road, Knoxville, Tennessee 37938.

14.    Plaintiff Philip Crick is an individual and a citizen of the state of Tennessee. He currently resides at 4926 McIntyre Road, Knoxville, Tennessee 37914.

15.    Plaintiff Brenda Crick is an individual and a citizen of the state of Tennessee. She currently resides at 4926 McIntyre Road, Knoxville, Tennessee 37914.

16.    Plaintiff Joe Cunningham is an individual and a citizen of the state of Tennessee. He currently resides at 254 Twinview Drive, Spring City, Tennessee 37381.

17.    Plaintiff Taylor Cunningham is an individual and a citizen of the state of Tennessee.  She currently resides at 254 Twinview Drive, Spring City, Tennessee 37381.

18.    Plaintiff Enoch Roy Edmonds is an individual and a citizen of the state of Tennessee. He currently resides at 755 Eagle Furnace Road, Rockwood, Tennessee 37804.

19.    Plaintiff Brenda Edmonds is an individual and a citizen of the state of Tennessee. She currently resides at 755 Eagle Furnace Road, Rockwood, Tennessee 37804.

20.    Plaintiff Billy Gibson is an individual and is a citizen of the state of Tennessee. He currently resides at P.O. Box 568, Huntsville, Tennessee 37756.

21.    Plaintiff Timothy D. Gibson is an individual and a citizen of the state of Tennessee. He currently resides at 418 Water Oak Drive, Seymour, Tennessee 37865-3412.

3

22. Plaintiff Rebecca Gibson is an individual and a citizen of the state of Tennessee. She currently resides at 418 Water Oak Drive, Seymour, Tennessee 37865-3412.

23. Plaintiff William Hedgecoth is an individual and a citizen of the state of Tennessee. He currently resides at 712 Old Roane Street, Apt. 7B, Harriman, Tennessee 37748.

24. Plaintiff Stan Hill is an individual and a citizen of the state of Tennessee. He currently resides at 408 Depot Street, Luttrell, Tennessee 37779.

25. Plaintiff Billy Isley is an individual and a citizen of the state of Tennessee. He currently resides at 160 Cove Hollow Road, LaFollette, Tennessee 37766.

26. Plaintiff David Johnson is an individual and a citizen of the state of Tennessee. He currently resides at 687 Robinson Drive, Lenoir City, Tennessee 37772.

27. Plaintiff Robert Johnson is an individual and a citizen of the state of Tennessee. He currently resides at 130 Big Springs Lane, Unit 1, Jacksboro, Tennessee 37757.

28. Plaintiff Christina Johnson is an individual and a citizen of the state of Tennessee. She currently resides at 130 Big Springs Lane, Unit 1, Jacksboro, Tennessee 37757.

29. Plaintiff David Jones is an individual and a citizen of the state of Tennessee. He currently resides at 202 Walden Avenue, Harriman, Tennessee 37748.

30. Plaintiff Jimmy Kilby is an individual and a citizen of the state of Tennessee. He currently resides at P.O. Box 277, Oakdale, Tennessee 37829.

31. Plaintiff Gail Kilby is an individual and a citizen of the state of Tennessee. She currently resides at P.O. Box 277, Oakdale, Tennessee 37829.

32. Plaintiff Clint Mannis is an individual and a citizen of the state of Tennessee. He

4

currently resides at 820 Sanders Road, Knoxville, Tennessee 37923.

33. Plaintiff Margaret Mannis is an individual and a citizen of the state of Tennessee. She currently resides at 820 Sanders Road, Knoxville, Tennessee 37923.

34. Plaintiff Michael J. McCarthy is an individual and a citizen of the state of Tennessee. He currently resides at 7625 Crestland Road, Knoxville, Tennessee 37938.

35. Plaintiff Nicholas Perry is an individual and a citizen of the state of Tennessee. He currently resides at 160 Bird Road, Lenoir City, Tennessee 37771.

36. Plaintiff Joe Pursiful is an individual and a citizen of the state of Tennessee. He currently resides at 318 Harless Road, Corryton, Tennessee 37721.

37. Plaintiff Brenda Pursiful is an individual and a citizen of the state of Tennessee. She currently resides at 318 Harless Road, Corryton, Tennessee 37721.

38. Plaintiff Ralph Ramey is an individual and a citizen of the state of Tennessee. He currently resides at 861 Loudon Highway, Kingston, Tennessee 37763.

39. Plaintiff Timothy Smallridge is an individual and a citizen of the state of Tennessee. He currently resides at 108 Carnegie Drive, Oak Ridge, Tennessee 37830.

40. Plaintiff Brian Summers is an individual and a citizen of the state of Tennessee. He currently resides at 501 Edwards Lane, Rockwood, Tennessee 37854.

41. Plaintiff Robert Tedder is an individual and a citizen of the state of Tennessee. He currently resides at 3050 Fairview Road, Madisonville, Tennessee 37354.

42. Plaintiff Brian Thacker is an individual and a citizen of the state of Tennessee. He currently resides at 132 Fox Lane, Clinton, Tennessee 37716.

43. Plaintiff Ange Thacker is an individual and a citizen of the state of Tennessee. She

5

currently resides at 132 Fox Lane, Clinton, Tennessee 37716.

44.     Plaintiff Michael Watkins is an individual and a citizen of the state of Tennessee. He currently resides at 589 Kyker Circle, Seymour, Tennessee 37865.

45.     Plaintiff Jason Williams is an individual and a citizen of the state of Tennessee. He currently resides at 122 Poplar Springs Road, Apt. A, Kingston, Tennessee 37763.

46.     Plaintiff Tina Williams is an individual and a citizen of the state of Tennessee. She currently resides at 122 Poplar Springs Road, Apt. A, Kingston, Tennessee 37763.

47.     Defendant, Jacobs Engineering Group, Inc., is a foreign corporation with its principal place of business in Pasadena, California. Jacobs was licensed to do business, and was and is doing business, in the state of Tennessee, Roane County and elsewhere and is directly liable for all actions contained herein. Jacobs Engineering Group, Inc. may be served through its registered agent for process, CT Corporation System, Suite 2021, 800 South Gay Street, Knoxville, Tennessee 37929-9710.

