UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| GREG ADKISSON, et al.,<br>Plaintiffs,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>Defendant. | ) ) ) ) ) ) | No.: 3:13-CV-505-TAV-HBG<br><br>*Lead Case Consolidated with* |
| KEVIN THOMPSON, et al.,<br>Plaintiffs,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>Defendant. | ) ) ) ) ) ) | No.: 3:13-CV-666-TAV-HBG<br><br>as *consolidated with* |
| JOE CUNNINGHAM, et al.,<br>Plaintiffs,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>Defendant. | ) ) ) ) ) ) | No.: 3:14-CV-20-TAV-HBG |
| MIKE MCCARTHY,<br>Plaintiff,<br>v.<br>G.UB.MK CONSTRUCTORS, et al.,<br>Defendants. | ) ) ) ) ) ) | No.: 3:14-CV-472-TAV-HBG |
| BILL ROSE,<br>Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>Defendant. | ) ) ) ) ) ) | No.: 3:15-CV-17-TAV-HBG |
| CRAIG WILKINSON, et al.,<br>Plaintiffs,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>Defendant. | ) ) ) ) ) ) | No.: 3:15-CV-274-TAV-HBG |

ANGIE SHELTON, as wife and next of )
Kin on behalf of Mike Shelton, et al., )
    Plaintiffs, )
v. ) No.: 3:15-CV-420-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )
  )

JOHNNY CHURCH, )
    Plaintiff, )
v. ) No.: 3:15-CV-460-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )
  )

DONALD R. VANGUILDER, JR., )
    Plaintiff, )
v. ) No.: 3:15-CV-462-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is plaintiffs' Motion to Disqualify and/or for Jury Instruction [Doc. 94 in *Adkisson*, 3:13-CV-505; Doc. 89 in *Thompson*, 3:13-CV-666; Doc. 69 in *Cunningham*, 3:14-CV-20; Doc. 66 in *Rose*, 3:15-CV-17; Doc. 61 in *Wilkinson*, 3:15-CV-274; Doc. 53 in *Shelton*, 3:15-CV-420; Doc. 54 in *Church*, 3:15-CV-460; Doc. 59 in *Vanguilder*, 3:15-CV-462; Doc. 103 in *McCarthy*, 3:14-CV-472].[1] Defendant Jacobs Engineering Group, Inc. ("Jacobs") filed a response in opposition to the motion [Doc. 100].[2] On September 29, 2016, the parties

---

[1] The Court notes that these cases are consolidated for motion practice and discovery with the exception of *McCarthy*, 3:14-CV-472. Although *McCarthy* is not one of the consolidated cases, the Court notes that some of the issues in *McCarthy*, including the instant dispute regarding disqualification, overlap with the issues in the consolidated cases. As such, the Court addresses the motion to disqualify in *McCarthy* in the same order as the motion in the consolidated cases.

[2] Unless otherwise indicated, citations to the record refer to the docket entries in *Adkisson*, 3:13-CV-505.

2

appeared before the Court to present oral argument on the motion. Subsequent to that hearing, Jacobs filed a supplemental submission [Doc. 107]. For the reasons discussed herein, the Court will **DENY** the motion to disqualify.

I.     **Background**

Jacobs retained Covington & Burling, LLP ("Covington") to develop factual information and defenses relating to Jacobs's work under a government contract with the Tennessee Valley Authority ("TVA") [Doc. 100-1 ¶ 3]. Covington helped identify potential nonparty witnesses who might have factual information regarding the TVA-Jacobs contract [*Id.* ¶ 4].

Covington conducted initial phone interviews with multiple former government personnel and asked questions about their involvement with the government's remediation work at the Kingston site and the role Jacobs played [*Id.* ¶ 5]. Based on the responses to those questions, Covington concluded that Thomas Heffernan (former TVA safety official), John Parker (former Coast Guard Gulf Strike Force team leader), Jamie Keith (former TVA contracts official), Chuck Proffitt (former TVA safety official), and Paul Sloan (former Tennessee Department of Environmental and Conservation official) possessed factual knowledge that was supportive of Jacobs's defenses [*Id.*].

