UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GREG ADKISSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: | 3:13-CV-505-TAV-HBG <br><br> *Lead Case Consolidated with* |
| KEVIN THOMPSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: | 3:13-CV-666-TAV-HBG <br><br> as c*onsolidated with* |
| JOE CUNNINGHAM, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: | 3:14-CV-20-TAV-HBG |
| BILL ROSE, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: | 3:15-CV-17-TAV-HBG |
| CRAIG WILKINSON, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: | 3:15-CV-274-TAV-HBG |
| ANGIE SHELTON, as wife and next of <br> Kin on behalf of Mike Shelton, et al., <br>     Plaintiffs, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: | 3:15-CV-420-TAV-HBG |

| | |
|---|---|
| JOHNNY CHURCH, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: 3:15-CV-460-TAV-HBG |
| DONALD R. VANGUILDER, JR., <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: 3:15-CV-462-TAV-HBG |
| JUDY IVENS, as sister and next of kin, <br> on behalf of JEAN NANCE, deceased, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: 3:16-CV-635-TAV-HBG |
| PAUL RANDY FARROW, <br>     Plaintiff, <br> v. <br> JACOBS ENGINEERING GROUP, INC., <br>     Defendant. | No.: 3:16-CV-636-TAV-HBG |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02. The parties appeared before the undersigned for a discovery conference on May 18, 2017, to address several discovery disputes. Attorneys Keith Steward, John Dupree, and James Scott appeared on behalf of the Plaintiffs. Attorneys James Sanders, Joshua Chesser,

2

and Joseph Welborn appeared on behalf of Defendant Jacobs Engineering Group Inc. ("Jacobs").[1]

Prior to the hearing, the parties submitted position statements, outlining their respective discovery disputes and arguments. Both parties argue that responses to their respective written discovery are deficient and need to be supplemented. In addition, Jacobs argues that the Plaintiffs' expert disclosures fail to comply with Federal Rule of Civil Procedure 26(a)(2)(B). The Court will address each discovery dispute in turn.

### I. Plaintiffs' Responses to Jacob's Written Discovery

Plaintiffs were served with Jacobs' Master Set of Interrogatories on August 8, 2016, as well as requests for production of documents on June 16 and August 9, 2016. With regard to the Plaintiffs' interrogatory responses, Jacobs explains that it sent Plaintiffs' counsel a 45-page deficiency letter on January 31, 2017, identifying omissions and deficiencies within the Plaintiffs' responses. Jacobs states that such deficiencies include, for example, simply directing Jacobs to "medical records" in response to questions regarding the Plaintiffs' medical treatment and the period of time in which the Plaintiffs became aware of symptoms for which they complain. Despite the detailed deficiency letter asking the Plaintiffs to supplement their answers, Jacobs maintains that only one Plaintiff has provided supplemental interrogatory responses to date. As to requests for documents, Jacobs complains that the Plaintiffs have not produced medical records that pre-date the ash spill so that Jacobs may evaluate any pre-exiting conditions. Moreover, Jacobs argues that the Plaintiffs' document production does not comport with this Court's

---

[1] Also present, but did not participate in the hearing, was attorney Craig Holloway on behalf of Gallaher Bassett Services, Inc., intervening Plaintiff in *Wilkinson et al. v. Jacobs Engineering Group, Inc.*, 3:15-cv-274-TAV-HBG.

September 30, 2016 directive [Doc. 104][2], which ordered documents to be labeled and/or organized in such a manner as to make clear which documents are responsive to which of Jacobs' requests.

In response to these arguments, the Plaintiffs contend they have consistently and diligently supplemented their written discovery responses as evidenced by emails chains provided to the Court which, according to Plaintiffs' counsel, demonstrate that an estimated 2,000 pages of supplementation has occurred in response to Jacobs' written discovery.

During the discovery conference, Jacobs clarified that supplementation was not the issue, but rather the sufficiency of the Plaintiffs' responses. In this regard, Jacobs argued that the Plaintiffs failed to provide full and complete responses to interrogatories identified in Jacobs' deficiency letter, and that production of documents was not in compliance with the Court's September 30, 2016 Order. While Plaintiffs' counsel characterized Jacobs' position as "griping" and "nitpicky," they conceded that some of the deficiencies identified by Jacobs in regard to interrogatory responses were legitimate and therefore needed to be supplemented. In addition, Plaintiffs' counsel conceded that they did not identify which documents are responsive to which of Jacobs' requests consistent with this Court's prior Order.

