# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| GREG ADKISSON, et al., )<br>    Plaintiffs, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____) | No. 3:13-CV-505-TAV-HBG<br><br>*Lead case consolidated with* |
| KEVIN THOMPSON, et al., )<br>    Plaintiffs, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____) | No. 3:13-CV-666-TAV-HBG<br><br>*as consolidated with* |
| JOE CUNNINGHAM, et al., )<br>    Plaintiffs, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____) | No. 3:14-CV-20-TAV-HBG |
| BILL ROSE, )<br>    Plaintiff, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____) | No. 3:15-CV-17-TAV-HBG |
| CRAIG WILKINSON, et al., )<br>    Plaintiffs, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____) | No.: 3:15-CV-274-TAV-HBG |
| ANGIE SHELTON, as wife and next of kin )<br>on behalf of Mike Shelton, et al., )<br>    Plaintiffs, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )<br>_____) | No.: 3:15-CV-420-TAV-HBG |
| JOHNNY CHURCH, )<br>    Plaintiff, )<br>v. )<br>JACOBS ENGINEERING GROUP, INC., )<br>    Defendant. )| No.: 3:15-CV-460-TAV-HBG |

1

| | |
|---|---|
| DONALD R. VANGUILDER, JR., ) <br>     Plaintiff, ) <br> v. ) <br> JACOBS ENGINEERING GROUP, INC., ) <br>     Defendant. ) | No. 3:15-CV-462-TAV-HBG |
| JUDY IVENS, as sister and next of kin, ) <br> on behalf of JEAN NANCE, deceased, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> JACOBS ENGINEERING GROUP, INC., ) <br>     Defendant. ) | No. 3:16-CV-635-TAV-HBG |
| PAUL RANDY FARROW, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> JACOBS ENGINEERING GROUP, INC., ) <br>     Defendant. ) | No. 3:16-CV-636-TAV-HBG |

**JACOBS ENGINEERING GROUP, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE OF THE FOLLOWING FACTS**

Plaintiffs' Motion for the Court to Take Judicial Notice of [Certain] Facts [Doc. 267] should be denied in its entirety. As a general matter, none of the alleged "facts" set forth in the Motion even arguably constitute "adjudicative facts" subject to judicial notice under Federal Rule of Evidence 201. The alleged "facts" are, instead, replete with legal conclusions and/or address issues that must be addressed by qualified experts. Such matters cannot be decided by way of judicial notice. Even if judicial notice of the types of "facts" alleged were permissible, such a ruling would not be appropriate here, as the sources cited do not establish the "facts" alleged. In nearly every instance, the documents Plaintiffs rely upon directly contradict their assertions.

This is a last-ditch and untimely attempt by Plaintiffs to do what they have failed to do through expert disclosures, *i.e.*, show that Plaintiffs were exposed to levels of the constituents of

2

fly ash at the Kingston site that exceeded safe levels. Contrary to the Plaintiffs' "spin" on the cited documents, these documents show that TVA, EPA, TDEC, and Jacobs were aware of the potential for health effects from exposure to certain constituents of fly ash and took reasonable and successful steps to ensure that the doses and exposures of concern would not be reached on the site.

Plaintiffs' Motion is unclear to Jacobs; however, Jacobs assumes that Plaintiffs purport to address Jacobs' pending Motions for exclusion of experts and partial summary judgment. As such, Plaintiffs are late. Their assertions are conclusory and inaccurate; and they do not meet their burden(s) put at issue by Defendant's two (2) Motions.

The documents cited by Plaintiffs do not address or overcome the failure by Plaintiffs to produce a scientifically valid expert opinion that quantifies the minimum level(s) at which the constituents of fly ash can cause health effects, the doses to which Plaintiffs might have been exposed or the duration of such exposure, or the extent to which exposure to the fly ash equates to exposure to the constituents in fly ash. In other words, the documents cited by Plaintiffs fail to quantify the exposure and dose of any Plaintiff, at any time at Kingston, to any constituent element of fly ash capable of causing any of the health effects alleged in this case.

