# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| GREG ADKISSON, ET AL., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. | 3:13-CV-505-TAV-HBG |
| ) | | |
| JACOBS ENGINEERING GROUP, INC. ) | | |
| ) | | |
| Defendant. ) | | |
| | | |
| KEVIN THOMPSON, ET AL., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. | 3:13-CV-666-TAV-HBG |
| ) | | |
| JACOBS ENGINEERING GROUP, INC. ) | | |
| ) | | |
| Defendant. ) | | |
| | | |
| JOE CUNNINGHAM, ET AL., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. | 3:14-CV-20-TAV-HBG |
| ) | | |
| JACOBS ENGINEERING GROUP, INC. ) | | |
| ) | | |
| Defendant. ) | | |
| | | |
| CRAIG WILKINSON, ET AL., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. | 3:15-CV-274-TAV-HBG |
| ) | | |
| JACOBS ENGINEERING GROUP, INC. ) | | |
| ) | | |
| Defendant. ) | | |

| | | |
|---|---|---|
| **ANGIE SHELTON, as wife and next of kin, on behalf of MIKE SHELTON, deceased, and RICKY DEAN SHELTON, brother of decedent,** | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.     3:15-CV-420-TAV-HBG |
| **JACOBS ENGINEERING GROUP, INC.,** | ) ) ) | |
| Defendant. | ) | |
| **JOHNNY CHURCH,** | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.     3:15-CV-460-TAV-HBG |
| **JACOBS ENGINEERING GROUP, INC.,** | ) ) ) | |
| Defendant. | ) | |
| **DONALD R. VANGUILDER, JR.,** | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.     3:15-CV-462-TAV-HBG |
| **JACOBS ENGINEERING GROUP, INC.,** | ) ) ) | |
| Defendant. | ) | |
| **BILL ROSE,** | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.     3:15-CV-17-TAV-HBG |
| **JACOBS ENGINEERING GROUP, INC.,** | ) ) ) | |
| Defendant. | ) | |
| **JUDY IVENS, as sister and next of kin, on behalf of JEAN NANCE, deceased,** | ) ) ) | |

|                                    |   |     |                      |
|------------------------------------|---|-----|----------------------|
| **Plaintiffs,**                    | ) |     |                      |
| v.                                 | ) | No. | 3:16-CV-00635-TAV-HBG |
|                                    | ) |     |                      |
| **JACOBS ENGINEERING GROUP, INC.,** | ) |     |                      |
|                                    | ) |     |                      |
| **Defendant.**                     | ) |     |                      |
| **PAUL RANDY FARROW,**             | ) |     |                      |
|                                    | ) |     |                      |
| **Plaintiff,**                     | ) |     |                      |
| v.                                 | ) |     |                      |
|                                    | ) | No. | 3:16-CV-00636-TAV-HBG |
| **JACOBS ENGINEERING GROUP, INC.,** | ) |     |                      |
|                                    | ) |     |                      |
| **Defendant.**                     | ) |     |                      |

### PLAINTIFFS' RESPONSE TO OBJECTIONS OF JACOBS ENGINEERING GROUP, INC. TO THE COURT'S JULY 18, 2018 MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiffs' respond to the objections of Jacobs Engineering Group, Inc. ("Jacobs" or "Defendant") to the Court's July 18, 2018, Memorandum Opinion and Order denying Jacobs' motion to exclude the testimony of Plaintiffs' expert witnesses. Jacobs' objections to the Memorandum Opinion and Order should be overruled because Jacobs completely fails to demonstrate how Judge Guyton's order is clearly erroneous or contrary to law.

