# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### <u>AT KNOXVILLE</u>

| | | |
|---|---|---|
| GREG ADKISSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:13-CV-00505-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | *Lead case consolidated with* |
| _____ | ) | |
| KEVIN THOMPSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:13-CV-00666-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| JOE CUNNINGHAM, et al., | ) | *as consolidated with* |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:14-CV-00020-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | )_____ | |
| BILL ROSE, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. 3:15-CV-00017-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| CRAIG WILKINSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-00274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| ANGIE SHELTON, as wife and next of kin | ) | |
| on behalf of Mike Shelton, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-00420-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| JOHNNY CHURCH, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No.: 3:15-CV-00460-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |

DONALD R. VANGUILDER, JR.,       )
    Plaintiff,                                  )
v.                                                        )       No. 3:15-CV-00462-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,  )
    Defendant.                                 )
_____ )
JUDY IVENS, as sister and next of kin,      )
on behalf of JEAN NANCE, deceased,       )
    Plaintiff,                                  )
v.                                                        )       No. 3:16-CV-00635-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,  )
    Defendant.                                 )
_____ )
PAUL RANDY FARROW,                        )
    Plaintiff,                                  )
v.                                                        )       No. 3:16-CV-00636-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,  )
    Defendant.                                 )
_____ )


**BRIEF IN SUPPORT OF JACOBS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE,
<u>MOTION FOR A NEW TRIAL BASED ON AN ERRONEOUS VERDICT</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION & BACKGROUND ..................................................................................... 1

LEGAL STANDARDS ......................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

    A.    As a Threshold Matter, Jacobs Cannot Be Liable for Negligence Because It Is Entitled to Derivative Governmental Immunity. ............................................. 3

        1.    Plaintiffs Did Not Prove Jacobs Violated Any Contract Provision Regarding the Voluntary Use of Dust Masks. ............................................ 5

        2.    Plaintiffs Could Not Have Proven That Jacobs Violated Any Contract Provision by Failing to Train or Warn Workers About the Dangers of Excessive Fly Ash Because All Related Provisions Plainly Grant Jacobs Discretion. ................................................................. 6

        3.    Plaintiffs Could Not Have Proven That Jacobs Violated Any Contract Provisions When an Employee Suggested That Fly Ash Was Safe to Consume. ............................................................................... 7

    B.    Even If Jacobs Were Not Immune for Its Alleged Tortious Conduct, Plaintiffs Failed to Prove Their Negligence Claims. ............................................. 8

        1.    Plaintiffs Could Not Prove That Jacobs Owed a Legal Duty to Protect Them Against All Exposure to Fly Ash. ....................................... 9

        2.    Plaintiffs Failed to Offer the Necessary Expert Testimony to Prove That Jacobs Breached Any Duty It Legally Owed to Plaintiffs. .............. 10

        3.    Plaintiffs Failed to Offer Any Legally Relevant Proof Regarding General Causation. .................................................................................. 13

    C.    If the Court Denies Jacobs Judgment as a Matter of Law (or Grants Jacobs Judgment Only in Part), the Court Should Grant a New Trial. .............................. 17

CONCLUSION .................................................................................................................. 19

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.O. Smith Corp. v. United States*,
774 F.3d 359 (6th Cir. 2014) ................................................................................7

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
--- F. Supp. 3d. ----, 2018 WL 4494101 (E.D. Tenn. Sept. 19, 2018) ...................13

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
790 F.3d 641 (6th Cir. 2015) ................................................................................4

*Allen v. Pa. Eng'g Corp.*,
102 F.3d 194 (5th Cir. 1996) ...............................................................................16

*Am. & Foreign Ins. Co. v. Gen. Elec. Co.*,
45 F.3d 135 (6th Cir. 1995) ............................................................................13, 14

*Bain v. Wells*,
936 S.W.2d 618 (Tenn. 1997)..............................................................................13

*Baker v. Chevron USA, Inc.*,
680 F. Supp. 2d 865 (S.D. Ohio 2010) ................................................................15

*Barkes v. River Park Hosp., Inc.*,
328 S.W.3d 829 (Tenn. 2010).........................................................................11, 12

*Barron v. Emerson Russell Maint. Co.*,
2009 WL 2340990 (Tenn. Ct. App. July 30, 2009) ..............................................10

*Bell v. Johnson*,
404 F.3d 997 (6th Cir. 2005) ...............................................................................18

*Bonner v. ISP Techs., Inc.*,
259 F.3d 924 (8th Cir. 2001) ...............................................................................16

*Bradshaw v. Daniel*,
854 S.W.2d 865 (Tenn. 1993)..............................................................................13

*Brown v. Wal-Mart Stores, Inc.*,
1999 WL 1111514 (6th Cir. Nov. 24, 1999)........................................................13

*Chapman v. Bearfield*,
207 S.W.3d 736 (Tenn. 2006)..............................................................................11

*Davis v. Thorton*,
  180 N.W.2d 11 (Mich. 1970) ...................................................................................13

*Edwards v. Tenn. Valley Auth.*,
  255 F.3d 318 (6th Cir. 2001) ...................................................................................7

*Feyers v. United States*,
  749 F.2d 1222 (6th Cir. 1984) ................................................................................6

*Gasperini v. Ctr. for the Humanities, Inc.*,
  518 U.S. 415 (1996)................................................................................................18

*Gibson v. Mortg. Elec. Registration Sys., Inc.*,
  23 F. Supp. 3d 895 (W.D. Tenn. 2014)...................................................................8

*Giggers v. Memphis Hous. Auth.*,
  277 S.W.3d 359 (Tenn. 2009)..................................................................................8

*Grogan v. Uggla*,
  535 S.W.3d 864 (Tenn. 2017)................................................................................10