## STATEMENT OF CASE

48.     This is a civil action for personal injury involving the contraction and development of illnesses resulting from continuous, unlawful exposure to arsenic, the neurotoxin mercury, barium, strontium, thallium, lead, silica-quartz, asbestos, radioactive material, selenium, aluminum oxide, iron oxide, calcium oxide, boron and other hazardous substances associated with the toxic fly ash located at the Tennessee Valley Authority ("TVA") Superfund cleanup site ("the Site") at Kingston, Tennessee. At the Site, Jacobs Engineering Group, Inc. ("Jacobs") did not carry out its validly conferred authority as an "independent contractor" but, through its recklessly unsupervised agents, acted contrary to and outside its scope of contractual

6

authority and directives in fact and law granted from TVA as an "independent contractor".
Further, Jacobs negligently did not execute the will, purpose and scope of any governmental
function by negligently and recklessly failing to supervise or failing to manage managerial
employees, and in so doing, recklessly caused this wrongful conduct that recklessly caused
Plaintiffs to develop illnesses, some of which are fatal. Further, Jacobs's acts of reckless
supervision were outside the scope of any governmental purpose in law, policy and contract to
TVA and the rate payers that funded Jacobs's contract.

## JURISDICTION AND VENUE

49.     All actions complained of herein arose in Roane County, Tennessee where the
toxic cleanup and Plaintiffs' exposure occurred. Therefore, this Court has venue and jurisdiction
over the claims based upon Tennessee law with jurisdiction based upon complete diversity.

## GENERAL ALLEGATIONS

### The Site

50.     As stated, the events described herein took place primarily at the TVA KIF
cleanup site in Kingston, Roane County, Tennessee where a remediation of TVA's "ash spill"
from underlying commercial power activity occurred and was ongoing in nature. Jacobs was
contracted as the "independent safety contractor" by TVA to provide a safe environment for all
workers at the KIF toxic spill remediation-site, including other individual independent
contractors and Plaintiffs, who performed toxic fly and bottom ash remediation. At all times
material herein, Jacobs recklessly and/or negligently acted outside the scope of direction and
authority conferred by TVA and contrary to its adopted undertaken duties under its Site Wide
Safety and Health Plan (SWSHP) created as an "independent contractor" to provide safety
oversight for TVA's remediating subcontractors. Jacobs was explicitly an "independent

7

contractor" for all purposes of the term of its contract with TVA. While being a truly outside "independent contractor", Jacobs was still instructed to act in accordance with certain contract directives and laws herein referenced in the following provisions of this Amended Complaint, but instead it recklessly acted outside the scope of the contract, of quasi governmental purpose, of any human decency and its obligations to workers, TVA and the ratepayers that funded the contract.

The Contract required independent safety contractor Jacobs to comply with all laws and regulations and other directives from TVA. At all times material herein, Jacobs also recklessly deviated from its scope of authority and the purpose for use of its adopted duties as established in its SWSHP. However, the breaches of duty were so egregiously outside the scope of any quasi governmental purpose that they went far beyond the factual scope of violating the undertaken duties of its SWSHP. Importantly, individuals at the KIF remediation-site and adjoining landowners were dependent upon Jacobs and its safety managers to act in good faith regarding safety, but Jacobs did not. Further, Jacobs recklessly failed to educate, train and supervise the managerial employees who acted outside any humane duty and quasi governmental scope by committing the acts herein.

51.     TVA, a quasi governmental entity that has a right to be sued pursuant to 16 U.S.C. § 831c(b), had entered into prime contracts with several companies, including Jacobs. Jacobs undertook the duty to ensure site safety and, upon information and belief, the contracts with Jacobs greatly exceeded forty million dollars ($40,000,000.00). Jacobs promised and undertook a contractual duty through adopting a Site Wide Safety and Health Plan in part to appropriately provide safety equipment, training and education relevant to the cleanup of environmental contamination/remediation, properly monitor the air and other clean up

8

responsibilities for the benefit of Plaintiffs, other workers, contractors, independent contractors, Roane County, Tennessee and TVA. Under the contract, the defendant's job was to protect the taxpaying citizens of Roane County, workers at the Site and the general area in order to restore portions of property damaged by the Kingston (KIF) ash spill resulting from its private, imperfect, commercial power operations. Further, Jacobs was independently contracted to provide safety equipment, training, education and to be responsible for site safety for TVA's other subcontractors and all other employees/independent contractors performing remediation work at the Site.

The Contract states:

> Contractor *shall* be an independent Contractor for all purposes of this contract … .

> Contractor **shall comply with Federal, State, and local laws (including regulations)** affecting performance of its obligations under this contract and will indemnify and defend TVA from all liability resulting from its violation of such laws, regardless of whether TVA and Contractor are determined to be joint employers or co-employers. Contractor is responsible for ensuring compliance, including compliance by its subcontractors, with applicable compensation laws, rules, and regulations such as Fair Labor Standards Act. (Ex: A).

AND

TVA expects its contractors to protect workers from conditions that are unnecessarily dangerous to human health.

> A.    Purpose: TVA believes that Safety and Health is its most important value and all injuries and most illnesses, both on and off the job, are preventable. TVA is a zero injury culture company and expects its contractors and their sub-contractors to be committed to a zero injury work culture environment. In other words, occupational accidents or other incidents in which human health or safety is jeopardized are never acceptable.

9

B.     Standards: Contractor will be proactive in taking necessary measures to avoid accidents or incidents which human health or safety is jeopardized. **Contractor shall not permit** any person employed by it or any subcontractor in the performance of work pursuant to this Contract at a project or worksite owned or controlled by TVA to work in surroundings or under working conditions which are unnecessarily dangerous to human safety or health.

In the event of conflict between OSHA regulations and the TVA requirements, the more stringent, i.e., the more protective of occupational health and safety, shall apply.

Importantly, as a part of the contract, *Jacobs was to keep a record of and report occupational diseases* in accordance with the contract and 29 C.F.R. pt. 1904. Based upon deposition testimony in a companion state case and numerous workers' statements, if the diseases were reported due to unsafe conditions, Jacobs could lose money under the contract, employees could lose bonuses and cessation of the multimillion dollar contract could occur in its entirety. As a result, Jacobs's on-site employees intimidated, fired and threatened employees reporting occupational diseases and health problems from the fly ash as correlated in Jacobs's own literature.

Additionally, the on-site safety manager prohibited workers use of proper safety equipment, physicians' prescriptions for safety equipment and appropriate protective gear for economic gain based upon deposition testimony and numerous workers' statements. Another component of the contract indicated Jacobs was to communicate with the TVA public relations department. Jacobs did not properly disseminate information due to economic gain. The improperly supervised managerial employees further prohibited requested or prescribed safety gear, including simple respiratory protection, because they were afraid the general public seeing these items being worn would stimulate more property related lawsuits and jeopardize economic gain under the contract from TVA ratepayers due to this safety responsibility. This allegation is

10

based upon deposition testimony, numerous workers' statements and is outside the scope and purpose of the quasi governmental contract, law and human decency.