Covington prepared draft declarations based on the statements the nonparty witnesses made during the preliminary interviews [*Id.* ¶ 7]. Covington sent the draft declarations to the witnesses and some of the witnesses made corrections or additions to the drafts [*Id.*]. The witnesses then each signed their respective final declarations [*Id.* ¶¶ 7–8; Docs. 100-2–100-6].

Jacobs attached these declarations in support of its motion to dismiss based on qualified immunity as a contractor [Doc. 100-1 ¶ 8; Docs. 69, 70]. In the motion, Jacobs argues that it is entitled to derivative sovereign immunity because it: (1) exercised policy-level discretion in

3

order to help TVA balance safety and operational needs at the Kingston site, and (ii) acted within the scope of the TVA-Jacobs contract [*See* Doc. 100-1 ¶ 8; Docs. 69, 70].

Using this same process, Covington also obtained a sworn declaration from another TVA employee, Gary MacDonald, who had previously submitted three declarations in the *McCarthy* wrongful termination/retaliation case [Doc. 100-1 ¶ 9; Doc. 100-7]. Jacobs relied on MacDonald's declaration to support its motion for summary judgment in *McCarthy*, in an attempt to establish that Jacobs played no role in TVA's decision to terminate plaintiff McCarthy from employment at the Kingston site [Doc. 100-1 ¶ 9].

Jacobs identified these nonparty witnesses and provided their contact information in its Rule 26(a)(1) disclosures to plaintiffs [*Id.* ¶ 10; Doc. 100-8 pp. 3–9]. Plaintiffs informed Jacobs's counsel that they wanted to depose Parker, Keith, Sloan,[3] Heffernan, MacDonald, and Dewayne Rushing, another former TVA employee [Doc. 100-1 ¶ 12, Doc. 100-10, Doc. 100-11].

The depositions of the following former government witnesses were scheduled: Heffernan (July 21, 2016), Rushing (August 5, 2016), Parker (August 10, 2016), Keith (August 11, 2016), and MacDonald (August 11, 2016) [Doc. 100-1 ¶ 14]. Prior to the depositions, Covington met with each witness to explain the deposition process and, in the case of Heffernan, Parker, Keith, and MacDonald, to review the statements in their declarations [*Id.*]. Covington informed the witnesses of their options for representation at the deposition: to be unrepresented, to be represented by government counsel, or to be represented by Covington free of charge [*Id.*]. Each witness chose to have Covington represent them during their depositions [*Id.*].

During the September 23, 2016, hearing, Kurt Hamrock from Covington represented to the Court that the nonparty-witness clients did not provide oral informed consent and did not sign any consent forms, conflict waivers, potential conflict waivers, or representation

---

[3] The parties have not indicated whether Paul Slone was, or was not, deposed.

4

agreements. He also informed the Court that no one at Covington explained to these clients what would happen if a conflict arose during the course of the depositions and no one discussed any joint representation confidentiality issues with the clients.

Plaintiffs argue that Covington should be disqualified from representing any party in these cases for violating several of the Tennessee Rules of Professional Conduct ("TRPC") through its representation of the nonparty witnesses during depositions [Doc. 94]. In response, Jacobs contends that Covington did not violate any of the TRPC and that there is no legal basis to justify the drastic remedy of disqualification [Doc. 100].

## II. Analysis

"A motion to disqualify is the proper method for a party-litigant to bring an issue of conflict of interest or the breach of an ethical duty to the court's attention." *Hamrick v. Union Township*, 81 F. Supp. 2d 876, 878 (S.D. Ohio 2000). "The Court has inherent authority to supervise the professional conduct of attorneys appearing before it." *Eon Streams, Inc. v. Clear Channel Commc'ns, Inc.*, No. 3:05-CV-578, 2007 WL 954181, at *2 (E.D. Tenn. Mar. 27, 2007). When addressing a motion to disqualify, courts "must be sensitive to the competing interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice." *Hamrick*, 81 F. Supp. 2d at 878. "[A] court must view a motion for disqualification with extreme caution because it can easily be used as a harassment technique." *Eon Streams*, 2007 WL 954181, at *3.