In light of the parties' arguments, and concessions made by Plaintiffs' counsel, the Court finds that Jacobs is entitled to a response to its January 31, 2017 deficiency letter which highlights omissions and deficiencies within the Plaintiffs' interrogatory responses and the manner in which documents have been produced. Therefore, the Court **ORDERS** the Plaintiffs to supplement their responses to the discovery requests identified in the deficiency letter by providing full and

---

[2] Unless otherwise indicated, citations to the record refer to the docket entries in *Adkisson*, 3:13-CV-505.

4

Case 3:13-cv-00505-TAV-HBG   Document 162   Filed 06/12/17   Page 4 of 15   PageID #: 3749

complete responses on or before **July 14, 2017**. If the Plaintiffs dispute an identified deficiency, they must provide an explained basis for such dispute. Moreover, and consistent with this Court's September 30, 2016 Order, the Plaintiffs must indicate in their responses which documents they are producing for each request or state that they are not in possession of responsive documents. Documents produced must be labeled and/or organized in such a manner that it is clear which documents are responsive to which of Jacobs' requests. The Plaintiffs are **ADMONISHED** that the failure to abide by the directives set forth in the Court's Orders may result in sanctions. See Fed. R. Civ. P. 37 (b)(2)(A)(i)-(vii), -(b)(2)(C), and -(d)(3)

## II. Plaintiffs' Expert Disclosures

The parties dispute whether the Plaintiffs' expert disclosures satisfy Federal Rule of Civil Procedure 26(a)(2)(B). First, the parties disagree whether the content of the experts' written reports meet the rule's requirements. Second, the parties disagree whether two of the experts the Plaintiffs' have disclosed—Dr. Paul Terry, M.D., and Dr. Rajiv Dhand, M.D.,—qualify as witnesses under Subsection (a)(2)(B) and are therefore required to produce a written report in conformance with the rule.[3] The Court will address the latter of these issues first.

### A. Applicability of Rule 26(a)(2)(B) to Dr. Terry and Dr. Dhand

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, disclosure of an expert witness must be accompanied by a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Subsection (a)(2)(B) sets forth certain

---

[3] The Court notes that the Plaintiffs have not submitted a written report for one of the Plaintiffs' experts, Dr. John Hill. Jacobs, however, does not take issue with the Plaintiffs' failure to produce a report from Dr. Hill at this time because Dr. Hill's testimony and opinions are expected to address damages which will not be addressed in Phase I of trial.

5

information the report must contain, which the Court will discuss in more detail below. Experts who do not fall under Subsection (a)(2)(B) must instead produce a "considerably less extensive" summary disclosure. Fed. R. Civ. P. 26, adv. committee's note 2010. Specifically, the disclosure must include: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Rule 26(a)(2) was amended in 2010 to include Subsection (C). "The amendments did not alter who was required to file an expert report under the rule and explained that an expert 'retained or specially employed' must submit a complete expert report." *Coleman v. Am. Family Mut. Ins. Co.*, 274 F.R.D. 641, 645 (N.D. Ind. 2011). Rather, the inclusion of Subsection (C) was meant to "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." Fed. R. Civ. P. 26, adv. committee's note 2010; *see Call v. City of Riverside*, No. 3:13-CV-133, 2014 WL 2048194, at *2 (S.D. Ohio May 19, 2014) ("The amendment sought to address a concern that courts were over-classifying experts as subject to the written report requirement, *i.e.*, that courts were erring on the side of requiring a written report because the alternative meant no disclosure.").

The parties dispute whether Dr. Terry and Dr. Dhand are expert witnesses under Subsection (a)(2)(B) or (a)(2)(C). The disagreement centers around whether the experts are "retained or specially employed." The Plaintiffs argue that Dr. Terry and Dr. Dhand are not "retained or specially employed" because the doctors reached out to Plaintiffs' counsel in order to conduct an epidemiological study of the Plaintiffs. Because the Plaintiffs simply consented to the doctors' research project, the Plaintiffs argue that Dr. Terry's and Dr. Dhand's testimony is not developed in anticipation of trial. Plaintiffs' heavily rely upon the "lack of control" they have over Dr. Terry

6

and Dr. Dhand. During the discovery conference, Plaintiffs' counsel stressed that the doctors were acting independently of this case and therefore counsel had no control over them or their work. Jacobs counters that Dr. Terry and Dr. Dhand are indeed "retained or specially employed" because their proposed testimony is "not based upon personal knowledge but rather based upon after-the-fact analysis of information received from outside sources, including during this litigation."