Notwithstanding Plaintiffs' final effort to side-step their burden in this case, the facts upon which Jacobs' pending dispositive Motion (Doc. 237) is based remain undisputed. The proposed "facts" set forth in the instant Motion neither prove general causation nor create an issue of fact for the Court to consider. In short, the undisputed facts upon which the Motion is based are not put in dispute by Plaintiffs' citations and interpretation in the instant Motion. Moreover, the proposed "facts" do not meet Plaintiffs' burden under Fed. R. Evid. 702 or *Daubert*, do not qualify as expert opinions, and do not inform the Court as to Jacobs' pending *Daubert* Motion (Doc. 240). Finally,

Plaintiffs' deadlines to respond to Jacobs' Motions [Docs. 237 and 240] expired months ago. To the extent that Plaintiffs contend that the Court should take judicial notice of or otherwise consider these "facts" or Plaintiffs' arguments in deciding Jacobs' pending Motions, any such request should be denied.

For these reasons, and for the reasons set forth below, Jacobs respectfully submits that the Court should not take judicial notice of any of the listed facts, for any purpose.

## **LEGAL STANDARDS**

Federal Rule of Evidence 201 governs judicial notice of adjudicative facts. The rule, in relevant part, provides:

> **(a) Scope of the rule.** This rule governs only judicial notice of adjudicative facts.
> **(b) Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned . . . .
> **(d) When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

Fed. R. Evid. 201. Federal courts have narrowly construed Rule 201, and have routinely rejected requests to take judicial notice of the types of issues addressed in the instant Motion. As the rule suggests, judicial notice is only appropriate as to "matters of common knowledge." *Pearce v. Faurecia Exhaust Sys., Inc.*, 529 F. App'x 454, 459 (6th Cir. 2013)(citation omitted). Stated differently, "[j]udicial notice . . . is an adjudicative device that substitutes the acceptance of a *universal truth* for the conventional method of introducing evidence." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996)) (other citations omitted) (emphasis added). "Judicial notice is a powerful tool that must be used with caution." *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

Applying Rule 201, the Sixth Circuit has expressly distinguished between a request to establish the *existence* of a particular filing or report, and a request to take judicial notice of the contents of the document. *See United States v. Husein*, 478 F.3d 318, 337 (6th Cir. 2007) (citing *United States v. Bonds,* 12 F.3d 540, 553 (6th Cir. 1993)). As the court explained in *Husein*, where "there is considerable dispute over the significance of [the report's] contents," judicial notice is not appropriate. *Id.*; *see Gen. Elec.*, 128 F.3d at 1083 (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)) (explaining that "the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and, in effect, directing a verdict against him as to the fact noticed.").

Courts have applied the same rationale in declining to take judicial notice of prior testimony and affidavits. *See, e.g., Reaves v. Int'l Paper Co. Long-Term Disability Plan*, 2008 WL 2437574, at *2 (W.D. Tenn. June 13, 2008) (declining to take judicial notice of the contents of an affidavit, because while the fact that the affidavit was filed was not in dispute, "the statements contained in the affidavit that support [the proponent's] arguments . . . [were] reasonably disputed . . . ."); *Ridenour v. Collins*, 692 F. Supp. 2d 827, 830 (S.D. Ohio 2010) (citing *Bonds,* 12 F.3d at 553)(other citation omitted) ("[w]hile the fact that [particular witnesses testified] . . . may not be open to dispute," judicial notice is not appropriate where "the contents of their testimony, particularly when offered for the truth of the matters asserted, evince considerable dispute.").

Moreover, it is well-established that under Rule 201, which only applies to adjudicative *facts*, judicial notice is not permitted as to legal conclusions. *See United States v. Adesida*, 142 F.3d 436 (unreported), 1998 WL 136186, at *1-2 (6th Cir. Mar. 17, 1998) (holding that a request to take judicial notice was properly denied where the matters at issue were legal conclusions, rather than adjudicative facts); *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 830-31 (5th Cir. 1998)

5

(holding that a determination that the defendant's alleged successor was a state actor was a legal conclusion, and was not an adjudicative fact, and thus not subject to judicial notice); *McGlone v. C.I.R.*, 977 F.2d 585 (unreported), 1992 WL 266028, at *3 (7th Cir. Oct. 7, 1992) (holding that judicial notice was not appropriate because the plaintiff "was trying to inject legal argument into the trial, and Rule 201 has no application to legal arguments"); Fed. R. Evid. 201; *see also* 150 A.L.R. Fed. 543 (orig. pub. 1998) ("[L]egal arguments and conclusions are not adjudicative facts subject to judicial notice under Rule 201.") For example, in *Berk v. Mohr*, 2012 WL 3780313, at *10 (S.D. Ohio July 23, 2012), *report and recommendation adopted sub nom. Berk v. Moore*, No. 2:10-CV-1082, 2012 WL 3780303 (S.D. Ohio Aug. 31, 2012), the Court declined to take judicial notice of the plaintiffs' "own legal conclusions." The court further explained that the "[p]laintiffs' own interpretation of statutes, other laws and/or the [Ohio Parole Board] Handbook is not an appropriate subject of judicial notice." *Id*. (citing *Adesida,* 1998 WL 136186, at *1-2).