### I. STANDARD OF REVIEW

Judge Guyton's Memorandum Opinion and Order was issued pursuant to the authority of 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), for nondispositive motions referred to the Magistrate Judge. Under Rule 72(a) the Court may only modify or set aside any part of an order resolving a nondispositive motion that is "clearly erroneous or is contrary to law." This Court has explained the "clearly erroneous" standard as follows:

> A judicial finding is deemed to be clearly erroneous when it leaves the reviewing court with 'a definite and firm conviction that a mistake has been committed.' *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir.1985). Under the clearly erroneous standard, a court reviewing a magistrate

3

judge's order should not ask whether the finding is the best or only conclusion that can be drawn from the evidence. Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge. Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable.

*Nisus Corp. v. Perma-Chink Sys., Inc.*, 327 F. Supp. 2d 844, 848 (E.D. Tenn. 2003).

## II. JACOBS COMPLETELY FAILS TO DEMONSTRATE THE JUDGE'S MEMORANDUM AND ORDER IS CLEARLY ERRONEOUS OR CONTRARY TO LAW.

The Magistrate Judge wrote a well-reasoned thirty-two-page Memorandum Opinion and Order denying Jacobs' motion to exclude Plaintiffs' expert epidemiologist Dr. Paul Terry. Jacobs' seven arguments completely fail to demonstrate that any part of the Memorandum Opinion and Order is clearly erroneous or contrary to law. Plaintiffs respond in turn to each argument as follows:

   A. <u>Objection No. 1: Judge Guyton properly applied Fed. R. Civ. P. 37(c)(1) and distinguished his prior decision denying new expert witnesses from the situation with Dr. Terry's report.</u>

It was not clearly erroneous or an error of law for Judge Guyton to decide Defendant's motion to exclude the testimony of Dr. Terry under Fed. R. Civ. P. 37(c)(1) and to distinguish his reasoning in deciding the motion to exclude from that in his prior decision denying new expert witnesses [Doc. 235]. The prior decision dealt with Plaintiffs' request to name three new experts after the expert disclosure deadline was determined to have passed. In that decision the Court applied Rules 6(b)(1)(B), 16(b) <u>and</u> 37(c)(1). The decision on the motion to exclude Dr. Terry's proffered expert testimony dealt with a timely disclosed expert witness whose later-served supplemental expert report was found to be untimely because it was not proper supplementation. Under the circumstances in the current motion, Judge Guyton appropriately exercised his discretion under Rule 37(c)(1). Even if he could have also applied Rules 6(b)(1)(B) and 16(b), it

4

would not be an error of law for Judge Guyton to determine that the standard for "good cause" under Rules 6(b)(1)(B) or 16(b) was met when he concluded that violation of Rule 26(a) and (e) was harmless or substantially justified under Rule 37(c)(1).

Finally, Judge Guyton distinguished the reasoning that led to his prior decision on "good cause" and "harmless or substantially justified" as follows:

> Defendant also contends that the Court's reasoning in its March 9, 2018 order, which found that Defendant would be prejudiced by extending the expert disclosure deadline, applies with equal force here. In making its previous finding, the Court was faced with Plaintiffs' request to introduce three entirely new expert witnesses who had only submitted preliminary statements that explained their anticipated methodologies and opinions that were based on studies that had yet to be conducted. [Doc. 235 at 14]. The Court expressed doubt that a whole new round of expert discovery could be completed in a timely manner without disrupting deadlines in the case and without costing Defendant significant time, money, or resources given the preliminary nature of the opinions anticipated to be expressed in the reports. [Id.]. These concerns do not present themselves in the instant matter.

[Doc. 235 at 18]. This reasoning is supported by the facts and does not depend on an erroneous interpretation of the law.