*Holmes v. City of Massillon*,
  78 F.3d 1041 (6th Cir. 1996) ..............................................................................2, 3

*In re KBR, Inc., Burn Pit Litig.*,
  744 F.3d 326 (4th Cir. 2014) ...................................................................................4

*Lockett v. United States*,
  938 F.2d 630 (6th Cir. 1991) ...................................................................................6

*Loesel v. City of Frankenmuth*,
  692 F.3d 452 (6th Cir. 2012) .................................................................................19

*Martin v. Sizemore*,
  78 S.W.3d 249 (Tenn. Ct. App. 2001) ...................................................................10

*McCall v. Wilder*,
  913 S.W.2d 150 (Tenn. 1995)..................................................................................8

*McCarthy v. Foltz*,
  1994 WL 468030 (6th Cir. Aug. 29, 1994).............................................................2

*McClain v. Metabolife Int'l, Inc.*,
  401 F.3d 1233 (11th Cir. 2005) .............................................................................16

*In re Meridia Prods. Liab. Litig.*,
  328 F. Supp. 2d 791 (N.D. Ohio 2004)..................................................................15

*Mitchell v. Boelcke*,
    440 F.3d 300 (6th Cir. 2006) ........................................................3

*Mitchell v. Gencorp Inc.*,
    165 F.3d 778 (10th Cir. 1999) ....................................................16

*Moon v. Saint Thomas Hosp.*,
    983 S.W.2d 225 (Tenn. 1998) ....................................................11

*Myers v. United States*,
    323 F.2d 580 (9th Cir. 1963) ......................................................4

*Noble v. Brinker Int'l, Inc.*,
    391 F.3d 715 (6th Cir. 2004) ......................................................2

*Park W. Galleries, Inc. v. Hochman*,
    692 F.3d 539 (6th Cir. 2012) ......................................................3

*Patterson-Khoury v. Wilson World Hotel-Cherry Rd., Inc.*,
    139 S.W.3d 281 (Tenn. Ct. App. 2003) ....................................12

*Pluck v. BP Oil Pipeline Co.*,
    640 F.3d 671 (6th Cir. 2011) ....................................................15

*Powers v. Cottrell, Inc.*,
    728 F.3d 509 (6th Cir. 2013) ....................................................11

*Rayford v. Ill. Cent. R.R.*,
    489 F. App'x 1 (6th Cir. 2012) ..................................................3

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)....................................................................3

*Rosebush v. United States*,
    119 F.3d 438 (6th Cir. 1997) ..................................................6, 7

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
    532 F.3d 496 (6th Cir. 2008) ......................................................3

*Sterling v. Velsicol Chem. Corp.*,
    855 F.2d 1188 (6th Cir. 1988) ..................................................15

*Strickland v. Owens Corning*,
    142 F.3d 353 (6th Cir. 1998) ....................................................18

*Toth v. Yoder Co.*,
    749 F.2d 1190 (6th Cir. 1984) ..................................................13

iv

*United States v. Todd*,
   920 F.2d 399 (6th Cir. 1990) ................................................................8

*Ward v. City of Lebanon*,
   273 S.W.3d 628 (Tenn. Ct. App. 2008) ...............................................12

*WATCO v. Pickering Envtl. Consultants, Inc.*,
   2007 WL 1610093 (Tenn. Ct. App. June 5, 2007) .........................11, 12

*Wilburn v. Maritrans GP Inc.*,
   139 F.3d 350 (10th Cir. 1998) .......................................................18, 19

*Wright v. Willamette Indus., Inc.*,
   91 F.3d 1105 (8th Cir. 1996) ...............................................................16

*Yearsley v. W.A. Ross Constr. Co.*,
   309 U.S. 18 (1940).................................................................................4

**Rules**

Fed. R. Civ. P. 50(a)(1)..............................................................................2

Fed. R. Civ. P. 50(b)..................................................................................3

Fed. R. Civ. P. 59(a)..................................................................................3

Fed. R. Civ. P. 59(b)..................................................................................3

**Treatises**

11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2806
   (3d ed.) ................................................................................................18

Restatement (Second) of Torts § 324(a) ..................................................10

# INTRODUCTION & BACKGROUND

In the Phase I trial of Plaintiffs' negligence claims, Plaintiffs attempted to twist this case into something it is clearly not—a toxic tort action in which a defendant allegedly caused plaintiffs' exposure to a dangerous substance. But Plaintiffs could not, and did not, argue that Jacobs either caused the Kingston spill or was responsible for the presence of fly ash at the Kingston Site. After all, Jacobs contracted with the Tennessee Valley Authority ("TVA") to assist in the challenging task of cleaning up the Site after the damage was done. Nor could Plaintiffs argue that Jacobs had a duty to prevent them from being exposed to fly ash at the Kingston Site entirely; it is undisputed that Plaintiffs faced unavoidable exposure to some amount of fly ash due to the nature of the clean-up and remediation project. The text of the Site Wide Safety and Health Plan ("SWSHP"), which governed Jacobs' services in connection with the clean-up, makes that clear.

Nevertheless, Plaintiffs tried to prove general causation at trial by suggesting that fly ash, as a theoretical matter, is capable of causing certain illnesses. Plaintiffs' counsel told the jury: "All we have to show by a preponderance of the evidence is that the exposure is capable of causing the illnesses from which the Plaintiffs suffer." [Tr. at 2948–49.] But if that theory was correct, Jacobs could have become liable for negligence the instant it signed a contract with the TVA. What Plaintiffs needed to prove—but never even attempted to prove—was that *Jacobs' conduct* was capable of causing Plaintiffs' alleged injuries. In other words, as the Court explained well before trial, Plaintiffs were required to prove in Phase I "whether *defendant's breach*[*es*] [were] capable of causing plaintiffs' alleged injuries." [Doc. 136 at 7 (emphasis added).]