52.    All actions described herein were tortuously committed upon Plaintiffs by Jacobs and its employees/agents including, but not limited to, Tom Bock, Chris Ike and others for their mutual economic benefit. Their actions were outside the contracted scope and knowledge of TVA as these improperly supervised individuals did not comply with law, permitted and created inherently dangerous conditions and violated directives in above-referenced ¶ 51.

53.    Despite Jacobs's duties under this multi-million dollar agreement with TVA, Jacobs, through its improperly trained and supervised employees/agents, acted outside the scope of TVA and exceeded its quasi federal authorization by stating to independent contractors, workers for other employers and others at the Site, TVA, and the Roane County citizens that the Superfund remediation would be conducted in a safe manner and erred in favor of timeliness of completion for money instead of safety as directed. Jacobs, through its deviation from TVA's specifications, negligently promoted a lack of environmental supervisory capacity and it caused and benefited from the reckless neglect of statutory and regulatory offenses committed and referenced herein. Jacobs, through its employees, had a duty imposed by law and undertook a specified duty to prevent violations of the statutes and regulations and to protect human health as referenced herein in a non-negligent/reckless manner, but severely breached that duty. Jacobs recklessly failed to discharge the specific duties imposed by TVA in contract and the laws and regulations cited herein. In furtherance, upon information and belief, Jacobs's safety director, and others in managerial positions acting in conformity with this scheme outside governmental purpose, made numerous intentional or reckless statements that fly ash was not harmful to human health, which is contrary to the specific safety plan documentation adopted, created, and

11

possessed by Jacobs. Further, said representations by Jacobs were inherently contrary to TVA's toxic fly ash remediation purpose. At all times, Jacobs and its managerial agents acted contrary to and breached its duty to act within the scope and purpose of government that is to act with honesty and integrity when performing a quasi governmental contract. Additionally, Jacobs recklessly did not appropriately supervise safety employees who did not mention the dangers of fly ash to certain employer companies, their employees or independent contractors contrary to specified contractual and legal duties. Jacobs did not execute the will of TVA and its ratepayers as detailed in this Amended Complaint.

54.     Jacobs and its managerial agents were recklessly and improperly hired, educated and supervised and they recklessly failed to inform workers of other employer subcontractors on fly ash hazards even though they had in their possession manuals for fly ash safety that contained vital information on fly ash toxins. Though this duty to educate was undertaken by Jacobs, this information was recklessly not properly disseminated to individuals, including Plaintiffs, working at the Site. Jacobs created and adopted, but recklessly did not follow, its own Site Wide Safety and Health Plan it submitted to TVA violating the precedent established in Mays v. TVA, 699 F.Supp. 991 (E.D. 2010) to a vastly horrific degree. Jacobs and its improperly hired and supervised managerial agents proximately caused and engaged in dangerous and reckless harmful deviations to its adopted plan, significantly more drastic than was the cause that was the basis for landowner recovery based upon governmental liability in Mays v. TVA, 699 F. Supp. 2d 991 (E.D. Tenn. 2010). The improper supervision was for gain and/or at least recklessness for same. Jacobs negligently never fulfilled its undertaken duty to truly inform Plaintiffs of the fly ash dangers, nor adhered to its SWSHP and other literature that indicated at all relevant times it was safe despite its plan and other literature indicating to the contrary.

12

55.     In addition, Jacobs and its agents recklessly failed to educate the workers for employers on-site, such as Plaintiffs, about the safety of fly ash constituents. These actions fell outside the scope of the authority conferred by TVA. Jacobs's reckless lack of supervision allowed for and promoted an extremely high disregard for worker safety even though this was a recognized toxic site contrary to its safety purpose for being awarded the ratepayer funded contract.

56.     Jacobs's and its managerial agents were in possession of documents that referenced toxic constituents and target organs. However, due to Jacobs's reckless supervision of its managerial employees, they never appropriately adhered to their duty to inform the workers of their actual health hazards. One example of such information was/is entitled "Fly Ash Constituent Information."

Kingston Ash Release Response Project
Site Wide Safety & Health Plan for the Tennessee Valley Authority

February 2010
Revision 04

TABLE 4 – 1
FLY ASH CONSTITUENT INFORMATION

| CONSTITUENTS | CAS # | SITE ACTION LEVEL[1] | SITE EXPOSURE LIMIT[2] | ROUTES OF EXPOSURE | SYMPTOMS OF EXPOSURE | TARGET ORGANS | NIOSH METHODS |
|---|---|---|---|---|---|---|---|
| SILICA – QUARTZ[3] RESPIRABLE / CRISTOBALITE | 14808-60-7 / 14464-46-1 | 0.025 MG/M$^3$ | 0.050 MG/M$^3$ | INHALATION, SKIN AND/OR EYE CONTACT, INGESTION | COUGH, DYSPNEA WHEEZING, PROGRESSIVE RESPIRATORY SYMPTOMS (SILIEOSIS), IRRITATION EYES | EYES, RESPIRATORY SYSTEM | 7500 7601 7602 |
| ALUMINUM OXIDE | 1344-28-1 | 2.5 MG/M$^3$ | 5 MG/M$^3$ | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, RESPIRATORY SYSTEM | EYES, SKIN, RESPIRATORY SYSTEM | 0500 0600 |
| IRON OXIDE | 1309-37-1 | 2.5 MG/M$^3$ | 5 MG/M$^3$ | INHALATION, INGESTION | BENIGN, PNEUMOCONI OSIS | RESPIRATORY SYSTEMS | 7300 7301 7303 9102 |
| CALCIUM OXIDE | 1305-78-8 | 2.5 MG/M$^3$ | 5 MG/M$^3$ | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, UPPER RESPIRATORY TRACT, ULCER, PERFORATION, NASAL SEPTUM | EYES, SKIN, RESPIRATORY SYSTEM | 7020 7303 |
| ARSENIC[4] (INORGANIC) | 7440-38-2 | 0.005 MG/M$^3$ | 0.01 MG/M$^3$ | INHALATION, SKIN ABSORPTION, SKIN AND/OR EYE INGESTION | ULCERATION OF NASAL SEPTUM, DERMATITIS, GASTROINTESTINAL DISTURBANCE, PERIPHERAL NEUROPATHY, RESPIRATORY IRRITATION | LIVER, KIDNEYS, SKIN, LUNGS, LYMPHATIC SYSTEM | 7300 7301 7303 7900 9102 |

1. Based on 50% of the 8 hour site exposure limit
2. Based on the lower of the values recognized by OSHA or the ACGIH. Crystalline silica value is based on TOSHA levels which is typically lower than the sample-specific calculated OSHA level.
3. Suspected human carcinogen
4. Confirmed human carcinogen

57.     Upon information and belief, this information was recklessly not properly disseminated to certain companies, persons on-site, including Plaintiffs, in accordance with TVA's safety directives, the Emergency Planning and Community Right to Know Act, the Toxic

13

Chemical Right to Know Regulation and the Tennessee Hazardous Chemical Right to Know law that was in existence for much of this timeframe. The other subcontracting companies and employees should have been adequately educated and Jacobs ensured that all entities and individuals would be informed and safe. These reckless omissions were contrary to the safety directives of TVA and contrary to the scope of authority conferred to Jacobs by TVA as the "independent contractor" upon which TVA relied, and based upon the obligations and amount of its contract, a reckless abrogation to the citizen rate payers.