This Court has adopted the Rules of Professional Conduct adopted by the Supreme Court of Tennessee as its rules of professional conduct for matters within this Court's jurisdiction. E.D. Tenn. L.R. 83.6. Plaintiffs contend that Covington should be disqualified from representing any party in these cases because it violated TRPC 1.7 (governing conflicts of interests), TRPC

5

3.4(a) (governing obstruction of access to evidence), and TRPC 7.3 (governing the solicitation of potential clients). The Court will address each of these alleged rule violations in turn.

### A. Conflict of Interest

Plaintiffs allege that Covington's representation of the nonparty witnesses during depositions constituted a "concurrent conflict of interest" in violation of TRPC 1.7(a). This rule prohibits lawyers from representing a client "if the representation involves a concurrent conflict of interest." Tenn. Sup. Ct. R. 8, RPC 1.7(a). Such a conflict exists when "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2).

In determining whether there is a "significant risk" that a lawyer's representation will be "materially limited," the TRPC provide that "[t]he "critical questions are: what is the likelihood that a difference in interests will eventuate and, if it does, will it materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client?" *Id.*, cmt. 8.

Plaintiffs submit that the Court could apply the "appearance of impropriety standard" in making its determination [Doc. 94 pp. 9–10]. Tennessee, however, has abandoned the "appearance of impropriety" standard except in cases where the interests of a current client are directly adverse to that of a former client. Tenn. Sup. Ct. R. 8, RPC 1.10, cmt. 9. As such, rather than the relying on the "appearance of impropriety" standard, the Court will rely on the principles set forth in Rule 1.7(a) and will look to how other courts have applied such principles in similar cases.

6

Plaintiffs cite to *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 4:03CV00733, 2009 WL 1211440 (E.D. Ark. May 4, 2009), to support their position that Covington should be disqualified. While the court in *Mid-State* ultimately denied a motion to disqualify premised on the representation of a third-party witness during a deposition, the court highlighted many concerns associated with the practice of doing so. The court pointed out that "a lawyer who represents a nonparty witness in litigation in which he represents a party runs the risk that the testimony of one client may contradict the testimony of the other client." *Id.* at *4. In that situation, the party "he represents may dictate that he impeach the credibility of the nonparty witness, but doing so might violate his duty to the nonparty witness." *Id.* This circumstance "might materially limit his ability to fulfill his responsibility to the other client." *Id.*

Furthermore, the court in *Mid-State* also noted that issues may arise regarding the confidentially of communications between clients. *Id.* The court provided that when a lawyer represents a witness, the lawyer "may be prohibited from telling anyone, including his client who is a party in the case, what the witness said." *Id.* Furthermore, representing a third-party witness also "effectively prohibit[s] opposing counsel from communicating with witnesses except through" counsel representing the witness and the opposing party. *Id.* at *5. In addition, although Tennessee has abandoned the "appearance of impropriety" standard, the Court agrees with the court in *Mid-State* that "whenever a lawyer for a party solicits a nonparty witness to be his client, the appearance will be given, whether justified or not, that the lawyer is trying to influence the witness's testimony." *Id.*

The Court finds that the same concerns the court raised in *Mid-State* also apply here. Many of those concerns, however, could be alleviated if certain precautions are taken. In its response to the motion to disqualify, Jacobs states: "Plaintiffs ignore much more recent guidance