This Court has previously relied on the guidance offered in *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1 (1st Cir. 2011), one of the first Court of Appeals cases to discuss the interaction between Subsections (a)(2)(B) and (a)(2)(C). *See Chesney v. Tennessee Valley Auth.*, No. 3:09-CV-09, 2011 WL 2550721, at *3 (E.D. Tenn. June 21, 2011). In *Downey*, the court observed that in order to give the phrase "retained or specially employed," found in Rule 26(a)(2)(B), "any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony." *Id.* at 6. For the *Downey* Court, the distinguishing factor between an (a)(2)(B) expert and (a)(2)(C) expert turned on the means by which the expert obtained his information for which his opinion was based:

> [If] the expert is part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert. If, however, the expert comes to the case as a stranger and draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B).

*Id.* at 7 (internal citations omitted). In other words, if an expert's "opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B)." *Id.*

7

Many courts, including this one, have followed *Downey's* line of reasoning. *See e.g., Chesney*, No. 3:09-CV-09, 2011 WL 2550721 at *3 (written report not required because experts "were participants in TVA's ash spill response activities and . . . used their 'specialized knowledge, etc.' in discharging their employment duties."); *Am. Prop. Const. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 4 (D.D.C. 2011) (no written report required because experts' opinions were formed "while performing the tasks they were hired to do in their capacity as contractors" and therefore did not come to the case as "strangers"); *Ulbrick v. UPR Prod., Inc.*, No. CIV. 08-13764, 2011 WL 500034, at *4 (E.D. Mich. Feb. 8, 2011*)* (looking at "the scope, substance, and source of the intended testimony," the court found a written report was required because the expert's opinion was based on "after-the-fact" information); *Beane v. Util. Trailer Mfg. Co.*, No. 2:10 CV 781, 2013 WL 1344763, at *3 (W.D. La. Feb. 25, 2013) (written report required because experts had no personal knowledge of events giving rise to the litigation and were brought in solely because of their knowledge in the field as their opinions arose from examining relevant information from the case, indicating "after-the-fact" testimony).

According to the Plaintiffs' expert disclosures in this case, Dr. Terry will testify that certain disease clusters have been identified among certain subject workers that participated in remediation efforts in the post-spill clean-up removal and recovery of fly ash at the Tennessee Valley Authority Kingston Fossil Fuel Plant, that there was an unusual quantity of epidemiological clusters of disease, that the statistical incidence of these epidemiological clusters would indicate that it is more likely than not they are environmental in origin based upon fly ash exposure, and that it is highly likely that the health conditions of the subject workers were environmentally created. Dr. Terry's opinions are based upon epidemiological healthcare questionnaires and interrogatory responses by the workers, pictures and videos of the remediation site, discovery

8

materials provided by Jacobs, reliable and authoritative scientific and medical literature, depositions of the Plaintiffs and other witnesses, and other expert reports. Dr. Dhand will be assisting Dr. Terry in describing the mechanisms of injury caused by the fly ash and its effects on the body and will opine that it is more likely than not that exposure to the fly ash has caused the injuries sustained by the workers. Neither expert will be receiving compensation for their testimony.

Based upon the Plaintiffs' expert disclosures, it is clear to the Court that Dr. Terry and Dr. Dhand "come[] to the case as a stranger and draw[] the[ir] opinion[s] from facts supplied by others." *Downey*, 633 F.3d at 7. Their opinions and anticipated testimony are not based on any "ground-level involvement in the events giving rise to this litigation." *Id.* at 6. Instead, the "scope, substance, and source, of the intended testimony" will exclusively come from material made available to them from others. *See Ulbrick*, 2011 WL 500034, at *4. Consequently, their opinions are not based on "personal knowledge or observations made in the course of treatment." *Downey*, 633 F.3d 1 at 7.

The only distinguishing factor between them and other (a)(2)(B) experts is Dr. Terry and Dr. Dhand sought out Plaintiffs' counsel and are not being compensated for their testimony. In *Call*, No. 3:13-CV-133, 2014 WL 2048194 at *10, the plaintiff raised a similar argument, contending that a written report was not required because the expert "sought out Plaintiff's counsel and agreed to serve as an expert witness without compensation." The Court rejected the "Plaintiff's proposed blanket rule that an expert witness who would otherwise qualify as one 'retained or specially employed to provide expert testimony in the case' is a non-retained expert because he or she does not receive monetary compensation." *Id.* To hold otherwise, the court reasoned, would create "a rule ripe for abuse." *Id.* This Court agrees. The lack of compensation

or control over Dr. Terry and Dr. Dhand is not dispositive to the issue. "[T]he distinction between a 26(a)(2)(B) expert and a 26(a)(2)(C) expert is that 26(a)(2)(C) experts' conclusions and opinions arise from firsthand knowledge of activities they were personally involved in before the commencement of the lawsuit, and not conclusions they formed because they were recruited to testify as an expert after-the-fact." *Id.* (quoting with approval *Beane*, 2013 WL 1344763, at *3). While Dr. Terry and Dr. Dhand may have initially reached out to Plaintiffs' counsel for the purpose of conducting an epidemiological study, the doctors have undoubtedly been recruited in turn "to testify as an expert after-the-fact" on behalf of the Plaintiffs.