The Sixth Circuit has also expressly distinguished between "'adjudicative facts,' or the 'facts of the particular case,' [and] . . . 'legislative facts,' which are facts 'which have relevance to legal reasoning . . . .'" *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002), *holding modified by Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776 (6th Cir. 2003) (citing Fed. R. Evid. 201 Advisory Committee's note (1972)). In holding that the trial court appropriately refused to take judicial notice of certain regulations contained in the Code of Federal Regulations (C.F.R.), the court in *Toth* explained that as a general matter, judicial notice is not available for legislative facts. *Id.* "Thus, judicial notice is generally not the appropriate means to establish the legal principles governing the case." *Id*.

For the same reasons, courts have routinely declined to take judicial notice as to the meaning of contractual agreements, particularly where the parties have disagreed as to the meaning

6

or scope of the agreement in question. For example, in *In Matter of Walsh Constr. Co.*, 2016 WL 1466557, at *6–7 (W.D. Ky. Apr. 14, 2016), the Western District of Kentucky declined to take judicial notice of letters that purportedly evidenced an agreement by one of the parties as to acceptance of liability. The court explained that the letters were "reasonably in dispute as the parties disagree[d] as to whether or not they show[ed] that Walsh agreed to accept liability and effectively waived its right to limit its liability under the Limitation Act." *Id*. at *6. Among other disputes, the court found that the parties had disagreed as to the meaning and significance of certain terms in the purported contract. *Id*. at *6-7. As a result, the letters were "not appropriately subject to judicial notice." *Id*. at *7; *see also Carter v. United States*, 2018 WL 651369, at *5 (Fed. Cl. Jan. 31, 2018) (citations omitted) (explaining that courts disfavor resolving issues that involve contract interpretation at the motion to dismiss stage, and finding that judicial notice regarding such matters was not appropriate).

The Sixth Circuit has also expressly confirmed that a request to take judicial notice must be denied if the requesting party has failed to supply the court with the information necessary to establish the alleged fact at issue. *Husein*, 478 F.3d at 337. In *Husein*, the court held that judicial notice was not appropriate where the party cited to a source (a Westlaw database) but failed to identify specifically *where* the particular information at issue could be found. *See id*. The court has similarly held that judicial notice is not appropriate where "there is no 'reliable source of verification'" for the fact alleged. *Pearce*, 529 F. App'x at 4559 (quoting 4 J. McLaughlin, Weinstein's Federal Evidence § 201.12 (2d ed.1997)).

## ARGUMENT

None of the alleged "facts" the Plaintiffs have identified constitute "adjudicative facts" under Rule 201. To the extent that the Plaintiffs' assertions constitute "facts" at all, they are not

7

even arguably "generally known within the territorial jurisdiction of the trial court" and, as further discussed below, none are "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed. R. Evid. 201. Rather, as stated, these alleged "facts" are a mixture of interpretation, conclusion and statements taken out of context. Of even greater significance is that these "facts" are no substitute for Dr. Terry's expert opinions and they do not excuse his ignoring, at worst, or assuming, at best, exposure and dose at the Kingston site. Plaintiffs have not identified any case in which any court took judicial notice of alleged "facts" similar to those at issue.

Each of the alleged "facts" at issue is addressed below, in the order in which it is identified in the Motion.

**Alleged Adjudicative Fact No. 1:** "TVA contracted with [Jacobs] to be the 'Independent Site Wide Safety Contractor' to manage the fly ash remediation project at the KIF CERCLA superfund remediation site in Kingston, Tennessee."

Authority cited: Doc. 11-1, TVA / Jacobs contract, at 6.