B. <u>Obection No. 2: Judge Guyton properly applied the standards adopted by the Sixth Circuit relevant to the issue of harmlessness, and was not required to find an "honest mistake."</u>

There was no error of law in Judge Guyton's failure to find an "honest mistake" by Plaintiffs in his analysis of whether to exclude the testimony of Dr. Terry under Fed. R. Civ. P. 37(c)(1). The Sixth Circuit's *Howe v. City of Akron* decision at 801 F.3d 718, 748 (6th Cir. 2015) did not adopt an "honest mistake" factor, as argued by Defendant. It adopted the Fourth Circuit's broad, non-exclusive factors from *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014), which were stated as follows:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

5

*Howe*, 801 F.3d at 748. The Sixth Circuit has not narrowed the fifth factor to require determination of an "honest mistake" in every instance as an explanation for the party's failure to timely disclose the evidence. Finally, the factors are considered together, and, even if Judge Guyton failed to properly apply one of them, he clearly found the other factors weigh against exclusion, as discussed below.

   C. Objection No. 3: Judge Guyton properly considered and applied the five factors adopted in *Howe*.

Judge Guyton's properly considered and applied the five factors adopted by the Sixth Circuit in *Howe*. His findings are supported by the facts before the Court and by a reasonable interpretation of the law and should not be disturbed under the clearly erroneous standard. Furthermore, the factors are considered and weighed together, and, even if Judge Guyton failed to properly apply one of them, he clearly found other factors weigh against exclusion.

For the second factor, the ability to cure the surprise, Jacobs offers an expansion of the same arguments it presented in its reply brief considered by Judge Guyton: mainly that it has already expended money on expert witness reports and would have to spend more. In determining the ability to cure the surprise weighed in favor of Plaintiffs, Judge Guyton concluded, "Defendant has not demonstrated what is further required of their experts to rebut Dr. Terry's report or why it would require the services of new rebuttal experts." [Doc. 279 at 17]. Defendant has not provided anything new in its objections on this subject. Judge Guyton relied upon the length of time remaining before trial and the ability of Defendant to take Dr. Terry's deposition as two reasons why the ability to cure the surprise weighs in favor of Plaintiffs. In fact, Dr. Terry's deposition is now scheduled for August 24, 2018, providing Defendant ample time to prepare its expert witnesses for trial based on Dr. Terry's deposition testimony.

6

With regard to the fifth factor, explanation for the failure to timely disclose, Judge Guyton weighed the facts and considered the law and came to a reasonable finding that this factor is neutral. Even if this reviewing Court would come to a different conclusion, Judge Guyton's finding should not be disturbed under the clearly erroneous standard of review. Similarly, with regard to the fourth factor, the importance of the evidence, Judge Guyton did not make an error of law in concluding that the obvious importance of the testimony of Plaintiffs' sole expert witness on the key issue of general causation weighs in favor of Plaintiffs, even if there are some courts who would find this factor never favors the nondisclosing party.

With regard to the third factor, Judge Guyton did not commit clear error in finding that the trial date will not be affected by permitting the testimony of Dr. Terry. Defendant has not pointed to any reason the trial date will need to be changed, nor has Defendant moved this Court for a continuance. Defendant has ample time to supplement the opinions of its experts and to prepare its expert witnesses after taking Dr. Terry's deposition in order to prepare for the trial date in October.

Finally, the Magistrate Judge did not clearly err in his exercise of the discretion provided to him in the application of Rule 37(c)(1). This is not a case where Plaintiffs have waited until the eve of trial to disclose an expert's supplemental opinions, potentially warranting the drastic remedy of excluding expert testimony. The "preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with caution." *Fraze v. Metropolitan Property and Casualty Insurance Company, No. 3*:14CV-00522 2017 WL 1193063, at *5 (W.D.Ky., March 10, 2017); *Union Ins. Co. v. Delta Casket Co., Inc.*, No. 06–2090, 2009 WL 6366865, at *3 (W.D.Tenn., Nov. 30, 2009); *E.E.O.C. v. Burlington Northern & Santa Fe Railway Co.*, No. 07–2450, 2009 WL 1531019, at *2 (W.D.Tenn., May 26, 2009); *Thorne v. Steubenville Police Officer*, 463 F.Supp.2d

760, 770 (S.D.Ohio 2006), *rev'd in part on other grounds*, 243 Fed. Appx. 157 (6th Cir.2007). It is within Judge Guyton's discretion to apply Rule 37(c)(1) in a manner consistent with the overarching objective of the Federal Rules to do substantial justice to litigants. See Fed. R. Civ. P. 1; *Complaint of Kreta Shipping, S.A.,* 181 F.R.D. 273, 276–78 (S.D. N.Y.1998).