Plaintiffs argued to the jury that Jacobs was negligent in six ways, by allegedly: (1) manipulating or tampering with air monitoring systems; (2) not informing TVA officials of complaints regarding health problems due to fly ash; (3) failing to comply with SWSHP provisions regarding the voluntary use of dust masks; (4) threatening workers who asked for dust masks or

1

respirators; (5) communicating to workers that fly ash was safe to consume; and (6) failing to train or warn workers about the dangers of excessive fly ash exposure.  Yet Plaintiffs never tied *any* of these theories to the alleged injuries Plaintiffs suffered.  Their failure to present any evidence on the necessary element of general causation warrants judgment in Jacobs' favor.

But Plaintiffs' failure to prove general causation is not the only reason that the Phase I jury verdict should be set aside.  Based on the evidence presented at trial, no reasonable jury could have concluded that Jacobs violated its contractual obligations to the TVA, and thus Jacobs is immune from liability as a matter of law.  Additionally, no reasonable jury could have found that that *any* of Jacobs' alleged misconduct fell below the requisite professional standard of care based on the evidence presented at trial.  Plaintiffs needed to, but did not, offer expert evidence regarding whether Jacobs violated any duties in carrying out various health and safety functions at the Site.

Each of Plaintiffs' failures of proof independently justifies judgment for Jacobs as a matter of law.  At a minimum, the Court should order a new trial because the jury "reached a 'seriously erroneous result'" on each of the questions it answered.  *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996).

## LEGAL STANDARDS

A court should grant a motion for judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1); *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (holding that judgment as a matter of law should be granted when, "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party").  Put differently, judgment as a matter of law is appropriate on claims that cannot be maintained under controlling law.  *McCarthy v.*

2

*Foltz*, 1994 WL 468030, at *1 (6th Cir. Aug. 29, 1994) (per curiam). In ruling on a motion for judgment as a matter of law, a court must also give credence to "evidence supporting the moving party that is uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). When a party has made a motion for judgment as a matter of law before the case has been submitted to the jury and the court does not grant that motion, the party may renew its motion after the jury's verdict. Fed. R. Civ. P. 50(b).[1]

Further, "where an injustice will otherwise result, [a] trial judge has the duty as well as the power to order a new trial" under Rule 59. *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 549 (6th Cir. 2012) (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 508 (6th Cir. 2008)); *see also* Fed. R. Civ. P. 59(a). A court may grant a new trial if the verdict is against the weight of the evidence, *Rayford v. Ill. Cent. R.R.*, 489 F. App'x 1, 6 (6th Cir. 2012), meaning the jury reached a "seriously erroneous result," *Holmes*, 78 F.3d at 1046. *See also Mitchell v. Boelcke*, 440 F.3d 300, 305 (6th Cir. 2006) (reversing denial of new trial motion in the "absence of any reasonable basis" to support jury's verdict).

## ARGUMENT

### A.  As a Threshold Matter, Jacobs Cannot Be Liable for Negligence Because It Is Entitled to Derivative Governmental Immunity.

Plaintiffs' negligence claims fail entirely because Jacobs is immune from liability. Government immunity is derivative; as a result, contractors like Jacobs are shielded when the

---

[1]     As this case has proceeded through only the first part of the bifurcated trial plan, the Court has not entered a judgment. As a result, this Motion is appropriate and timely following the jury's verdict in Phase I. Rule 50(b) provides only that renewed motion for judgment as a matter of law must be made "[n]o later than 28 days after entry of judgment." *See also* Fed. R. Civ. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment."). In the event that this case proceeds to Phase II and a judgment is entered, Jacobs reserves the right to renew this Motion.

government would itself be protected for the same conduct. *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 645 (6th Cir. 2015). This Court has already (and correctly) determined that discretionary-function immunity applies to claims brought under the Federal Tort Claims Act with respect to the TVA's remediation and clean-up activities subsequent to this spill. [Doc. 137 at 26.]

Government contractors like Jacobs are entitled to immunity so long as their conduct does not exceed their delegated authority. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940). While courts have characterized this rule in various ways, the premise remains the same: contractors may not be held liable if they follow the written terms of the relevant agreement, *i.e.*, if the contractor "executed the will of the government." [Doc. 137 at 29 (citation omitted)]; *see, e.g.*, *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014) (contractors must not exceed their "authority" and "scope of . . . employment"); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963) (contractors are entitled to immunity unless their work is "not in conformity" with their employment contract).

Here, it was undisputed at trial that the relevant agreements—the TVA-Jacobs contract and the SWSHP—contain only broad guidelines. Specifically, the TVA-Jacobs contract outlines a series of performance objectives, but critically, it never specifies *how* Jacobs must go about achieving them. [Pl. Ex. 9 at 2.] Plaintiffs even acknowledged that the contract uses broad, discretionary language. [*See* Doc. 109 at 3–6 (discussing the "standards" Jacobs was expected to abide by).] Similarly, the SWSHP discusses a "comprehensive risk-based process that addressed all aspects of workplace safety," [Doc. 137 at 9.] and is much longer and more detailed than the TVA-Jacobs contract. But it also does not specifically mandate the manner in which Jacobs should carry out its duties. In short, Plaintiffs offered no evidence at trial that Jacobs "exceeded" its delegated authority, and the jury could not have found otherwise. *Yearsley*, 309 U.S. at 21.