58. At all times material hereto, Jacobs and its managerial employees had full access to specialized information relevant to fly ash toxins. Based upon information and belief, Jacobs knew of the dangers and should have communicated them and protected all workers near the Site and to people living nearby. Jacobs recklessly allowed this misinformation and recklessly disregarded the safety of Plaintiffs, other workers, the Roane County community and ratepayers about the dangers of fly ash contrary to the will of any civilized society. Jacobs and its managerial agents having safety supervisory responsibility recklessly made no attempt to employ due diligence to prevent the violation of statutes and regulations in this Amended Complaint in violation of contract and law.

59. Jacobs and its managerial agents engaged in behaviors that were not permissible policy judgments by failing to prevent protection of human health by committing impermissible reckless deviations from its own Site Wide Safety and Health Plan, statutes, regulations and promises to TVA, its ratepayers and the workers it contractually obligated itself to protect. Jacobs acted recklessly in such a manner to rise to a level of bad faith in disregarding human health, which was at the very essence and unique nature of its purpose of TVA and its ratepayers contracting with them as the complete site wide "independent contractor" for safety. *Jacobs's*

14

*reckless lack of supervision allowed Tom Bock to destroy protective equipment for human health* *and Chris Ike to threaten employees for seeking protective health equipment. They did this in* *breach of TVA contract and directives in an attempt to hide required reportable injuries for their* *gain.* In short, Jacobs, through its managerial agents, in the present action actually conflicted with federal policy and TVA policy to such a reckless gross extent that it requires displacement of any available immunity as will be further demonstrated in the forthcoming paragraphs. For example, one worker at the Site stated under oath, along with a companion recording, *a Jacobs's* *managerial safety employee stating he would hang himself with his own cock and lose his job if* *he wore a dust mask on the Site for his protection; something that is as simple and necessary for* *use when one paints a house.* By engaging in the conduct enumerated further in this Amended Complaint, Jacobs and its managerial agents committed the following non-discretionary violations to be enumerated in ¶ 74.

60.     The plaintiffs were not provided appropriate and/or timely safety training in regard to the hazards associated with inhaling toxic fly ash or coming into contact with bottom ash, as the impression was given to them that the environment was safe by Jacobs's recklessly unsupervised managerial safety employees. Inadequate safety training was recklessly or negligently contrary to Jacobs's own SWSHP, TVA directives and the will of any civilized governmental society when considering the hazards and consequences. As a proximate result, Plaintiffs developed injuries.

61.     Jacobs did not provide, nor suggest to other site employees, nor request employer subcontractors, independent contractors or workers to receive adequate or pre-HAZMAT physicals to disguise the progression of the health-related effects of fly ash or occupational disease, even though certain initial subcontractor safety manuals indicated blood tests for toxic

15

metals should be taken and TVA offered medical testing to the Roane County community for those living further from site (not close to the high intensity exposure setting), nor provide medical monitoring for Plaintiffs' health regarding the hazardous fly ash constituents. This, too, was outside the scope of purpose and authority conferred by TVA. In some instances, Defendant's managerial safety employees refused respirators prescribed by physicians and even dust masks (that would be as simple as using one to paint one's home) and removed people from employment that got said prescriptions for economic or corporate gain to make everyone think it was safe to keep workers from reporting occupational illness problems. Jacobs's negligent compensation and profit scheme also recklessly incentivized such conduct. An example of this breach of duty is exemplified when one employee stated:

> I worked at the Kingston ash spill site from Feb. 2008 to June 2013.
>
> On or about the month of June 2013, I was prescribed a respirator by my physician due to breathing problems that developed while working there.
>
> Shortly after presenting this prescription to safety personnel, I was informed I could not wear the respirator, despite it being prescribed by my physician. I was prohibited from working and was soon after terminated.

62.     Plaintiffs worked long hours per day in close proximity with toxic fly ash constituents. However, Jacobs, through its safety employees, did not provide complete, proper safety equipment, training or education to them to disseminate for Plaintiffs and others, and, in fact, discouraged use of safety equipment by managerial threats to workers at the Site that were recklessly unsupervised by Jacobs. Even bringing your own dust mask to wear was prohibited for many individuals who would be threatened with job status if worn. *There were also dust*

16

*masks on-site designed for use but were prohibited for use to protect human health and even destroyed at the instruction of Tom Bock from availability, after purchase with ratepayer dollars, due to Jacobs's inadequate supervision of its safety employees and undertaken specified duties.*

63.     The improper handling of the fly ash recklessly caused by Jacobs resulted in the ash becoming airborne and allowed for windward erosion throughout the Site and adjoining Roane County properties allowing unsafe contact, inhaling and ingestion. In fact, Jacobs's unsupervised managerial safety employees would require its subcontractors to wet and suppress fly ash around stationary air monitors and wash them to lower readings so as to mislead the public and also ignore the safety of large portions of the Site interior where air monitors were not located and workers frequently present, including Plaintiffs, would be misled. Jacobs, through its employees, would not engage in as much water suppression in areas of the Site that were not being monitored, recklessly creating unsafe conditions for human health contrary to its obligations and scope of authority by TVA, its ratepayers and Roane County citizens.

64.     *Further, Jacobs undertook a duty to honestly and accurately monitor air yet primarily allowed mobile air monitoring units to be worn only on days of rain when the fly ash would not be airborne. Those allowed to wear the air monitors would be taken from a Rain List on days when most employees were sent home and didn't work. This lowered the readings and produced unsafe, misleading results.* Additionally, negligent/reckless, unsupervised safety employees would engage in a practice that created inaccurate results of the fly ash monitoring records where high readings should or would have occurred that were beyond permissible exposure limits (PELs). Jacobs tested in a manner to unsafely alter the readings and would not provide workers with results contrary to their scope and purpose.