7

on this subject, however, which has concluded that attorneys are 'ethically permitted' to represent nonparty witnesses at depositions in a litigation where the attorney also represents a named party" [Doc. 100 p. 17 n.4 (citing New York City Bar Association, *Formal Opinion 2016-2: Representing a Non-Party Witness at a Deposition in a Proceeding Where the Attorney Also Represents a Named Party* (July 22, 2016) ("NYCB Opinion")]. Jacobs, however, ignores the vast majority of the NYCB Opinion it relies on to support its position. The opinion provides that representing nonparty witnesses in such circumstances is "ethically permitted . . . subject to the following limitations," among others: (1) the representation may be a reasonable limited scope representation; (2) the attorney must secure informed consent; (3) if there is a conflict, the attorney must obtain a written consent waiver; (4) the attorney must discuss what will happen should a conflict arise in the future; (5) the attorney must explain issues with confidentiality in the joint representation. NYCB Opinion.

During the September 23, 2016, hearing, Kurt Hamrock from Covington represented that the nonparty-witness clients did not provide oral informed consent and did not sign any consent forms, conflict waivers, potential conflict waivers, or representation agreements. He also informed the Court that that no one at Covington explained to these clients what would happen if a potential conflict arose during the course of the depositions, and no one discussed any joint representation confidentiality issues with the clients.

Despite relying on the NYCB Opinion to support that its conduct was ethical, Covington did not actually engage in any of the precautions the NYCB Opinion requires. Instead, Covington informed the Court during the hearing that it disagrees with the portions of the NYCB Opinion requiring such precautions. As the vast majority of the opinion discusses these precautions, Covington appears to disagree with the entirety of the opinion except for the portion

8

saying that Covington's actions can be ethically permitted. As such, it is actually Covington that ignores recent guidance on this subject providing that such actions are only ethically permitted if counsel representing the nonparty witnesses engages in certain precautions prior to representation.

Covington takes the position that it was not required to engage in such precautions because there was no actual or potential conflict of interest. Jacobs argues that Covington did not violate TRPC 1.7 because each witness signed a fact declaration, crafted by Covington, under penalty of perjury, and that during the depositions, each witness "unequivocally affirmed the accuracy" of the declarations and provided "substantive testimony that is consistent with Jacobs' defenses" [Doc. 100 pp. 17–18]. In these circumstances, Jacobs argues that there was no actual or potential concurrent conflict of interest and that the likelihood that a difference of interests would eventuate was "virtually non-existent" [*Id.* at 18].

First, the Court notes that the NYCB Opinion requires counsel to engage in most of the previously discussed precautions even if there is no conflict. Additionally, based on the record, the Court is not in a position to affirmatively find that there was no potential or actual conflict. In analyzing the depositions of the nonparty witnesses, the "virtually non-existent" circumstance of conflict may have arisen.

During the depositions, while the nonparty witnesses provided information that supports Jacobs's defenses, they also provided information to support plaintiffs' position. Specifically, counsel for plaintiffs posed several hypotheticals regarding whether Jacobs would be in violation of its contract if it engaged in certain actions. In response to these hypotheticals, the nonparty witnesses replied that such actions would be improper and/or would not be permissible under Jacobs's contract [*See, e.g.,* Doc. 97, Heffernan Dep. 46–47, MacDonald Dep. 80, Keith Dep. 97,

9

Rushing Dep. 35–36].[4] Assuming plaintiffs are able to provide evidence that the underlying events occurred, the nonparty witnesses' indications that Jacobs's actions would be in violation of its contract would be adverse to Jacobs's defenses.

Furthermore, plaintiffs indicated that one of these purported hypotheticals comes directly from a video, filed as an exhibit to a complaint, of a supervisor for Jacobs telling a worker that if he uses a respirator, he will be hanging himself [Doc. 94 p. 10]. Presumably Covington is aware of this video and could have predicted that counsel for plaintiffs was likely to ask questions regarding the supervisor's acts in that video, as well as other acts of Jacobs's employees, to determine whether Jacobs was permitted to engage in such acts under its contract. Instead of acknowledging that a potential conflict could have arisen in this circumstance, Covington brushed off this potential ethical violation by failing to take any precautions in its representation of the nonparty witnesses.