Accordingly, the Court finds that Dr. Terry and Dr. Dhand are (a)(2)(B) experts, and the Plaintiffs' contention to the contrary is not well-taken. Therefore, to the extent that the Plaintiffs' intend to rely on the doctors as expert witnesses, a written report in conformance with Subsection (a)(2)(B) must be produced.

### B. Sufficiency of Experts' Written Reports

As stated above, in addition to providing that "retained or specially employed" experts must provide a written report, Rule 26 also sets forth the specific information the report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

10

>       (vi) a statement of the compensation to be paid for the study and
>       testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Jacobs argues that the export reports, specifically those from Dr. William J. Rea, M.D., and Dr. John W. Ellis, M.D., fail to: (1) provide any reasoning for the conclusions reached, (2) disclose the specific facts or data considered in forming their opinions, or (3) disclose any exhibits that will be used at trial. The Plaintiffs maintain that the documents their experts rely on have already been produced to Jacobs and that Jacobs improperly seeks "to have Plaintiffs pinpoint records by chapter and verse in order to gain a tactical advantage in this litigation, save on expert review costs and limit Plaintiffs' proof at trial peremptorily."

Rule 26(a)(2)(B) requires a report to "be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir.1998)). In other words, the "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.*

In reviewing Dr. Rea's and Dr. Ellis's reports, the Court finds the reports deficient. Both reports are rife with generalities that fail to provide the basis for the experts' opinions and the specific facts and data considered. For example, Dr. Rea is expected to testify "on the effects of fly ash on the human body . . . the harmful combinations of these constituents as it relates to exposure and human health . . . and that fly ash causes a variety of health problems that are and/or were the medical cause of" the injuries alleged by the Plaintiffs. In reaching this conclusion, Dr.

11

Rea states "he examined workers who had performed work at the Kingston fly ash remediation site" and that a host of tests and laboratory analysis were performed. The report does not disclose, however, which "workers" were examined or the results of any of the testing. Test results, at the very least, certainly qualify as the "data considered." *See Euclid Chemical Co. v. Vector Corrosion Tech.*, No. 1:05CV80, 2007 WL 1560277, at *3 (N.D. Ohio May 29, 2007) (defining "considered," for purposes of Subsection (a)(2)(B)(ii) as "anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed."). The significance of the test and laboratory results is heightened by the fact that Dr. Rea will further be opining on the statistical reliability of said tests which will also be used to demonstrate that the Plaintiffs' injuries were more likely than not the result of fly ash exposure. Other materials relied on by Dr. Rea in forming his opinions—"medical records," "discussion with workers," "fly ash testing health data," "governmental health and environmental documents," "other publications relied upon by the medical community," and "reliable physical and toxicological examinations," to name a few—are likewise fatally vague. The failure to identify the foregoing material with any specificity undoubtedly places Jacobs in the position to be ambushed at trial. Although the Plaintiffs may not need to pinpoint the material relied on by "chapter and verse," at the very least the Plaintiffs need to reasonably identify the material with enough specificity that Jacobs knows where to look. For example, simply identifying "publications relied upon by the medical community" is helpful in the most illusory manner and in no way satisfies the Plaintiffs' obligation under the rule. Moreover, the specific publications relied on must be produced to Jacobs. *See Euclid Chemical Co.*, 1:05CV80, 2007 WL 1560277 at *3.

12

During the discovery conference, Plaintiffs' counsel suggested that the data relied on by Dr. Rea was work product. Our appellate court, however, has rejected the notion that privileged information saves disclosure under Rule 26(a)(2)(B). *See Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 716 (6th Cir. 2006) ("[N]othing in Rule 26(b) displaces or even limits a party's obligation under Rule 26(a)(2) to disclose information provided to its testifying experts."). Put another way, "Rule 26(a)(2)(B) trumps privilege," whether the privilege stems from claims of attorney-client, work product, or common interest privilege. *Euclid Chemical Co.*, 1:05CV80, 2007 WL 1560277 at *3 (citing *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 465444, at *3 (N.D. Ind. Feb. 7, 2007)).