The first of the alleged "facts" at issue contains multiple assertions and descriptions that are not found in the only document cited, the TVA/Jacobs Contract. While Plaintiffs have quoted the Contract as identifying Jacobs as the "Independent Site Wide Safety Contractor," that description is not found anywhere in the document. Nor does the document generally support an assertion that Jacobs was a "safety contractor." The only page cited in the Motion, page 6, identifies Jacobs as an independent contractor, but does not reference "safety." [Doc. 11-1, at 8.] Rather, it merely indicates that Jacobs is responsible for *Jacobs'* agents and employees,[1] and for its own negligence and willful misconduct. [*Id*.] Jacobs also contracted to draft the Site Wide Safety and Health Plan ("SWSHP") for the Kingston Site [Doc. 11-1, at 30], but there is no contract

---

[1] None of the Plaintiffs are alleged to be employees or agents of Jacobs. [*See* Doc. 59, Am. Compl.]

8

or other document that suggests that, in preparing the SWSHP, which was ultimately approved by EPA and TVA [Doc. 11-3, at 5], Jacobs became the "Site Wide Safety Contractor." Finally, the TVA/Jacobs Contract does not reference "CERCLA," and does not contain the term "superfund."

For all of these reasons, Alleged Adjudicative Fact No. 1 is not "generally known," and is not "capable of accurate and ready determination" by resort to the TVA/Jacobs Contract, the only document cited. Fed. R. Evid. 201; *see Pearce*, 529 F. App'x at 458–59; *Husein*, 478 F.3d at 337. Moreover, Plaintiffs' characterization of Jacobs' role is clearly "subject to reasonable dispute." *Id*. Therefore, judicial notice of Alleged Adjudicative Fact No. 1 is not appropriate.

> **Alleged Adjudicative Fact No. 2:** "This contract required Jacobs, as a matter of contractual duty, to protect the workers on site, which included this intended class of Plaintiffs. Jacobs had a duty in contract to protect all those who may come into contact with the fly ash that was considered a chemical hazard by Jacobs, TVA, and the EPA."
>
> Authority cited: Doc. 11-1, TVA / Jacobs contract (no pin cite); TDEC Order of Consent (no pin cite); SWSHP Rev. 3 (no pin cite); EPA Administrative Order of Consent ("EPA AOC") (no pin cite).

The second alleged "fact" is not a proper subject for judicial notice because it contains legal conclusions, and multiple factual assertions that are not supported by the documents Plaintiffs rely upon. First, Plaintiffs' assertions as to what the Contract "required . . . as a matter of contractual duty" are clearly Plaintiffs' "own legal conclusions" and are, therefore, not "adjudicative facts" subject to judicial notice. *See Berk*, 2012 WL 3780313, at *10; *see also Adesida*, 1998 WL 136186, at *1-2; *Taylor*, 162 F.3d at 830-31; *In Matter of Walsh Constr. Co.*, 2016 WL 1466557, at *6–7. Moreover, Plaintiffs have failed to identify any particular portion of any of the documents cited that suggest, let alone conclusively establish that: (1) Jacobs had a duty to protect "all those who may come into contact with the fly ash . . ."; or (2) that the fly ash was considered a "chemical hazard" by Jacobs, TVA, or the EPA. And those assertions are clearly contested, and are contradicted by the documents Plaintiffs rely upon. [*See* Doc. 130, Ans. to Am.

9

Compl., at ¶¶ 1-133]; *see Pearce*, 529 F. App'x at 458–59; *Husein*, 478 F.3d at 337.  In particular, while the EPA AOC provides that fly ash *contains* substances that are considered "hazardous substances" under Section 101 of CERCLA, it does not provide that *fly ash*, which generally contains only trace amounts of the potentially harmful substances identified, is itself a hazardous substance.  [Doc. 267-1, at 8.]

Therefore, Alleged Adjudicative Fact No. 2 is not "generally known," and is not "capable of accurate and ready determination" by resort to the documents cited.  Fed. R. Evid. 201.  And Plaintiffs' characterization of Jacobs' duties is clearly "subject to reasonable dispute."  Therefore, Plaintiffs' request that the Court take judicial notice of Alleged Adjudicative Fact No. 2 should be denied.