   D. Objection No. 4: Judge Guyton did not misinterpret Dr. Terry's report and the nature of his opinions.

Judge Guyton did not misinterpret Dr. Terry's report and the nature of his opinions. In fact, he clearly explained how he reviewed them for purposes of the *Daubert* motion. Judge Guyton stated:

> The only questions this Court need presently answer are: (1) whether Dr. Terry is qualified to opine on general causation in a toxic tort case, and (2) whether his opinion that specific components found in fly ash at the Site—fine particulate matter, arsenic, cadmium, chromium, lead, nickel, vanadium, and naturally occurring radioactive materials—are capable of causing hypertension, coronary artery disease, lung cancer, leukemia, non-melanoma skin cancer, allergic contact dermatitis (skin allergy), peripheral neuropathy, asthma, and chronic obstructive pulmonary disease, is relevant and reliable.
>
> \*     \*     \*
>
> Turning to the reliability of Dr. Terry's report, Defendant argues that Dr. Terry's report is unreliable because it does not address the "minimum level" of dose or exposure in which fly ash creates an appreciable risk of harm. [Docs. 264 at 13-18 and 270 at 39-55]. However, as the Court observed above, the failure of Dr. Terry's methodology to quantify dose or exposure goes to the issue of whether Plaintiffs have met their burden on general causation and not to the admissibility of Dr. Terry's report.

[Doc. 279 at 29, 30].

The statement that Defendant complains about as a misinterpretation by Judge Guyton is supported by Dr. Terry's opinions.[1] For each opinion, Dr. Terry identified a specific component

---

[1] "Dr. Terry does not opine that fly ash exposure is capable of causing Plaintiff's particular health issues; rather, he seeks to answer whether 'specific components' that have been identified within the fly ash at the Site are capable of causing specific diseases reported by Plaintiffs." [Doc. 279, at 31 (citing Doc. 261-1, at 5) (emphasis in original).

8

of coal ash, including fine particulates and several toxic metals, that is capable of causing specific diseases. The fact that Defendant may argue some of the studies relied upon by Dr. Terry do not represent the same exposures as the coal ash exposures suffered by the Plaintiffs does not negate the reliability of his methodology. It goes to the weight of his opinions and is best left to cross examination of Dr. Terry and testimony by Defendant's counter experts at trial.

E. <u>Objection No. 5: Judge Guyton did not err in concluding that Dr. Terry's opinions are relevant and reliable.</u>

While it is difficult to understand the point being made by Defendant in Objection No. 5 and how it differs from Objection No. 4, it also falls far short of demonstrating Judge Guyton's decision was clearly erroneous. Judge Guyton did not conclude Dr. Terry had not provided opinions about whether the constituents in coal ash are "bioavailable" (capable of interacting with the body). To the contrary, Judge Guyton concludes:

> Dr. Terry's report is reliable because for each component identified within the fly ash that is asserted to be capable of causing a specific disease, Dr. Terry cites and discusses corresponding epidemiological literature, identifies and summarizes the type of studies, and conclusions therein, conducted within the cited literature, and discusses the <u>bioavailability, biologic plausibility, and biologic mechanisms of cause and effect</u>.

[emphasis added]. A review of Dr. Terry's report shows this conclusion to be valid. For instance, Dr. Terry's report considers bioavailability, biologic plausibility, and biological mechanisms for each constituent. *See e.g.*, Doc. 261-1 at 12-13, 16-17, 21, 24, 30-31, 37, 42, 47, 51, 60.