Accordingly, Jacobs is entitled to derivative governmental immunity as to Plaintiffs' negligence claims writ large. But at a minimum, no reasonable jury could have found that Jacobs can be liable as to at least three of Plaintiffs' specific theories of negligence: (1) Jacobs' alleged misconduct relating to the voluntary use of dust masks; (2) Jacobs' alleged failure to adequately warn or train workers about fly ash; and (3) a Jacobs employee's alleged comment that fly ash was safe to consume.[2]

1. **Plaintiffs Did Not Prove Jacobs Violated Any Contract Provision Regarding the Voluntary Use of Dust Masks.**

Plaintiffs' contention at trial that Jacobs lost its immunity because it failed to comply with the SWSHP provisions regarding the voluntary use of dust masks is baseless—the SWSHP makes scant mention of dust masks. While the SWSHP does provide that Jacobs has a responsibility to select "specific types of [safety equipment] . . . after a thorough evaluation of the potential hazards involved for each task" and to request "[c]hanges to initial levels of protection . . . whenever site conditions warrant" [Def. Ex. 6 at 6-2], there is no provision governing voluntary use of dust masks specifically. [*See id*. at Att C-2-1 (providing that any worker who is provided a "respirator[] for [his] voluntary use" or who provides "[his] own respirator" should choose a "respirator[] certified for use to protect against the contaminant of concern; in the United States, NIOSH respirators").]

To the extent dust masks are considered respirators under the SWSHP, their use was permitted under the plan "with approval of the[] Supervisor" (*i.e.*, Jacobs). [*Id*. at C-10.] The SWSHP further states that the "Site HSE Supervisor and Supervisor will evaluate requests for voluntary respirator," with the assistance of "medical evaluation[s]," "to determine if the worker

---

[2]    On the eve of trial, Plaintiffs were pursuing 13 separate theories of how Jacobs allegedly violated its contract with TVA and breached its duties to Plaintiffs. [Doc. 346 at 5–7.]. During trial, seven were eliminated as legally insufficient. [Doc. 424, 14 Trial Tr. at 3022, 3024.]

5

can perform the activities safely and respirator use will not in and of itself create a hazard." [*Id.*] But Plaintiffs put forth no evidence that any worker who asked for a respirator was improperly denied the use of one under the terms of the SWSHP.

More generally, decisions concerning the proper response to hazardous materials, like Jacobs' actions here, are routinely left to the expertise of the contractor, and accordingly are protected from tort liability by the discretionary-function exception. *Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1997); *see also Lockett v. United States*, 938 F.2d 630, 639 (6th Cir. 1991) (finding that the government's response to the release of a potentially dangerous chemical, including doing nothing at all, fell within the discretionary-function exception); *Feyers v. United States*, 749 F.2d 1222, 1227 (6th Cir. 1984) (holding that the proper way to conduct a railyard safety investigation was a discretionary function).

> **2. Plaintiffs Could Not Have Proven That Jacobs Violated Any Contract Provision by Failing to Train or Warn Workers About the Dangers of Excessive Fly Ash Because All Related Provisions Plainly Grant Jacobs Discretion.**

Plaintiffs' failure-to-warn theory similarly fails on immunity grounds. It was undisputed at trial that, like the other language in the SWSHP, the provisions relevant to worker training grant Jacobs considerable discretion. For example, beyond training pertaining to excavation, crane operations, and rigging, Jacobs' training need only "be evaluated for compliance with TVA requirements and industry standards." [Def. Ex. 6 at 11-1.] Moreover, while there are specific training requirements regarding the number of hours necessary for certain workers (*e.g.*, pertaining to hazardous waste operations), the specific content of that training is not prescribed. [*Id.*] The SWSHP merely says that project personnel must have completed some site-specific training on various topics, which included "potential hazards" and "risks associated with identified hazardous substances at the site." [*Id.* at 11-2; *see also id.* at A-12 (noting that subcontractors must complete

6

training as required "by [the] applicable Contractor" and mentioning what that training "may" include).]  But again, the precise substance of the trainings is not specified in the SWSHP and is instead left to Jacobs' discretion.

Plaintiffs' attempt at trial to disparage the quality of Jacobs' training programs is yet another example of their failure to recognize what evidence was necessary to satisfy their burden. It is well established that the government is generally protected from tort liability in deciding when and how to warn of potential dangers.  *A.O. Smith Corp. v. United States*, 774 F.3d 359, 369 (6th Cir. 2014) (citing *Edwards v. Tenn. Valley Auth.*, 255 F.3d 318, 324 (6th Cir. 2001)).  That is because "the decision whether to warn of potential danger is a protected discretionary function," except, perhaps, in some unusual situation not present here.  *Rosebush*, 119 F.3d at 443.  Therefore, what Plaintiffs needed to prove, but did not even attempt to prove, was that Jacobs' training and warning activities fell outside its discretion.  Accordingly, Plaintiffs cannot defeat Jacobs' immunity merely because they attempted to prove its trainings and warnings were inadequate.

**3.      Plaintiffs Could Not Have Proven That Jacobs Violated Any Contract Provisions When an Employee Suggested That Fly Ash Was Safe to Consume.**

Furthermore, Jacobs could not have lost its immunity because one of its employees allegedly suggested that some amount of fly ash was safe to consume.  The evidence at trial was undisputed that the offending statement was repeated as a joke among workers at the Site: Plaintiffs' witness Robert Muse testified that Jacobs employee Thomas Bock said "that you could literally eat a pound of the fly ash and it wouldn't hurt you" [Doc. 411, 1 Trial Tr. at 96], and that this became "the running joke of the site," presumably because everyone knew that was not "literally true," [*id.* at 97].  There was no evidence that any Plaintiffs relied upon Bock's alleged statement, and the Court correctly granted judgment as a matter of law on Plaintiffs' standalone misrepresentation claim.  [Doc. 424, 14 Trial Tr. at 2907.]  The same must hold true for immunity.