17

65.     *Jacobs negligently supervised its managerial agents to the extent they destroyed all the dust masks on the Site when workers started having breathing problems without corporate accountability.*  This was motivated in part to falsify a safe environment to keep nearby Roane County residents from filing further property damage lawsuits.  Respiratory protection was recklessly denied to prevent employees from having to take a fifteen (15) minute break each hour for removal, affecting completion time and bonuses for managerial employees.  This extra hourly break of fifteen (15) minutes per subcontract employee would have drastically expanded the timeframe period for project completion.

66.     Due to these reckless actions and the failure of Defendant to provide proper safety equipment, Plaintiffs inhaled the fly ash fugitive dust and debris material and, on occasion, the fly ash would become imbedded in Plaintiffs' skin.  Consequently, Plaintiffs were improperly exposed to inhaling high concentrations of fly ash toxic constituents while working on the Site for a prolonged duration of time.

67.     Failure to provide hazardous materials workers with personal protective equipment is a violation of federal and state worker protection law.

68.     Jacobs and its managerial agents recklessly ignored the fact Plaintiffs and all others working at the Site had been exposed to hazardous substances.

69.     The effects of continued exposure to such hazardous substances proximately caused Plaintiffs to contract and develop illnesses, from which they in some instances will never truly recover.

### Negligence

70.     In accordance with the principle in Mays v. TVA, 699 F. Supp.2d 991 (E.D. Tenn. 2010), Defendant did not follow its own adopted Site Wide Safety and Health Plan as it

18

promised the ratepayers of TVA it would adhere to and Defendant is not immune from suit for Plaintiffs' injuries outlined herein. In this case, Defendant failed to exercise due care in order to protect individuals performing site remediation once a Site Wide Safety and Health Plan was adopted. These reckless/negligent actions created working conditions and "surroundings" that were unnecessarily dangerous to human health or safety. The Site Wide Safety and Health Plan was not properly followed by Jacobs nor its managerial agents and others so employed. The requirements in contract and laws under this setting created requirements that allow for no choice. The conduct for Jacobs was prescribed. Jacobs acted recklessly at all times and through improper supervision violated the directives referenced in ¶ 51 and all prior allegations of negligence that are referenced herein. Under the rationale in <u>Mays</u>, Defendant is further liable to Plaintiffs for the following general activities that are outside the scope of the authority delegated by TVA and duties Jacobs contractually undertook and committed actions that "shall not" have been permitted under contract:

A.      Jacobs failed to train employees/independent contractors/subcontractors in applicable policies or procedures for working at the Site and for day-to-day safety for health, operations and management;

B.      Jacobs was negligent by failing to implement its contracted specifications and SWSHP as promised to TVA, the ratepayers funding the contract and its site remediators, including contractors and subcontractors;

C.      Jacobs was negligent by failing to implement its policies and procedures regarding health and safety as promised to TVA for independent contractors' employees and subcontract employees working on the Site;

19

D. Jacobs was negligent in the implementation of approved safety and health plans for independent contractors working on the Site;

E. Jacobs was negligent in failing to provide approved adequate health equipment as promised to TVA and its ratepayers for those independent contractors and subcontractors who worked on the Site; and

F. Jacobs was negligent in maintenance of and the intentional altering and manipulating of toxic air monitoring results to TVA and its ratepayers to create lower PEL readings that directly violated TVA directives and its scope of authority, and violating other statutes and regulations all of which caused injuries to Plaintiffs.

G. Jacobs was negligent by recklessly failing to hire people with appropriate safety knowledge regarding fly ash and not monitoring their conduct and behavior that was contrary to its own and TVA policies.

H. Jacobs recklessly failed to monitor the administration of its own safety policies for those working at the Site and implementation of those policies for worker protection.

I. Jacobs failed to monitor the administration of its own safety policies to recklessly and intentionally prosper, and retaliated against injury complaints for economic gain contrary to the will of TVA and its ratepayers.

J. Jacobs, through its inappropriately supervised employees, recklessly destroyed safety protection and retaliated against individuals seeking to use it for its own corporate gain.

20

K.    Jacobs, through its improperly educated and trained employees, breached its duty to provide a safe and appropriate water spray system for suppression of fugitive dust from unsafe inhalation.

L.    Jacobs, through its improperly educated and trained employees, breached its duty to provide safe and appropriate wind barriers to suppress fugitive dust from unsafe inhalation.

M.    Jacobs, through its improperly hired, educated and trained employees, breached its duty to provide a safe and appropriate fly ash compaction method to suppress fugitive dust from unsafe inhalation.

N.    Jacobs, through its improperly hired, educated and trained employees, negligently breached its duty to provide safe and appropriate training to other fly ash remediators to reduce the speed of vehicles on or near the Site to prevent airborne fugitive dust.

O.    Jacobs, through its improperly hired, educated and trained employees, breached its duty to provide a safe and appropriate environment for the sweeping of roads and covering trucks to prevent spread of fugitive dust to workers on-site and those living nearby for unsafe inhalation.

P.    Jacobs, through its improperly hired, educated and trained employees, breached its duty to provide a safe and appropriate healthy environment by not appropriately covering trucks containing fly ash.

Q.    Jacobs, through its improperly hired, educated and trained employees, breached its duty to provide a safe and appropriate healthy environment by not halting

21

operations during high wind events to prevent unsafe inhalation of toxic fly ash for other subcontract workers, independent contractors and others present on-site.

R.      Jacobs, through its improperly hired, educated and trained employees, breached its undertaken duty to provide a safe and appropriate by not chemically treating the fly ash to prevent airborne fugitive dust.

S.      Jacobs, through its improperly hired, educated and trained employees, breached its undertaken duty by not providing proper education and instruction on-site regarding the safe method of changing vehicle and heavy equipment air filters to prevent unsafe fugitive dust inhalation.

T.      Jacobs, through its improperly hired, educated and trained employees, breached its undertaken duty to provide a safe and appropriate by improper use of sprinklers and watering systems to prevent airborne fugitive dust disturbances.

U.      Jacobs, through its improperly hired, educated and trained employees, breached its undertaken duty to TVA and those on-site to engage in appropriate fugitive dust airborne capture to prevent airborne fugitive dust disturbances.

V.      Jacobs, through its improperly hired, educated and trained employees, breached its duty to provide a safe and appropriate healthy environment to modify its Site Wide Safety and Health Plan to adapt to appropriate weather conditions to prevent airborne fugitive dust disturbances.

W.      Jacobs, through its improperly hired, educated and trained employees, breached its undertaken duty to TVA and individuals on-site by engaging in negligent blanket misting to suppress the fly ash from human inhalation.

22

X.     Jacobs, through its improperly hired, educated and trained employees, breached its undertaken duty to TVA and individuals on-site by negligently using unpaved roads in such a manner that created an unhealthy level of fugitive dust for human inhalation.