The Court is aware, however, that it must view motions to disqualify "with extreme caution." *Eon Streams*, 2007 WL 954181, at *3. As such, the Court cannot make a definitive finding of conflict that would require immediate removal of Covington as counsel in this action. See *Mid-State*, 2009 WL 1211440, at *3–5 (denying a motion to disqualify in similar circumstances); *ChemFree Corp. v. J. Walter, Inc.*, No. 1:04-CV-3711-JTC, 2008 WL 5234252, at *4–6 (N.D. Ga. June 11, 2008) (same). Although Covington's actions do not rise to the level requiring attorney disqualification, the Court emphasizes that it finds Covington's actions troubling and that such actions are inconsistent with the practices in this district. Covington's decision to undertake representation of these nonparty witnesses without first engaging in the

---

[4] Plaintiffs manually filed the nonparty depositions with the Court [Doc. 97]. The Court notes that these cited pages are only a limited sample of the many circumstances within the depositions when counsel for plaintiffs posed hypotheticals to the nonparty witnesses and they indicated that Jacobs would be in violation of its contract if it had engaged in the hypothetical actions.

barest minimum of precautions to prevent or prepare for conflicts is a practice that is fraught with ethical peril.

In light of this, the Court **ADMONISHES** Covington and **ORDERS** that if any counsel in these actions undertakes the representation of nonparty witnesses in the future, the attorney **SHALL** first secure informed consent, execute a written waiver of potential or actual conflict, and execute a representation agreement that clearly describes the dual representation and dual loyalty between the party and the nonparty witness as set forth in this opinion.[5]

B. **Unlawful Obstruction of Access to Evidence**

Plaintiffs also contend that Covington's representation of the nonparty witnesses violated TRPC 3.4(a), which provides that "[a] lawyer shall not unlawfully obstruct another party's access to evidence." Tenn. Sup. Ct. R. 8, RPC 3.4(a). To find a violation of Rule 3.4(a), plaintiffs must show that Covington made "an intentional attempt to deprive [p]laintiff[s] of access to the witnesses or their evidence." *ChemFree Corp.*, 2008 WL 5234252, at *4.

Here, plaintiffs argue that Covington "effectively prohibit[ed] [p]laintiffs' counsel from communicating with independent witnesses" [Doc. 94 p. 10]. Plaintiffs also note that Covington objected on the record at least 436 times over the course of the five depositions. In response, Jacobs emphasizes that its counsel disclosed to plaintiffs weeks before the depositions that numerous former government employees were likely to have discoverable information and provided contact information for each of the nonparty witnesses [Doc. 100 p. 21]. In addition, Jacobs provides that, despite making many objections during the depositions, Covington gave an instruction not to answer just four questions [*Id.* at 22].

---

[5] The Court notes that Jacobs indicated in its supplemental submission that "its outside counsel, including Covington, will not in the future represent nonparty witnesses in these cases during depositions or otherwise" [Doc. 107 p. 3]. While the Court is cognizant of Jacobs's commitment, in light of Covington's previous decision to ignore the ethical implications of its representation of nonparty witnesses, the Court finds it necessary to impose these requirements at this juncture.

11

The Court notes that plaintiffs were not prevented from examining witnesses under oath and they had access to the nonparty witnesses prior to the depositions. While Jacobs "may have gained a tactical advantage from representing the witnesses at their depositions, the present record does not show an intentional attempt to deprive [p]laintiff[s] of access to the witnesses or their evidence." *ChemFree Corp.*, 2008 WL 5234252, at *4 (finding no violation of Rule 3.4 where counsel for the defendant represented nonparty witnesses during depositions).