Similarly, Dr. Ellis plans to testify "that fly ash contains multiple toxic constituents that are harmful to human health, and more likely than not, caused or aggravated the health problems of the ash workers and, in many instances, caused impairment or death." Dr. Ellis's one page report provides no basis as to how he arrived at his conclusions. He simply cites that his opinions are based on "a reasonable degree of medical certainty," "other experts in this case," "medical literature," "medical records," and "discovery materials." There is simply no explanation as to how any of the foregoing led Dr. Ellis to conclude that the Plaintiffs' were exposed to fly ash, that fly ash contains multiple toxic constituents, that fly ash is harmful to human health, or how exposure to fly ash in this case likely caused or exacerbated the Plaintiffs' conditions. "The requirement that an expert report contain a complete statement of all opinions and the basis therefore is included in Rule 26(a)(2)(B) in order to avoid the disclosures of sketchy and vague expert information." *Drone v. Andy Frain Servs., Inc.*, No. 215CV02410STACGC, 2016 WL 1658774, at *2 (W.D. Tenn. Apr. 20, 2016) (internal quotations omitted). Dr. Ellis's report is precisely "the sketchy and vague expert information" the rule seeks to avoid.

13

Moreover, Dr. Rea states that he "may" use exhibits, such as "medical illustrations, drawings, photographs, and other demonstrative aids and/or evidence." Dr. Ellis states his "exhibits will be photographs, videos, medical records, items and documents that I have relied upon in forming my medical opinion." Beyond these generic descriptions, it is unclear precisely what exhibits can be anticipated at trial, and it appears that the Plaintiffs, to date, have provided none.

In short, the "how" and "why" Dr. Rea and Dr. Ellis reached their conclusions is not sufficiently set forth in their reports. Accordingly, the Court finds that Dr. Rea's and Dr. Ellis's expert reports fail to provide "a complete statement of all opinions the witness will express and the basis and reasons for them, the facts or data considered[,] . . . [and] any exhibits that will be used." Fed. R. Civ. P. 26(a)(2)(B)(i-iii). The Plaintiffs are therefore **ORDERED** to supplement the reports on or before **July 14, 2017**. The reports must include an explained basis for the conclusions reached, the facts or data considered, including any test results and findings from "reliable physical and toxicological examinations," and exhibits that will be used. In turn, Jacobs' expert disclosures deadline will be extend to **August 18, 2017**.

### III. Jacobs' Responses to Plaintiffs' Written Discovery

Finally, the Plaintiffs argue that Jacobs' responses to the Plaintiffs' written discovery, specifically, Interrogatories 2, 3, 9, 12, 18, 20, and 21, are deficient and omit certain information requested. During the discovery conference, counsel for Jacobs stated that the alleged deficiencies were brought to Jacobs' attention for the first time only days before the discovery conference and therefore Jacobs had not yet had an opportunity to respond to the deficiencies identified by the Plaintiffs. Given that Jacobs was only recently put on notice, the parties agreed that this matter was not properly before the Court and did not warrant the Court's intervention at this time. The

14

parties further agreed that they would diligently work together to resolve the matter and to the extent that a resolution could not be reached, the parties would contact Chambers.

## IV. Conclusion

Accordingly, and for the reasons explained above, the Court hereby **ORDERS** the following:

1. The Plaintiffs shall respond to Jacobs' January 31, 2017 deficiency letter by supplementing their responses to the discovery requests identified in the deficiency letter with full and complete responses on or before **July 14, 2017**. If the Plaintiffs dispute an identified deficiency, they must provide an explained basis for such dispute;

2. The Plaintiffs shall indicate in their responses which documents they are producing for each request or state that they are not in possession of responsive documents. The documents must be labeled and/or organized in such a manner that it is clear which documents are responsive to which of Jacobs' requests;

3. The Plaintiffs shall supplement the expert reports of Dr. Rea and Dr. Ellis on or before **July 14, 2017**. The reports must include an explained basis for the conclusions reach, the facts or data considered, including any test results and findings from "reliable physical and toxicological examinations," and exhibits that will be used;

4. Jacobs' deadline for expert disclosure shall be extended to **August 18, 2017**;

5. To the extent that Dr. Terry and Dr. Dhand will be called as witnesses at trial, a written report must be provided to Jacobs. Moreover, any report or publication completed by Dr. Terry and Dr. Dhand in connection with their epidemiological study must be provided to Jacobs; and

6. The parties will work diligently to resolve any and all discovery disputes regarding Jacobs' responses to the Plaintiffs' written discovery.

**IT IS SO ORDERED.**

ENTER:

*/s/ Bruce Guyton*
United States Magistrate Judge