> **Alleged Adjudicative Fact No. 3:**  "The Contract, Jacobs Site Wide Safety and Health Plan . . . , [and the] EPA Administrative Order of Consent [] required protection from the hazards associated with fly ash as the documents clearly indicate the constituents of fly as[h] were capable of causing imminent harm to human health.  Moreover, in Sec. 4 of the SWSHP the document described the myriad of specific organs and biological systems of the human body that goes beyond the skin (largest bodily organ), the liver (the second largest bodily organ), the heart, lungs, kidneys, eyes, pulmonary system, endocrine system, neurological system, and etc." (emphasis removed from original).
>
> Authority cited: Doc. 11-1, TVA / Jacobs contract (no pin cite); SWSHP, Sec. 4-2 and 4-5 (no pin cite); EPA AOC (no pin cite).

Plaintiffs' request that the Court take judicial notice of Adjudicative Fact No. 3 should be denied for similar reasons.  Again, Plaintiffs' allegations regarding what the TVA/Jacobs Contract, SWSHP, and EPA AOC "required" constitute legal conclusions, rather than adjudicative facts, and are, therefore, not appropriate subjects for judicial notice.  *See Adesida*, 1998 WL 136186, at *1-2; *Taylor*, 162 F.3d at 830-31; *In Matter of Walsh Constr. Co.*, 2016 WL 1466557, at *6–7.  And there is no language in any of the documents cited to the effect that the levels of the constituents of fly ash found at Kingston were "capable of causing *imminent* harm" of any kind.  (emphasis

added).  This, then, is Plaintiffs' unsupported conclusion from the cited document, which conclusion is at odds with the relevant provisions of the SWSHP, *inter alia.* Plaintiffs have not even identified particular portions of the documents that address that contention. *See Pearce*, 529 F. App'x at 458–59; *Husein*, 478 F.3d at 337.  Moreover, that is one of the key disputes that is now before the Court by way of Jacobs' dispositive and *Daubert* Motions and is, therefore, clearly a matter "subject to reasonable dispute."  In short, there can be no contention that these matters are "generally known" or that they are "capable of accurate and ready determination" by resort to the documents cited.  Fed. R. Evid. 201.  Therefore, Plaintiffs' request as to Adjudicative Fact No. 3 should be denied.

> **Alleged Adjudicative Fact No. 4:** "In accordance with the contract executed by Jacobs and TVA for fly ash remediation at KIF, Jacobs was to err on the side of caution and if there was any question or doubt as to what safety decision to make regarding protection of the workers, the decision that was the most proactive and stringently protective in favor of the safety of the worker must always be chosen." (emphasis removed from original).
>
> Authority: Doc. 11-1, TVA / Jacobs Contract (no pin cite).

Alleged Adjudicative Fact No. 4 contains multiple legal conclusions, and Plaintiffs have failed to identify any portion of the only document cited, the TVA/Jacobs Contract, that affirmatively addresses their contentions.  Again, Plaintiffs' allegations as to what the Contract required are their own legal conclusions, rather than adjudicative facts.  *See Berk*, 2012 WL 3780313, at *10; *see also Adesida*, 1998 WL 136186, at *1-2; *Taylor*, 162 F.3d at 830-31; *In Matter of Walsh Constr. Co.*, 2016 WL 1466557, at *6–7.  Such matters are more appropriately addressed through summary judgment or at trial. *Id.*  Additionally, there is no portion of the Contract that specifically addresses whether and to what extent Jacobs was to "err on the side of caution," or how to proceed "if there was any question or doubt as to what safety decision to make."  Plaintiffs have, therefore, failed to establish that this allegation is "capable of accurate and

11

ready determination" by resort to the Contract. Fed. R. Evid. 201; *see Pearce*, 529 F. App'x at 458–59; *Husein*, 478 F.3d at 337. These issues were, instead, addressed in the SWSHP, which Jacobs complied with at all times during the pendency of the cleanup project at Kingston. And Plaintiffs' contentions regarding Jacobs' duties under the SWSHP are not an appropriate substitute for the descriptions and requirements set forth in the Plan. For all of these reasons, this alleged "fact" is not an appropriate matter for judicial determination under Rule 201.

> **Alleged Adjudicative Fact No. 5:** "The EPA informed Jacobs that due to the health hazards associated with worker exposure to the fly ash they needed to wear respirators and full TIVEK [sic] gear to protect them from the chemical hazard, because fly ash was capable of harming their health." (emphasis removed from original).

Authority: SWSHP, Appendix B or C (no pin cite).