F. <u>Objection No. 6: Judge Guyton did not err in concluding that Dr. Terry's opinions are supported by the literature he cites.</u>

Judge Guyton's conclusion that Dr. Terry relied upon scientific literature in support of his opinions is not clearly erroneous. Defendant argues in its objection, without specific reference to any particular scientific study cited by Dr. Terry, that studies he relied upon do not fully support his general causation opinions. This was far beyond the scope of Defendant's *Daubert* motion and

9

is far beyond the scope of the Court's gatekeeping function under *Daubert*. Judge Guyton correctly concluded that under *Daubert*, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." [Doc. 279 at 31].

G. <u>Judge Guyton did not err in finding that Dr. Terry's opinions would assist the trier of fact in deciding the issue of general causation.</u>

Judge Guyton did not err in finding that Dr. Terry's opinions would assist the jury in deciding the issue of general causation. As discussed by Judge Guyton, epidemiology focuses on the question of general causation, and Dr. Terry is a well-qualified epidemiologist who can express opinions on whether a particular chemical is capable of causing a particular disease.[2] Even if the Court determines that some proof of general exposure is necessary for Plaintiffs to prevail on the issue of general causation, Dr. Terry's opinions about the epidemiological evidence connecting the coal ash constituents to which Plaintiffs were exposed to the particular illnesses they have suffered will greatly assist the jury.

Plaintiffs agree that the following admission by Defendant should be considered by the jury and by this Court in deciding the issue of general causation, but Dr. Terry's opinions go further:

> Everyone agrees that lead, arsenic, radium, and other constituents are found in fly ash and that those substances can, in certain doses, and under certain circumstances, and through certain avenues of exposure, cause the types of health issues alleged.

[Doc. 283 at 19]. Dr. Terry's opinions go further in describing the circumstances and avenues (routes) of exposure for each of the epidemiological studies so they can be compared to the circumstances and routes of exposure of the Plaintiffs in this case. They assess the strength of the

---

[2] "Epidemiology is the field of public health and medicine that studies the incidence, distribution, and etiology of disease in human populations." ... The focus of epidemiology addresses "the question of general causation (i.e., is the agent capable of causing disease?)" [Doc. 279 at 29]; "Based on Dr. Terry's training and experience in the field of epidemiology, the Court finds he is qualified to render opinions on whether exposure to a particular chemical is capable of causing a particular disease." [Doc. 279 at 30].

10

causal association between exposure to the constituents and the illnesses suffered by the exposed population. As discussed above, they also assess the bioavailability of the coal ash constituents and the biological plausibility that the association established in the epidemiological studies is supported by further evidence of the mechanism of toxicity based on animal studies and other scientific information.

## CONCLUSION

For the reasons set out in Judge Guyton's Memorandum Opinion and Order and this response to Defendant's objections, the Court should overrule Defendant's objections in their entirety.

Respectfully submitted.

*/s/ Gary A. Davis*
Gary A. Davis, TN. Bar No. 009766
Davis & Whitlock, P.C.
21 Battery Park Ave., Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
gadavis@enviroattorney.com

John B. Dupree
Keith D. Stewart
Stewart-Dupree, P.A.
713 Market Street, 2d Floor
Knoxville, TN 37902
T: (865) 437-5081
F: (865) 437-5082
john.dupree@knoxtnlaw.com
keithstewart@gmail.com

James K. Scott
713 Market Street, 1st Floor
Knoxville, TN 37902
T: (865) 254-8739
jimscott264@gmail.com

11

Jeffrey E. Friedman, Ala. Bar No. asb-6868-n77j
(admission Pro Hac Vice)
Friedman, Dazzio, Zulanas & Bowling, PC
3800 Corporate Woods Drive
Birmingham, AL 35242
T: (205) 278-7000
F: (205) 278-7001
jfriedman@friedman-lawyers.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 15, 2018, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

<i>/s/Gary A. Davis</i>
Attorney for Plaintiffs