7

*See, e.g.*, *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) ("Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation."); *Gibson v. Mortg. Elec. Registration Sys., Inc.*, 23 F. Supp. 3d 895, 910–11 (W.D. Tenn. 2014) (granting defendants judgment as to plaintiffs' wrongful foreclosure claim because court had already determined that theory failed as a matter of law).

**B.** **Even If Jacobs Were Not Immune for Its Alleged Tortious Conduct, Plaintiffs Failed to Prove Their Negligence Claims.**

Under Tennessee law, to make out a claim of negligence, Plaintiffs are required to prove by a preponderance of evidence: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). According to the Court's bifurcation order, Phase I of the trial involved "issues and evidence" only as to duty of care, breach of that duty of care, and general causation (*i.e.*, "whether defendant's breach was capable of causing plaintiffs' alleged injuries"). [Doc. 136 at 6.]

In Phase I, Plaintiffs wrongly sought to hold Jacobs liable for any and all harms related to the Kingston Site spill. Plaintiffs could not, and did not, show that Jacobs owed them a duty to prevent against all exposure to fly ash. As to the duties Jacobs *did* owe to Plaintiffs—*i.e.*, compliance with the safety and health precautions of the SWSHP—Plaintiffs failed to offer any relevant expert proof that those duties were breached. And no reasonable jury could have found that Plaintiffs proved general causation, because Plaintiffs did not connect *any* of Jacobs' alleged misconduct to any of their alleged injuries. Jacobs is thus entitled to judgment as a matter of law on the entirety of Plaintiffs' case.

8

**1.    Plaintiffs Could Not Prove That Jacobs Owed a Legal Duty to Protect Them Against All Exposure to Fly Ash.**

As an initial matter, Plaintiffs could not, and did not, prove at trial that Jacobs had a duty to prevent them from being exposed to all fly ash.  Jacobs did not cause the spill, and the very purpose of the TVA's Kingston Fossil Plant Ash Release Response Project was for Jacobs (and its employees) to remove fly ash that had spilled onto the Site.  [*See* Def. Ex. 4 at 1-1 (listing, among SWSHP's components, "dredging of ash from rivers and auxiliary water bodies," "ash processing," and "support activities . . . includ[ing] dust control, water management environmental sampling and site maintenance").]  If Jacobs had such a duty, it could have become liable to Plaintiffs merely because it contracted with the TVA to assist with the clean-up and remediation of the Site.  After all, as the SWSHP made clear, "chemical hazards" were "found on site."  [*Id.*at 4-10–11.]  These hazards included fly ash from coal combustion, the "principal material to be processed and handled during the project."  [*Id.* at 4-11; *see also id.* at 4-12 (indicating that certain fly ash components could cause harmful symptoms and were suspected or confirmed human carcinogens).]

Even if Plaintiffs had sought to prove that Jacobs owed a duty to protect them from unreasonable levels of fly ash—which Plaintiffs also did not do—that duty would have been only to limit Plaintiffs' exposure to levels at or below the permissible exposure limits ("PELs") set out in the SWSHP.  [*See* Doc. 422, 13 Trial Tr. at 2785 (Plaintiffs' counsel noted during oral argument that Plaintiffs "didn't allege a breach of the PEL").]  The SWSHP  indicates that exposures below the Site PELs were not expected to present any risk of harm to the workers, as those limits were typically set well below regulatory levels.  [Def. Ex. 6 at K-4-2; *see also id.* at 4-13–21; *see, e.g.*, *id.* at K-2-3 (providing a chart summarizing the "Monitoring Actions" required based on various exposure levels).]  Further, as Plaintiffs did not dispute, the SWSHP made clear that even

9

exceedances of Site PELs did not suggest workers would be at risk of harm; rather, the SWSHP stated only that, under such circumstances, additional evaluations should be conducted. [Def. Ex. 6 at K-4-3 (explaining that "[i]f an Action Level is exceeded, a preliminary review will be conducted" and "[d]epending on the results of the preliminary review, additional sampling or review may be necessary, or action items recommended for review").]

While Jacobs could not have had a duty to prevent Plaintiffs from being exposed to fly ash entirely, Jacobs does not, and has never, disputed that it owed Plaintiffs duties consistent with the contractual obligations set out in the SWSHP. *See, e.g*., *Grogan v. Uggla*, 535 S.W.3d 864, 874 (Tenn. 2017) (citing Restatement (Second) of Torts § 324(a)); *Barron v. Emerson Russell Maint. Co.*, 2009 WL 2340990, at *8 (Tenn. Ct. App. July 30, 2009). But because Plaintiffs did not prove Jacobs violated those contractual obligations, *see infra* Section B.2; *see also supra* Section A, Jacobs is entitled to judgment as a matter of law.

## 2. Plaintiffs Failed to Offer the Necessary Expert Testimony to Prove That Jacobs Breached Any Duty It Legally Owed to Plaintiffs.

Plaintiffs did not prove that Jacobs breached any duty it did have to Plaintiffs—including duties relating to management, personal air monitoring, dust suppression, and/or occupational health and safety services as set out in the SWSHP, [*see* Doc. 424, 14 Trial Tr. at 3023]—not only because Jacobs did not breach any of the relevant contractual provisions (*see supra* Section A), but also because Plaintiffs failed entirely to present the requisite expert testimony.