Y.     Jacobs, through its improperly hired, educated and trained employees, breached its undertaken duty to TVA and individuals on-site by inadequate and improper use of water suppression trucks in such a reckless manner that it promoted dangerous, unsafe human inhalation.

Z.     Jacobs was negligent in failing to supervise and prevent individuals on-site from receiving prescribed respiratory protection, requested respiratory protection, dust masks, protective gear and allowing management to retaliate against the workers which put workers in fear and created an unsafe environment that Jacobs was contracted to and promised to prevent.

71.     Defendant Jacobs knew, or should have known, that the previously referenced actions were non-discretionary, as maintaining site safety and adherence with directives, statutes and regulations allowed for no discretionary choice.

72.     Defendant had actual notice of the seriousness of the potential problem with the air monitoring and lack of adequate safety and still chose to take little or no action to prevent serious injury to the plaintiffs and others with windward erosion.  These duties undertaken by Jacobs were so simple and obvious in purpose if performed that by failing to perform them was such a blatant disregard to policy and purpose that it rises from negligence to the highest level of recklessness.  As stated, these actions were outside the scope of any intended purpose of law, contract or purpose of any quasi governmental agency.

23

73.     Defendant's negligent acts and/or omissions described above proximately caused and continue to cause damage to Plaintiffs in the form of pain, suffering, economic loss, loss of quality of life, aggravation and inconvenience, medical bills and other damages, and long term care – for all of which Jacobs is liable in damages.

## Negligence *Per Se*

74.     Plaintiffs refer to and re-allege the previously referenced violations of state and federal laws as referenced in the entirety of this Amended Complaint.  As a result, Plaintiffs hereby assert their cause of action for Negligence *per se.*  Jacobs, an independent contractor, violated the following laws that allowed for no discretion or choice:

 a.     42 U.S.C. § 7401, *et seq.*

 b.     Tenn. Code Ann. § 8-50-116;

 c.     Tenn. Code Ann. § 39-13-103;

 d.     Tenn. Code Ann. § 39-14-408;

 e.     Tenn. St. Reg. 1200-3-3;

 f.     Tenn. St. Reg. 1200-3-5;

 g.     Tenn. St. Reg. 1200-3-8;

 h.     Tenn. St. Reg. 1200-3-10;

 i.     Tenn. St. Reg. 1200-3-11;

 j.     Tenn. St. Reg. 1200-3-12;

 k.     Tenn. St. Reg. 1200-3-13;

 l.     Tenn. St. Reg. 1200-3-19;

 m.     Tenn. St. Reg. 1200-3-22; and

 n.     Tenn. St. Reg. 1200-3-37.

75.     Defendant also violated the principles behind United States Occupational Safety and Health Administration ("OSHA") regulations establishing the standard of care for protecting workers of subcontractors who handle hazardous materials as required in contract. Jacobs was required to comply with these principles but breached this duty. In accordance with, and under 29 C.F.R. § 1900 *et seq.,* and more particular, 29 C.F.R. § 1910.1018, 29 C.F.R. § 1910.1001, 29 C.F.R. § 1910.134, 29 C.F.R. § 1926.103, and other pertinent regulations and statutes. Defendant violated the Tennessee Hazardous Chemical Right to Know Act pursuant to Tenn. Code Ann. § 50-3-2012(b) that was in effect when most of this work was ongoing and the principles behind Tenn. Code Ann. § 50-3-2012, again another breach of undertaken contractual duty. All employees and employers had a right to know the actual hazards of their work as the safety contractor Jacobs breached its duty. Plaintiffs should have been entitled to adequate respiratory safety equipment according to Jacobs and other subcontractor policies and contracts as well as the law. None was provided by Defendant to Plaintiffs despite being purchased with ratepayer dollars and certain safety equipment was even destroyed after purchase.

76.     Further, when physicians prescribe respirators, they should be provided pursuant to 29 C.F.R. § 134(a)(2) because it is necessary to protect the employees' health, not denied, delayed, or with fear or threat of Jacobs interfering with job status. Additionally, when physicians prescribe respirators or dust masks they are necessary. This form of workplace retaliation and intimidation in a toxic setting is unconscionable as it promoted an unsafe environment *contrary to the scope and purpose of the TVA ratepayer contract.*

77.     Further, Plaintiffs assert respiratory protection was necessary, especially in instances when prescribed by a physician for workers at the Site.

78. Further, Plaintiffs were engaged in an ultra-hazardous activity further imposing strict liability.

79. Upon information and belief, Defendant intentionally/recklessly altered and manipulated air monitoring samplings and in turn results and records to alter PEL's at unsafe levels.

80. Defendant violated Tenn. Code Ann. § 39-13-103 by recklessly causing Plaintiffs to incur bodily injuries through contact with fly ash toxins contrary to TVA directives and outside the scope of Jacobs's authorized independent agency and any form of claimed immunity.

81. As a direct and proximate result of Jacobs's negligence *per se*, Plaintiffs have suffered of diseases, fear as a result, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, loss of enjoyment of life, learning capacity, long term care, and other damages, the exact amount to be proven at trial.

82. By not communicating that toxic fly ash was dangerous to Plaintiffs, Jacobs violated TVA directives that mandated this course of conduct and acted outside the scope of its authority. Alternatively, Plaintiffs also further assert a violation of Tenn. Code Ann. § 39-13-101, pursuant to Sheridan v. United States, 487 U.S. 392 (1988), as Tom Bock's actions were arguably assaultive in nature under similar factual circumstances as the referenced authority.

### Reckless Failure to Communicate and Warn

83. Plaintiffs refer and re-allege Paragraphs 1 through 82 of this Amended Complaint and incorporate them by this reference due to improper supervision by Jacobs as though fully set forth herein.

84. Jacobs undertook a contractual duty to TVA's ratepayers paying the contract in this matter to protect and educate workers on-site to the dangers of the fly ash and its

Case 3:13-cv-00505-TAV-HBG   Document 59   Filed 04/25/16   Page 26 of 36   PageID #: 1088

constituents, not recklessly mislead them that it was safe as well as adhere to the duties referenced in ¶ 75 and 76. Plaintiffs hereby assert their cause of action for Reckless Failure to Warn – by Jacobs in improperly supervising and failing to prevent and facilitate a safe work site for TVA's subcontractors, employees and other independent contractors working the Site as a part of its non-discretionary operation function to educate and to proactively protect human health, not act in reckless disregard for the truth. By becoming an independent contractor pursuant to ¶ 51, Jacobs undertook a duty to warn of worker and public danger in accordance with TVA's directives.

85.     The managerial agents knew, or should have known, that the fly ash was contaminated with toxic constituents as was stated in its own literature and Jacobs recklessly failed to prevent or supervise the lack of said warnings or proper evaluation.