As to the circumstances when Covington instructed the witnesses not to answer questions, it did so relying on alleged attorney-client privilege [Doc. 95-1 ¶ 17]. In these instances, the questions were directed at the witness's deposition preparation and related communications with counsel [*Id.*]. The Court notes, however, that Covington was not consistent in its approach of instructing the witnesses not to answer. In Keith's deposition, Covington allowed Keith to answer a question inquiring as to how long Keith prepared for his deposition with counsel [Doc. 94-5 p. 4]. In Rushing's deposition, however, Covington instructed Rushing not to answer the same question [Doc. 94-1 p. 3].

While the Court again finds these circumstances troubling, the Court cannot find that they rise to the level requiring disqualification. Consequently, Covington is **ADMONISHED** and the Court **ORDERS** that any instruction by a lawyer to a third-party witness and client not to answer a question on any ground, including privilege, will be followed by an immediate conference with the Court. The Court will then issue a ruling on the issue.

### C. Solicitation of Potential Client

Lastly, plaintiffs contend that Covington violated TRPC 7.3(a) by improperly "solicit[ing] professional employment" from the nonparty witnesses in connection with their depositions. Tenn. Sup. Ct. R. 8, RPC 7.3(a). Rule 7.3(a) prohibits such conduct "where a

significant motive for the lawyer's doing so is the lawyer's pecuniary gain[.]" *Id.* As Covington did not charge for its services to these nonparty witnesses, there is no violation of Rule 7.3(a) because Covington's could not have been significantly motivated by pecuniary gain.

While the Court again finds that Covington's actions do not require disqualification under Rule 7.3, one question remains. What was Covington's motive in representing these nonparty witnesses free of charge? One court addressing a similar set of circumstances to the instant case stated that "[o]ver the years, zealous advocacy and loyalty to the client have come to outweigh the aspirational standards of professionalism." *ChemFree Corp.*, 2008 WL 5234252, at *5. The court noted that the result of the shift from aspirational concepts of ethical considerations to black letter law has resulted in lawyers seeking to meet "minimum standards" and ignoring any reason to "set their standards at a higher level." *Id.* The Court finds that while Covington may have met the minimum standards of professional conduct under the TRPC, its actions fall short of what this Court has come to expect in terms of ethical standards.

### D. Jury Instruction

As an alternative to disqualification, plaintiffs request a special jury instruction addressing Covington's conduct [Doc. 94 pp. 3, 11]. Pursuant to the Scheduling Order, the Court notes that "special requests for jury instructions shall be submitted to the Court no later than thirty (30) days before trial and shall be supported by citations authority pursuant to Local Rule 7.4" [Doc. 57 p. 7]. As plaintiffs did not provide any proposed language for this instruction, or a citation to authority, the Court **DENIES** this request.

### IV. Conclusion

For the reasons discussed herein, plaintiffs' Motion to Disqualify and/or for Jury Instruction [Doc. 94 in *Adkisson*, 3:13-CV-505; Doc. 89 in *Thompson*, 3:13-CV-666; Doc. 69 in

*Cunningham*, 3:14-CV-20; Doc. 66 in *Rose*, 3:15-CV-17; Doc. 61 in *Wilkinson*, 3:15-CV-274; Doc. 53 in *Shelton*, 3:15-CV-420; Doc. 54 in *Church*, 3:15-CV-460; Doc. 59 in *Vanguilder*, 3:15-CV-462; Doc. 103 in *McCarthy*, 3:14-CV-472] is **DENIED**.

The Court, however, **ADMONISHES** Covington and **ORDERS** that if any counsel in these actions undertakes the representation of nonparty witnesses in the future, the attorney **SHALL** first secure informed consent, execute a written waiver of potential or actual conflict, and execute a representation agreement that clearly describes the dual representation and dual loyalty between the party and the nonparty witness as set forth in this opinion. The Court further **ORDERS** that any instruction by a lawyer to a third-party witness and client not to answer a question on any ground, including privilege, will be followed by an immediate conference with the Court.

**IT IS SO ORDERED.**

ENTER:

*Bruce Guyton*