In Alleged Adjudicative Fact No. 5, Plaintiffs have grossly mischaracterized the portions of the SWSHP that address personal protective equipment ("PPE"), including the provisions addressing the use of respirators and protective outerwear. In fact, Adjudicative Fact No. 5 is false. In particular, the SWSHP provides that different levels of PPE were to be worn under different conditions, which are specifically set forth in the Plan. The SWSHP is the authoritative source for what the EPA told Jacobs (and the world) about respirators, TYVEK, and PPE, because the SWSHP had to be and was approved by the EPA (including all revisions). The SWSHP speaks for itself, must be read as a whole, and speaks clearly. Respiratory PPE was to be used only when it was required (Doc. 11-3, at 36-37; 11-4; at 10 "step 4") and could not be used voluntarily by site personnel unless certain conditions were met (Docs. 11-3, at 96; 11-4, at 1). The Plan also provided detailed requirements for monitoring the constituents of fly ash and established the constituent with the lowest permissible exposure limit as the indicator for PPE use. [Doc. 11-3, at 26]. Moreover, Jacobs set a "Site Action Level," which was one-half of, and, therefore, more conservative and protective than, the eight-hour site exposure limit recognized by OSHA or the

ACGIH. [Doc 11-3, at 27]. In short, the SWSHP clearly did not require that all workers wear respirators or TYVEK at all times at the Kingston site and the Plan itself disputes Plaintiffs' alleged Adjudicative Fact No. 5. Therefore, judicial notice of Alleged Adjudicative Fact No. 5 is not appropriate.

> **Alleged Adjudicative Fact No. 6:** "The EPA Administrative Order of Consent states that fly ash is a chemical hazard that causes injury to human pulmonary system (lungs) . . . and states that fly ash constituents cause harm to human health." (emphasis removed from original).
>
> Authority: EPA Administrative Order of Consent, at 8.

In their sixth alleged "fact," Plaintiffs have again mischaracterize the only document they cite, the EPA AOC. As stated, while the EPA AOC provides that fly ash contains substances that are considered "hazardous substances" under Section 101 of CERCLA, it does not provide that fly ash, itself, is a "chemical hazard." [Doc. 267-1, at 8.] The EPA AOC also does not affirmatively state that the constituents of fly ash "*cause* harm to human health." [*See id.*] Rather, it merely states that certain constituents of fly ash have been identified as "hazardous substances," which means that they can, under certain circumstances and in certain doses (which were never present at the Kingston site), potentially cause harm in humans. [*See id.*] These matters, again, relate to the issues that are now before the Court by way of Jacobs' dispositive and *Daubert* motions, and are, therefore, not appropriate matters for judicial notice under Rule 201. Therefore, Plaintiffs' request that the Court take judicial notice of Alleged Adjudicative Fact No. 6 should be denied. Fed. R. Evid. 201. As noted, this is not a substitute for the expert opinion(s) the plaintiffs have failed to provide on general causation.

> **Alleged Adjudicative Fact No. 7:** "Jacobs, Site Wide Safety and Health Plan . . . states the expert adjudicative fact that the following constituents in fly ash, including but not limited to the following, health hazardous substances that are capable of causing harm to human health and are cancerous carcinogens are [sic]: (a) Arsenic-(rat poison) (b) Barium (c) Beryllium (d) Cadmium (e) Chromium (f) Lead (g) Thallium (h) Vanadium (i)

13

Radionuclides, including radium, uranium, and cesium." (emphasis removed from original)

Authority: Doc. 207-1, SWSHP Rev. 6, Table 4-2, at 4-14 through 4-19.

Alleged Adjudicative Fact No. 7 contains both legal conclusions and contested factual assertions that must be addressed by qualified experts. First, Plaintiffs' contention that the SWSHP contains "expert adjudicative fact[s]" is clearly an unsupported legal conclusion. Second, Plaintiffs' assertion that the listed "constituents *in fly ash*" are "capable of causing harm to human health" appears to track Plaintiffs' contentions regarding general causation, set forth in their Response to Jacobs' Renewed Motion for Partial Summary Judgment on General Causation. [*See* Doc. 253, at 4, 8, 10, 12.] As the Court is well-aware, the parties have now filed numerous briefs spanning hundreds of pages addressing whether fly ash, and the constituents contained therein, were capable of causing the harm alleged in these cases. The parties have all acknowledged that that issue must be addressed through the testimony of qualified experts. Additionally, Plaintiffs' characterizations of the SWSHP, which speaks for itself, are not appropriate substitutes for the language in the Plan, particularly in light of the parties' disagreements as to the significance of the cited provisions. [*See* Doc. 242, at 14-24.] For all of these reasons, the contentions contained in Alleged Adjudicative Fact No. 7 are clearly not appropriate matters for judicial notice. *See Adesida*, 1998 WL 136186, at *1-2; *Taylor*, 162 F.3d at 830-31; *Pearce*, 529 F. App'x at 458–59; *Husein*, 478 F.3d at 337; Fed. R. Evid. 201.