As this Court has already recognized, expert testimony was essential to this case for two reasons. *First*, well-settled Tennessee law provides that "determining whether a professional's conduct complies with the applicable standard of care is beyond the common knowledge of lay persons," meaning that "expert testimony is required to establish not only the applicable standard of care but also whether the conduct at issue fell below that standard." *Martin v. Sizemore*, 78

S.W.3d 249, 274 (Tenn. Ct. App. 2001); *see also WATCO v. Pickering Envtl. Consultants, Inc.*, 2007 WL 1610093, at *22 (Tenn. Ct. App. June 5, 2007). Tennessee courts have applied a professional standard of care to a wide array of functions, including environmental ones. *See, e.g.*, *WATCO*, 2007 WL 1610093, at *22 (environmental professionals); *Chapman v. Bearfield*, 207 S.W.3d 736, 741 (Tenn. 2006) (legal professionals); *Moon v. Saint Thomas Hosp.*, 983 S.W.2d 225, 229 (Tenn. 1998) (medical professionals).

*Second*, this jury was asked to evaluate the complicated issue whether Jacobs fell below the standard of care required of a contractor hired to assist with the clean up a fly ash spill, something lay people know nothing anything about. The complex nature of Jacobs' responsibilities is suggested by the SWSHP itself, which contains more than 300 pages of technical requirements that shaped Jacobs' duties. [*See generally* Def. Ex. 6.] It was far from "obvious and readily understandable by an average layperson" what Jacobs needed (and did not need) to do to fulfill its professional duties of care to its workers while they undertook the difficult and inherently difficult job of helping the TVA clean up a fly ash spill. *See Barkes v. River Park Hosp., Inc.*, 328 S.W.3d 829, 833 n.2 (Tenn. 2010). Given the extremely technical nature of managing a clean-up Site, the jury could not use its common knowledge to determine whether alleged conduct ran afoul of Jacobs' professional duties, even if, at first blush, Jacobs' such conduct seems wrongheaded.

Take for example, one of Plaintiffs' theories of negligence: Jacobs' alleged failure to train or warn workers about the dangers of excessive fly ash exposure. The SWSHP requires the training be in "compliance with TVA requirements and industry standards." [Def. Ex. 6 at 11-1.] Industry standards provide a paradigmatic example of when expertise is needed to evaluate whether a duty has been breached. *See, e.g.*, *Powers v. Cottrell, Inc.*, 728 F.3d 509, 518 (6th Cir. 2013) (recognizing "expert testimony, documents, manuals, or other sources" as means of

providing industry standards in a products-liability action applying Tennessee law); *Ward v. City of Lebanon*, 273 S.W.3d 628, 636 (Tenn. Ct. App. 2008) (holding that an engineering expert should be allowed to testify as to industry standards in a negligence action involving a gas-line explosion and fire); *Patterson-Khoury v. Wilson World Hotel-Cherry Rd., Inc.*, 139 S.W.3d 281, 289 (Tenn. Ct. App. 2003) (upholding trial court's admission of expert testimony on hotel-industry standards in a premises-liability action because "evidence of the practices of similarly situated properties [was] relevant to the determination of the standard of care"). It is not "obvious and readily understandable by an average layperson" what the industry standard is for the training of workers hired specifically to assist with the clean-up a toxic spill of fly ash. *See Barkes*, 328 S.W.3d at 833 n.2; *see also*, *WATCO*, 2007 WL 1610093, at *22 (considering expert testimony in determining the parameters of the "professional standard of care for conducting environmental site assessments").

Nor does the average layperson know, for example, how one could "deliberately manipulate[] or tamper[] with any monitoring results or processes." [Doc. 424, 14 Trial Tr. at 3024.] Of course, a layperson could determine that it would be wrong to deliberately manipulate or tamper with air monitoring devices in order to hide toxins. But that was not what this jury had to decide. Here, the jury had to determine whether the alleged tapping and banging of the devices affected the air monitors in such a way that would alter their results. [*See* Doc. 418, 11 Trial Tr. 2518–20 (testimony that tapping out the grit pot component of the personal air monitors was proper).] Answering that question requires a technical understanding of the air monitoring devices that laypersons do not possess.

Plaintiffs' complete failure to introduce this required expert proof compels the conclusion that they failed to prove their claims.

### 3. Plaintiffs Failed to Offer Any Legally Relevant Proof Regarding General Causation.

Perhaps most significantly, Plaintiffs completely failed to prove general causation. As the Court previously recognized, Plaintiffs bore the burden to show that Jacobs' allegedly tortious conduct caused their injuries. *Adkisson v. Jacobs Eng'g Grp., Inc.*, --- F. Supp. 3d. ----, 2018 WL 4494101, at *3 (E.D. Tenn. Sept. 19, 2018) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)); *see also*, *Bain v. Wells*, 936 S.W.2d 618, 624–25 (Tenn. 1997) ("[I]t is well-established that to recover on a claim of negligence, a plaintiff must show some reasonable connection between the act or omission of a defendant and the injury which the plaintiff has suffered." (emphasis in original)). Accordingly, Phase I of the bifurcated trial was supposed to address general causation by assessing "whether defendant's breach[es] [were] capable of causing plaintiffs' alleged injuries." [Doc. 136 at 7.]

"[C]ausation cannot be established solely by conjecture, speculation, or surmise." *Brown v. Wal-Mart Stores, Inc.*, 1999 WL 1111514, at *4 (6th Cir. Nov. 24, 1999) (per curiam) (citing *Toth v. Yoder Co.*, 749 F.2d 1190, 1196 (6th Cir. 1984)). The "*mere possibility* that the defendant's negligence may have been the cause, either theoretical or conjectural, of [plaintiff's injury] is not sufficient to establish a causal link between the two." *Am. & Foreign Ins. Co. v. Gen. Elec. Co.*, 45 F.3d 135, 140 (6th Cir. 1995) (emphasis in original) (citation omitted) (affirming a directed verdict). "Of all the elements necessary to support recovery . . . , causation is the most susceptible to summary determination." *Id.* (quoting *Davis v. Thorton*, 180 N.W.2d 11, 15 (Mich. 1970)).