86.     The defendant's managerial agents therefore had a duty to warn and be truthful to the workers and TVA of the presence of the toxic constituents and the actual amounts on-site that went beyond permissible exposure limits, as some workers may be more physiologically sensitive to its toxins through ingestion, inhalation, and dermatological contact.

87.     Recklessly, the defendant improperly supervised its managerial agents and breached its duty by failing to warn Plaintiffs of ultra-hazardous dangers despite being legally (under state law) and contractually obligated to inform employees of safety.

88.     The defendant's breach of the duty to warn caused Plaintiffs to work inside the dangerous environment without any respirators, masks, or personal protective equipment, and to be exposed to high concentrations of toxins during that period of their continuous, prolonged, intense exposure.

27

89.     As direct and proximate result of Jacobs's lack of supervision of its managerial safety employees' negligent/reckless failure to warn, Plaintiffs suffered personal injuries by developing illnesses, such as pulmonary injuries, including leukemia, sinus injuries, skin problems, and etcetera, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, long term care, and other damages, the exact amount to be proven at trial.

### Reckless/Intentional Infliction of Emotional Distress

90.     Plaintiffs refer to and re-allege Paragraphs 1 through 89 of this Amended Complaint and incorporate them by this reference, as though fully set forth herein.

91.     Plaintiffs hereby assert their cause of action for Reckless Infliction of Emotional Distress as Jacobs undertook a specified/contractual duty to protect the health of individuals on-site, not harass, humiliate, nor intimidate and intentionally inflict emotional distress upon the site remediators and Jacobs acted outside its scope by breaching this undertaken duty.

92.     The defendant had a duty of care toward Plaintiffs not to cause them undue emotional distress.

93.     The defendant's knowing, wanton, and willful exposure of Plaintiffs to toxins and other hazardous substances breached its duty of care toward Plaintiffs as directed by TVA in delegating its authority to and relying upon Jacobs as an independent contractor to properly administer site wide safety.

94.     Jacobs acted with reckless disregard through its managerial employees' actions.

95.     Defendant's conduct was extreme and outrageous.

96.     Plaintiffs have suffered severe emotional and physical damages caused by Jacobs.

28

97.     The defendant chose to expose Plaintiffs to toxins and other hazardous substances that have caused them to develop the previously referenced illnesses and disease and suffer emotional distress to a degree that no reasonable person should be expected to suffer.

98.     As a direct and proximate result of Defendant's intentional infliction of emotional distress upon Plaintiffs, Plaintiffs have suffered emotional and physical damages, the exact amount to be proven at trial.  This was proximately caused by Jacobs's reckless lack of supervision, breaches of undertaken duties and intentionally created by Tom Bock and recklessly committed by other Jacobs's agents.

### Fraud

99.     Plaintiffs refer and re-allege Paragraphs 1 through 98 of this Amended Complaint and incorporate them by this reference, as though fully set forth herein as Jacobs undertook a duty to faithfully execute a multimillion dollar contract for TVA ratepayers to honestly protect health, not to destroy protective health equipment, to prevent the dissemination of inaccurate information regarding safety and not to promote an unsafe environment through negligently unsupervised safety employees.

100.    Based upon Jacobs's reckless lack of managerial safety supervision and failure to comply with its contractual promises to TVA and its ratepayers, Plaintiffs hereby assert their cause of action for Fraud in part as a third party beneficiary to TVA directives in the contract. This recklessness allowed Jacobs's agents, pursuant to the doctrine of *respondeat superior* to lie to Plaintiffs and other site workers about dangers and threaten them for seeking safety equipment.

29

101.     Jacobs recklessly allowed and failed to supervise managerial employees from improperly communicating to Plaintiffs that the fly ash did not contain dangerous toxins or other hazardous substances.

102.     If properly hired, trained and supervised, Jacobs's safety employees should have known that these representations, both public and private, were false.

103.     Jacobs, through its agents/employees, outrageously caused Plaintiffs and others to continue to work on the Site without respirators, dust masks, or adequate personal protective equipment for its monetary benefit and recklessly altered the outcome of the air monitoring test results by improper methods.  Plaintiffs would not have worked in this environment without personal protective equipment had they had full knowledge that they did have contact with dangerous toxic constituents and other hazardous substances.

104.     Plaintiffs, in justifiable reliance upon the initial climate created by Jacobs improperly hired, trained and supervised employees that the Site was safe, worked without personal protective equipment and continued to do so for many hours per day even after noticing co-workers becoming sick, still trusting Jacobs and its safety employees.  Specifically, for example, are the statements, both public and private, by Jacobs Safety Manager Tom Bock that the fly ash was safe, inducing such reliance and trust despite his superior knowledge it was not.  Ultimately, when employees began getting sick and reporting injuries they were threatened for requesting safety equipment and they then were retaliated against in order for Jacobs to hide reportable injuries for economic gain as required by TVA contract.

105.     As a direct and proximate result of Jacobs's reckless lack of supervision, training and education of its safety employees, an intentional infliction of emotional distress was committed upon Plaintiffs by agents of Jacobs.  Plaintiffs have suffered the referenced diseases

30

and conditions including, but not limited to, leukemia, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, long term care, and other damages, the exact amount to be proven at trial.

<strong><u>Misrepresentation</u></strong>

106.    Plaintiffs refer to and re-allege Paragraphs 1 through 105 of this Amended Complaint and incorporate them by this reference, as though fully set forth herein.

107.    Plaintiffs hereby assert their cause of action that Jacobs violated the undertaken contractual duty and obligation to educate the public, including Plaintiffs, regarding the hazards of fly ash and the policies behind Tenn. Code Ann. § 50-3-101, OSHA and TOSHA statutes and the other laws cited herein. Jacobs misrepresented safety facts that occurred outside the scope and contractual authority conferred by TVA that were actually breaches to TVA and the ratepayers that were contrary to contractual purpose and incorporates by reference in ¶ 57 - 59.

108.    Managerial agents at Jacobs without proper corporate supervision lied to subcontractors about the safety of the toxicity of the fly ash. Jacobs Safety Manager, Tom Bock, stated you can "DRINK A GLASS OF FLY ASH PER DAY AND BE HEALTHY" – although this is reckless, negligent and misleading and directly contrary to Jacobs's non-disseminated SWSHP.

109.    Jacobs, through improperly hiring, educating and supervising Tom Bock, lied to Plaintiffs that the Site did not contain toxic constituents or other hazardous substances.

110.    Despite its obligations, the information known by Defendant was recklessly concealed by Jacobs's employees and they acted with reckless regard as to whether or not their representation was false.