**Alleged Adjudicative Fact No. 8:** "Moreover, based upon the SWSHP that relied upon Jacobs [sic] expertise in creating the non-discretionary governing document that provides expertise paraphrasing [sic] that the more hours worked by the Plaintiffs would cause an incremental decrease in the amount of particulate toxic constituents the individuals could be exposed to, a risk of which they were never informed."

Authority: Doc. 207-1, SWSHP Rev. 6, Table 4-2, at 4-14 through 4-19.

Plaintiffs' eighth alleged "fact" similarly contains both legal conclusions and unsupported factual allegations that must be addressed by qualified experts. The assertion that the SWSHP is a "non-discretionary governing document" is a legal conclusion. *See Adesida*, 1998 WL 136186, at *1-2; *Taylor*, 162 F.3d at 830-31. The remaining assertions in Alleged Adjudicative Fact No. 8, which relate to the relationship between hours worked and the levels of exposure to potentially toxic constituents in fly ash, clearly must be addressed through expert proof. Moreover, again, the levels to which Plaintiffs were allegedly exposed, as well as the issue of whether Plaintiffs were adequately informed about the risks of working in and around fly ash, are issues that the parties have vigorously disputed since this case was filed, and are not at issue in either of the above-referenced motions. [*See* Docs. 59 and 130.] Plaintiffs' request that the Court take judicial notice of these assertions should be denied. *Id.*; *Pearce*, 529 F. App'x at 458–59; *Husein*, 478 F.3d at 337; Fed. R. Evid. 201.

> **Alleged Adjudicative Fact No. 9:** "The EPA along with OSHA, considers these toxic constituents of fly ash at KIF under 29 C.F.R. 1910 *et seq.* part Z to be toxic carcinogenic cancer-causing agents capable of causing fatal harm to human health: (a) Arsenic (b) Lead (c) Vanadium (d) Silica (e) Aluminum (f) Boron (g) Cobalt (h) Mercury (i) Beryllium (j) Asbestos (k) Copper (l) Thallium (m) Calcium Oxide (n) Radionuclides[.]
>
> The remaining constituents are also rendered as constituents that are capable of harming humans: (o) Cadmium (Also, is an immediate concern due to health ASTDR, NIH.) (p) Barium (Also, designated as a carcinogen by EPA, EPCRA, CERCLA) (q) Thallium (DHS – used for terrorism dirty bombs-RDD) (r) Molybdenum (s) Manganese (t) Chromium (40 C.F.R. 261 *et. seq.* mixed radiological waste)." (emphasis removed from original)
>
> Authority: 29 CFR 1910 et seq. part Z, 40 C.F.R. 261 et. seq.

Like Alleged Adjudicative Fact No. 7, Plaintiffs' ninth alleged "fact" addresses disputed issues that are now before the Court by way of Jacobs' dispositive and *Daubert* Motions. In particular, these assertions again suggest that the constituents of fly ash at Kingston were "capable" of causing "fatal harm to human health." Jacobs, of course, has maintained since these cases began

15

that the Plaintiffs were never exposed to concentrations or doses of the constituents of fly ash at Kingston that were capable of causing harm in humans. Plaintiffs try to convert the undisputed fact that constituents of fly ash *could potentially* be harmful into a fact that will support their burden in this case. Plaintiffs, however, do so without regard to the essential elements of dose and duration of exposure and without showing that there was *actual* exposure to any constituent that could potentially be harmful. [*See* Doc. 242, at 14-20]. Therefore, Plaintiffs' request that the Court take judicial notice of Alleged Adjudicative Fact No. 9 should be denied. *Pearce*, 529 F. App'x at 458–59; *Husein*, 478 F.3d at 337; *Bonds,* 12 F.3d 540, 553; Fed. R. Evid. 201.