At trial, Plaintiffs presented *no evidence* connecting any of Jacobs' alleged misconduct to Plaintiffs' alleged injuries. Dr. Terry—Plaintiffs' only witness to testify about causation—never opined as to how any of Jacobs' alleged tortious conduct may have been capable of causing Plaintiffs' identified illnesses. In fact, Dr. Terry was (briefly) asked about just one of Plaintiffs'

13

theories of wrongdoing—"manipulation of monitoring." Dr. Terry testified only that he had "reviewed" other (non-expert) witness testimony on that issue. [Doc. 420, 12 Trial Tr. at 2670.] Dr. Terry did not, in other words, even attempt to link the alleged manipulation of air monitoring results with Plaintiffs' illnesses.

As for Plaintiffs' five remaining theories of wrongdoing, there is nothing whatsoever in the trial record that shows *those alleged acts* were capable of causing any of the ten listed medical conditions on the jury's verdict form:

- Dr. Terry did *not* opine on how Jacobs' alleged failure to "inform TVA safety officials of repeated complaints regarding health problems due to fly ash" could have possibly been capable of causing Plaintiffs' alleged injuries;

- Dr. Terry did *not* opine on how Jacobs' alleged failure "to comply with the provisions of the safety and health plan with respect to the voluntary use of dust masks" could have possibly been capable of causing Plaintiffs' alleged injuries;

- Dr. Terry did *not* opine on how Jacobs' alleged "threaten[ing of] workers when they asked for dust masks or respirators," could have possibly been capable of causing Plaintiffs' alleged injuries;

- Dr. Terry did *not* opine on how Jacobs' alleged "communicat[ion] to workers that fly ash was safe to consume,"[3] could have possibly been capable of causing Plaintiffs' alleged injuries; and

- Dr. Terry did *not* opine on how Jacobs' alleged "fail[ure] to train or warn workers about the dangers of excessive fly ash exposure" could have possibly been capable of causing Plaintiffs' alleged injuries. [Doc. 424, 14 Trial Tr. at 3022, 3024.]

Simply put, Dr. Terry provided no expert testimony regarding any connection, potential or otherwise, between Jacobs' alleged wrongdoing and the harms Plaintiffs suffered (because that connection does not exist). This alone warrants judgment in Jacobs' favor. *See, e.g.*, *Am. & Foreign Ins. Co.*, 45 F.3d at 140.

---

[3]     Because the Court decided that Plaintiffs had not proven their misrepresentation claim as to the same comment, their negligence claim based on this theory must be invalidated as a matter of law. *See supra* Section A.3.

14

Instead of proving what they needed to prove—that the "defendant's breach[es] [were] capable of causing plaintiffs' alleged injuries" [Doc. 136 at 7]—Plaintiffs treated the general causation element like that of a classic toxic tort case in which a defendant would be liable for any exposure to the toxic substance at issue. [*See, e.g.*, Doc. 421, 7 Trial Tr. at 1500 (Dr. Terry defining general causation as answering the question, "[c]an this exposure cause this outcome or illness").] In those cases, unlike this one, the general causation requirement looks to whether the defendant caused the exposure to the toxic substance in the first place, and if so, whether the substance itself is capable of causing a particular injury. *See, e.g.*, *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1200 (6th Cir. 1988) (action against a chemical company that was "responsible for the contamination" caused by a leak from its landfill); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676–77 (6th Cir. 2011) (action against an oil company for a spill from its gas pipeline); *Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 874 (S.D. Ohio 2010) (action, applying Ohio law, against a fuel company for spills and leaks from its refinery); *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 798 (N.D. Ohio 2004) (action against the manufacturer of an injury-causing diet drug). Here, it is undisputed that Jacobs was not required to prevent Plaintiffs from being exposed to fly ash in general. *See supra* Section B.1. Nor could Jacobs have even tried to: exposure to fly ash was part and parcel of Plaintiffs' work at the Site.

Indeed, before Dr. Terry testified, Plaintiffs proposed a jury instruction suggesting that it would be "enough for Plaintiffs to show that the amount of toxic constituents generally present in the coal fly ash at the Kingston site was capable of causing the complained-of diseases." [Doc. 353 at 8.] It is not surprising, then, that Dr. Terry's testimony and report focused only on whether certain chemicals present in fly ash are capable of causing diseases that Plaintiffs claim to have contracted. [Doc. 421, 7 Trial Tr. at 1544 (when asked whether "exposure to coal fly ash [was]

capable of causing [the Plaintiffs' alleged] conditions," Dr. Terry responded, "I believe it is" (emphasis added)); *see also id.* at 1502–27, 1531–37; Doc. 261-1 at 5.] But that fact was never in dispute: the SWSHP made clear that exposure to certain constituent parts of fly ash, above certain levels, could possibly cause adverse symptoms.

Further, even if Jacobs had caused the original spill and resulting exposure to fly ash, Plaintiffs could not have proven general causation without offering evidence regarding both (a) the "levels of exposure that are hazardous to human beings generally" and (b) their "actual level of exposure." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (quoting *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1106 (8th Cir. 1996)); *see, e.g.*, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005) (holding that in toxic tort cases, "[s]cientific knowledge of the harmful level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiff's burden" on general causation (quoting *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996))); *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 928 (8th Cir. 2001) ("[A] plaintiff must show [] that the alleged toxin is capable of causing injuries like that suffered by the plaintiff in human beings subjected to the same level of exposure as the plaintiff . . . .").