31

111.    Jacobs failed to ensure its safety employees would use due care and honesty regarding the accuracy of its representations to Plaintiffs regarding important matters of human health and deviated from its own Site Wide Safety and Health Plan, its promises to TVA ratepayers and Roane County residents.

112.    Jacobs, through Tom Bock, recklessly induced Plaintiffs to continue to work on the Site without personal protective equipment despite the fact of the danger of prolonged exposure.

113.    Plaintiffs, in justifiable reliance upon this properly unsupervised deviation from its contractual communication obligation that the toxic fly ash was safe, did work on the Site without respirators, masks or personal protective equipment.

114.    Plaintiffs would not have worked on the Site without respirators or personal protective equipment had they known of the dangers of prolonged exposure.

115.    As a direct and proximate result of Defendant's lack of adequate supervision, subcontract worker education and training upon Plaintiffs, Plaintiffs' has illnesses, costs, pain and suffering, mental anguish, other personal injuries, long term care, and other damages, the exact amount to be proven at trial.  This form of conduct was not designed to be shielded or protected from the United States Court System.

### Strict Liability for Ultra-hazardous or Abnormally Dangerous Activity

116.    Plaintiffs refer to and re-allege Paragraphs 1 through 115 of this Amended Complaint and incorporate them by this reference, as though fully set forth herein.

117.    Plaintiffs hereby assert their cause of action for Strict Liability for Ultra-hazardous or Abnormally Dangerous Activity.

32

118.    Jacobs conducted this abnormally dangerous activity in a manner that was contrary and outside the scope of TVA contract, its purpose, laws and regulations.

119.    Remediation of a Superfund cleanup site without compliance with environmental regulations poses an excessively high degree of risk of harm to humans such as the plaintiffs.

120.    The remediation of a Superfund site without compliance with environmental regulations is not a common activity.

121.    The remediation of a Superfund site without compliance with environmental and safety regulations is entirely inappropriate to the location at which it was carried out.

122.    Jacobs, as an "arranger" for safety and treatment of fly ash for site wide safety of a toxic Superfund site, without compliance with environmental regulations therefore constitutes an ultra-hazardous or abnormally dangerous activity.

123.    Jacobs and its employees acted at all times material to this Amended Complaint outside the scope of directives of TVA as an arranger for disposal and safety.

124.    Jacobs undertook a duty to safely perform this ultra-hazardous activity and breached its duty and acted outside the scope of authority, law, control and quasi governmental policy.

125.    As a direct and proximate result of Defendant's environmental remediation without compliance with environmental regulations and other safety standards and TVA directives as an "independent contractor" and agent thereof, Plaintiffs developed diseases and serious health conditions, medical expenses, costs, pain and suffering, mental anguish, other personal injuries, long term care, and other damages, the exact amount to be proven at trial.

33

## TORT CAP REMOVAL FOR NON-ECONOMIC AND PUNITIVE DAMAGES

126.    Plaintiffs contend that some of Defendant's conduct was ongoing before the Tennessee Legislature enacted Tort Reform and such has been held unconstitutional.

127.    Additionally, Jacobs's reckless lack of supervision created a reckless callous environment toward safety to the extent that Tom Bock ordered the destruction of dust masks when workers started complaining of breathing problems seeking protective medical care and not providing equipment for safety constitutes intolerable conduct that results in harming people as well as spoliation of evidence removing tort caps.

128.    Jacobs recklessly, through not properly supervising its employees, created such reckless disregard for safety that perpetuated an environment that allowed the inaccurate altering of air monitoring evidence further mandates tort cap removal.

129.    Pursuant to Tenn. Code Ann. §§ 29-39-102 and 29-39-104, caps or monetary or non-economic damages tort limitations are waived based upon intent, spoliation and destruction of protective health gear and evidence by destroying dust masks designated to protect the lungs and respiratory system and by it intentionally, falsely, and harmfully altering air monitoring results.

130.    Further, this outrageous conduct that should not be tolerated in a just, honest, and civilized society removes the "caps" or economic limitations for a punitive damages amount based upon the following grounds:

a.    The defendant had recklessly injured the plaintiffs and it caused some Plaintiffs to develop catastrophic injuries;

b.    Due to Jacobs's reckless lack of proper supervision, the defendant's safety manager *destroyed dust mask evidence and created an environment for air*

34

*monitor altering and falsification of results concealing the dangerous nature* that

existed at the Site which further contributed to the injuries of Plaintiffs.

All of the actions committed herein caused Plaintiffs to develop diseases, injuries and

health problems. Further, the medical, diseases and health problems are consistent with Jacobs's

own internal literature and have created medical costs and expenses for Plaintiffs and workers to

run, upon information and belief, in excess of Fifty Million Dollars ($50,000,000.00). These

healthcare costs penalize not only the affected worker but their health insurance carriers and the

general public.

## JURY DEMAND

131.    Plaintiffs hereby demand a trial by jury on all issues raised herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a verdict/judgment against Defendant as follows:

132.    For fair compensatory damages for physical injury, disease, potentially fatal

illness, pain and suffering, mental anguish, medical expenses, medical monitoring costs, lost

wages, and all other damages recoverable in any amount fair not to exceed Fifty Million Dollars

($50,000,000.00);

   A.    Further, since recklessly unsupervised safety employees actively engaged

   in evidence destruction and spoliation, the tort caps for non-economic damages, including

   punitive damages, are inapplicable under Tennessee law.

   B.    Plaintiffs pray for punitive damages in any amount fair not to exceed

   Twenty Five Million Dollars ($25,000,000.00) as such actions should not be tolerated in

   a just and civilized society.

35

C.      Plaintiffs pray no summary judgment ruling occurs before an adequate

time for discovery has taken place.  Further, in light of the pending Court date, Plaintiffs

request the Court to limit the number of dispositive motions that may be filed by each

side, as Plaintiffs will also be filing a motion for partial summary judgment, as an

overzealous filing of the number of said may unduly delay the trial date.

D.      On all Claims for Relief, such other and further relief as this Court deems

just and proper under the circumstances; and

E.      Plaintiffs reserve the right to amend this Amended Complaint against all

parties, as the facts, through discovery, should warrant.

Respectfully submitted this 25th day of April, 2016.

s/James K. Scott
James K. Scott, BPR No. 016893
Ellis A. "Sandy" Sharp, BPR No. 005070
STOKES, WILLIAMS, SHARP, COPE & MANN
920 Volunteer Landing Lane, Suite 100
Knoxville, Tennessee  37915
(865) 544-3833

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2016, a copy of the foregoing Amended Complaint was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

This 25th day of April, 2016.

/s/James K. Scott
James K. Scott