> **Alleged Adjudicative Fact No. 10:** "The Department of Homeland Security also states clearly the knowing adjudicative facts [sic] that the following fly ash constituents are capable to cause harm through terrorist acts to human health [sic]: they are, including but not limited to the following chemicals of interest (COI) located at 6 C.F.R. Part 27: (u) Arsenic (v) Aluminum (w) Amonia (an actively used substance on site) (x) Barium (y) Boron (z) Lead (aa) Magnesium (bb) Sulfur (cc) Potassium."
>
> Authority: 6 C.F.R. pt. 27.

Alleged Adjudicative Fact No. 10, which addresses information found in 6 C.F.R. pt. 27 regarding substances that are purportedly utilized by terrorists, does not have any conceivable relevance to this case. There is no allegation, let alone any opinion from any expert suggesting that the Plaintiffs' exposure to any substance was similar to the types of exposure, or the doses or concentrations of exposure, that people might be subjected to as a result of a terrorist attack. More generally, the content of particular regulations is not an appropriate subject for judicial notice, particularly where the parties have disagreed as to the significance of the matters addressed in the regulations at issue. *See, e.g., Toth* 306 F.3d at 349. Plaintiffs' request that the Court take judicial notice of Alleged Adjudicative Fact No. 10 should be denied. Fed. R. Evid. 201.

> **Alleged Adjudicative Fact No. 11:** "Further, the fly ash contained within the contents of the SWSHP [sic] that governed the safety of workers and all living near the site designated Jacobs duty to protect them. This non-discretionary governing document contained

information that referenced the fly ash was composed of the radionuclides uranium, cesium, and radium. (Ex: 3, and 5, EPA response to Perry County, AL landfill whose workers handled the radioactive ash and were provided respiratory protection and coveralls unlike the workers at Kingston)."

<u>Authority</u>: SWSHP Rev. 3 (no pin cite); SWSHP Rev. 3 App. E through J (no pin cite).

Plaintiffs' Alleged Adjudicative Fact No. 11 also contains legal conclusions, as well as unsupported and disputed factual allegations that must be addressed by qualified experts. Plaintiffs' contentions regarding Jacobs' duties under the SWSHP are clearly legal conclusions that are not proper subjects for judicial notice. *Adesida*, 1998 WL 136186, at *1-2; *Taylor*, 162 F.3d at 830-31. Plaintiffs' characterization of the SWSHP as a "non-discretionary governing document" is also a legal conclusion not subject to judicial notice. *Id.* Additionally, the documents cited do not support Plaintiffs' factual assertions. Neither the SWSHP nor the "EPA FAQs" relating to the Perry County, Alabama landfill refer to the fly ash from the Kingston Site as "radioactive ash." Neither document suggests that all workers at the Alabama site who "handled" fly ash were required, at all times, to wear respiratory protection and coveralls. Neither document suggests that the levels of radionuclides or any other radioactive elements found in the fly ash were high enough to present any risk of harm to anyone working in or around the fly ash. And neither document suggests that use of respiratory equipment and/or coveralls was meant to address such a risk. Moreover, these issues are clearly disputed, must be addressed by qualified experts, and are not at issue in the pending motions. Jacobs has consistently maintained that the potentially harmful constituents of the fly ash at Kingston, including radioactive constituents, never reached levels sufficient to present any risk to human health. [Doc. 242, at 21-24.]; *see Pearce*, 529 F. App'x at 458–59; *Husein*, 478 F.3d at 337.

17

Under these circumstances, the Court should not take judicial notice of the legal conclusions and factual assertions contained in Alleged Adjudicative Fact No. 11. Fed. R. Evid. 201.

## CONCLUSION

For all of these reasons, Jacobs respectfully requests that the Court deny the Motion in its entirety.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: /s/ James F. Sanders
    James F. Sanders    No. 005267
    jsanders@nealharwell.com
    J. Isaac Sanders    No. 029372
    isanders@nealharwell.com
    Marie T. Scott    No. 032771
    mscott@nealharwell.com
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573

- *and* –

**SMITH CASHION & ORR, PLC**
Jefferson C. Orr    (No. 12743)
jorr@smithcashion.com
S. Joe Welborn    (No. 21747)
jwelborn@smithcashion.com
Joshua K. Chesser    (No. 27993)
jchesser@smithcashion.com
231 Third Avenue North
Nashville, Tennessee 37201
Telephone: (615) 742-8555
Facsimile: (615) 742-8556

*Attorneys for Defendant
Jacobs Engineering Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of July, 2018, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

    /s/ James F. Sanders