Dr. Terry did not even testify that each of the potentially dangerous constituents in fly ash were present at toxic levels. [Doc. 421, 7 Trial Tr. at 1573–75; *see also id*. at 1575 (Dr. Terry agreeing that he did not "measure[] or consider[] [the levels] of lead in fly ash because he didn't have such information"). Moreover, Dr. Terry testified that he did not take into account what the PELs were for the various fly ash constituents as set out in the SWSHP, nor the safety levels of the constituents as set by OSHA. [Doc. 420, 12 Trial Tr. at 2710; *id*. at 2713.] Dr. Terry thus did not establish, as the Court found Plaintiffs were required to prove at summary judgment, "that the

*amount* of toxic constituents generally present in the fly ash at the Kingston site was capable of causing the complained-of diseases." [Doc. 302 at 12–13 (emphasis added).]

Further, Dr. Terry testified that he neither "tr[ied] to quantify" Plaintiffs' exposure to fly ash [Doc. 420, 12 Trial Tr. at 2668], nor "look[ed] at exposure levels" as part of his general causation analysis [*id.* at 2704; *see also id.* at 2706 (Dr. Terry agreeing that he "did not try to quantify the evidence of exposure in this case")]. In fact, when asked whether he had "any information about what the exposure levels were at the Kingston site for anybody," Dr. Terry testified, "No." [Doc. 421, 7 Trial Tr. at 1572.] In his own words, all Dr. Terry did to arrive at his opinion that Plaintiffs had been "significantly expose[d]" to fly ash was "look[] at the same photos and hear[] the same reports that have been testified to here in court." [*Id.* at 2668–69.] This was, in other words, lay testimony. Dr. Terry's one, hopelessly vague assertion about "significant exposure," *see id.*, could not be enough to satisfy Plaintiffs' burden on general causation, even if the inquiry in this case was whether fly ash could be capable of causing Plaintiffs' alleged harms.

Plaintiffs presented absolutely no evidence connecting Jacobs' alleged breaches to the actual harms they claim to have suffered. The jury was therefore left to speculate about whether Jacobs' alleged conduct was capable of causing the injuries Plaintiffs claim. Because no proof of general causation was offered at trial, judgment must be entered in favor of Jacobs.

**C.    If the Court Denies Jacobs Judgment as a Matter of Law (or Grants Jacobs Judgment Only in Part), the Court Should Grant a New Trial.**

If the Court does not grant judgment in Jacobs' favor as to Plaintiffs' negligence claims entirely, the Court must grant a new trial as to any remaining issues. When considering a new trial motion based on the jury's verdict being against the weight of the evidence, "the judge is free to weigh the evidence" and "set aside the verdict even [when] there is substantial evidence to support

17

it." 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2806 (3d ed.); *see also Bell v. Johnson*, 404 F.3d 997, 1002 (6th Cir. 2005) (quoting *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996), and characterizing the trial court's discretion to grant a new trial as "large").

This jury reached a "seriously erroneous" result on each of the elements of Plaintiffs' negligence claims presented during the Phase I trial. *Strickland v. Owens Corning*, 142 F.3d 353, 357 (6th Cir. 1998) (citation omitted). First, because both the TVA-Jacobs contract and SWSHP left Jacobs broad discretion to carry out its remediation duties at the Site, the evidence presented to the jury plainly showed that Jacobs did not violate its scope of employment. *See supra* Section A. Second, because Plaintiffs presented no relevant (*i.e.*, expert) testimony regarding Jacobs' alleged breaches of its professional duty of care, the evidence could not possibly have weighed in favor of Plaintiffs on that issue. *See supra* Sections B.1–B.2. Finally, Plaintiffs could only muster evidence to suggest that fly ash at some theoretical level—as opposed to actual levels at the Site— could cause some of their alleged illnesses. But that testimony decidedly does not show that Jacobs' actions were capable of causing Plaintiffs' alleged harms. As a result, the evidence clearly weighs in favor of Jacobs with respect to general causation, too. *See supra* Section B.3.

Furthermore, if the Court enters judgment as a matter of law for Jacobs on only some of Plaintiffs' theories of negligence, the verdict would need to be vacated entirely and a new trial ordered. The Phase I verdict form did not require the jury to identify which theory or theories Plaintiffs had proven. Thus, if the Court only partially grants judgment as a matter of law, there would be no way to know whether the jury relied on a theory or theories that had not "been sustained by the evidence or legally sound." *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 361 (10th Cir. 1998); *see generally* Jacobs' Brief in Support of Jacobs' Motion for a New Trial at

Section A.  And because there is a chance the jury relied on an unviable theory, the Sixth Circuit requires the district court to grant judgment as a matter of law on the unviable theory or theories, vacate the verdict, and order a new trial on any remaining, viable theories of negligence.  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 467 (6th Cir. 2012); *see also Wilburn*, 139 F.3d at 361.

For all these reasons, if the Court does not grant Jacobs' renewed motion for judgment as a matter of law, it should exercise its discretion to order a new Phase I trial.

## CONCLUSION

Plaintiffs failed as a matter of law to prove their negligence claims tried in Phase I.  Jacobs therefore respectfully requests that judgment be entered in its favor.

Respectfully submitted,

**NEAL & HARWELL, PLC**
By:  /s/ James F. Sanders
James F. Sanders        (No. 005267)
jsanders@nealharwell.com
J. Isaac Sanders        (No. 029372)
isanders@nealharwell.com
Marie T. Scott          (No. 032771)
mscott@nealharwell.com
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee  37203
Telephone:  (615) 244-1713
Facsimile:  (615) 726-0573

**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous, Jr. (*pro hac vice* pending)
tboutrous@gibsondunn.com
Theane Evangelis (*pro hac vice* pending)
tevangelis@gibsondunn.com
Jeremy S. Smith (*pro hac vice* pending)
jssmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:     (213) 229-7000
Facsimile:     (213) 229-7520

*Attorneys for Defendant*
*Jacobs Engineering Group, Inc.*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of December, 2018, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.

_____/s/ James F. Sanders_____
