**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| GREG ADKISSON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 3:13-CV-00505-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | *Lead case consolidated with* |
| _____ | ) | |
| KEVIN THOMPSON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 3:13-CV-00666-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |
| JOE CUNNINGHAM, et al., | ) | *as consolidated with* |
| Plaintiffs, | ) | |
| v. | ) | No. 3:14-CV-00020-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| _____ | )_____ |
| BILL ROSE, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:15-CV-00017-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |
| CRAIG WILKINSON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-00274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |
| ANGIE SHELTON, as wife and next of kin | ) | |
| on behalf of Mike Shelton, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-00420-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |
| JOHNNY CHURCH, | ) | |
| Plaintiff, | ) | |
| v. | ) | No.: 3:15-CV-00460-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |

DONALD R. VANGUILDER, JR., )
      Plaintiff, )
v. )         No. 3:15-CV-00462-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )
_____ )
JUDY IVENS, as sister and next of kin, )
on behalf of JEAN NANCE, deceased, )
      Plaintiff, )
v. )         No. 3:16-CV-00635-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )
_____ )
PAUL RANDY FARROW, )
      Plaintiff, )
v. )         No. 3:16-CV-00636-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )
_____ )


## **BRIEF IN SUPPORT OF JACOBS ENGINEERING GROUP, INC.'S MOTION FOR NEW TRIAL**

# TABLE OF CONTENTS

Page

INTRODUCTION & BACKGROUND ................................................................................. 1

LEGAL STANDARD .......................................................................................................... 4

THE JURY'S PHASE I VERDICT FINDINGS CANNOT BE USED IN ANY PHASE II
TRIALS WITHOUT VIOLATING THE SEVENTH AMENDMENT ........................................ 4

    A.    The Phase I Jury's Verdict Form Answers Are Too Vague to Be of Any Use In This
           Case. ............................................................................................................... 5

    B.    The Only Viable Solution Is to Vacate the Phase I Jury Verdict Findings. .................... 9

    C.    Jacobs Objected to the Jury Verdict Form on the Ground that It Did Not Ask the Jury
           to Choose Among Plaintiffs' Theories. ........................................................ 14

CONCLUSION .................................................................................................................. 15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell v. Johnson,*
   404 F.3d 997 (6th Cir. 2005) ................................................................4

*In re Bendectin Litig.,*
   857 F.2d 290 (6th Cir. 1988) ................................................................8

*Bittinger v. Tecumseh Prods. Co.,*
   123 F.3d 877 (6th Cir. 1997) ................................................................9

*Blyden v. Mancusi,*
   186 F.3d 252 (2d Cir. 1999).............................................4, 6, 8, 10, 11, 12, 13

*Bradshaw v. Daniel,*
   854 S.W.2d 865 (Tenn. 1993) ................................................................5

*Castano v. Am. Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996) ................................................................10

*Davis by Davis v. Jellico Cmty. Hosp. Inc.,*
   912 F.2d 129 (6th Cir. 1990) ................................................................4

*DSG Corp. v. Anderson,*
   754 F.2d 678 (6th Cir. 1985) ................................................................8

*Gasperini v. Ctr. for the Humanities, Inc.,*
   518 U.S. 415 (1996)................................................................4

*In re KBR, Inc., Burn Pit Litig.,*
   744 F.3d 326 (4th Cir. 2014) ................................................................5

*King v. Ford Motor Co.,*
   209 F.3d 886 (6th Cir. 2000) ................................................................8

*Loesel v. City of Frankenmuth,*
   692 F.3d 452 (6th Cir. 2012) ................................................................6, 14

*Lucaj v. Fed. Bureau of Investigation,*
   852 F.3d 541 (6th Cir. 2017)................................................................15

*Myers v. United States,*
   323 F.2d 580 (9th Cir. 1963) ................................................................5

*Park West Galleries, Inc. v. Hochman*,
    692 F.3d 539 (6th Cir. 2012) ...................................................................................4

*In re Rhone-Poulenc Rorer Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ...........................................................4, 9, 10, 11, 13

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ....................................................................................9

*United States v. Huntington Nat'l Bank*,
    574 F.3d 329 (6th Cir. 2009) .................................................................15

*Wilburn v. Maritrans GP Inc.*,
    139 F.3d 350 (3d Cir. 1998)...................................................2, 6, 12, 13, 14

## <u>Constitutional Provisions</u>

U.S. Const. amend. VII ...........................................................................10

## <u>Rules</u>

Fed. R. Civ. P. 59(a)(1)(A) ......................................................................4

## <u>Other Authorities</u>

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2805
    (3d ed. 2012) ...........................................................................................4

Dan B. Dobbs et al., The Law of Torts § 183 (2d ed. 2011) ...........................................8

Federal Civil Jury Instructions of the Seventh Circuit § 7.25, cmt. f. (2017)................................7

James Wm. Moore et al., Moore's Federal Practice ¶ 59.13[1] (3d ed. Supp. 2018).....................4

Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705 (2000) ........................................8

# INTRODUCTION & BACKGROUND

Faced with the challenge of a complex case involving widely disparate personal injury claims of nearly 100 plaintiffs and potentially dispositive issues of derivative sovereign immunity, the parties and the Court looked to bifurcation as a way to streamline and manage this case. Unfortunately, at Plaintiffs' behest, the first phase of trial has yielded a fundamentally flawed and muddled verdict that will be useless in a trial on the remaining issues. A new trial is necessary to set this case back on the proper course and to avoid the serious constitutional problems that would otherwise ensue.

The original plan, set back in 2016, was for a jury in Phase I to decide for ten consolidated cases whether (1) Jacobs breached its contract with the Tennessee Valley Authority ("TVA") and thus lacked immunity, (2) "whether defendant owed plaintiffs a legal duty," (3) "whether defendant breached that duty," and (4) "whether defendant's breach was capable of causing plaintiffs' alleged injuries." [Doc. 136 at 6; *see also* Doc. 137 at 29; Doc. 355 at 10.] If, in Phase I, Plaintiffs proved by a preponderance of the evidence each of those elements, then in Phase II, new juries would try "issues and evidence relating to: (1) specific causation with respect to individual plaintiffs; (2) each plaintiff's alleged injuries; and (3) the extent to which individual plaintiffs are entitled to damages." [Doc. 136 at 6.]

The success of this bifurcation plan would turn on the ability of Phase II juries to rely upon the Phase I jury's findings in order to determine specific causation and damages. So, for example, if the jury in Phase I determined that Jacobs breached its duty of care and lost its immunity by manipulating the monitoring results of the fly ash, and that manipulation of the monitoring results was capable of causing Plaintiffs' specific harms, that would be told to later juries in Phase II. The Phase II juries would then use those findings to answer the questions that remained: Did the

monitor manipulation actually cause an individual Plaintiff harm and, if so, what was that harm?

But that is not what happened—or even close to what happened—because Plaintiffs led the jury and the Court astray. They presented to the jury widely ranging and vastly disparate theories of potential wrongdoing, and they persuaded the Court that the jury did not need to decide which specific theories Plaintiffs had proven. On the eve of trial, Plaintiffs were pursuing thirteen separate theories of how Jacobs allegedly violated its contract with TVA and breached its duties to Plaintiffs. [Doc. 346 at 5–7.] Even after those were whittled down over the course of trial, the jury still had to examine six different theories for how Jacobs allegedly lacked immunity and violated its duties of care, specifically whether Jacobs: (1) "deliberately manipulated or tampered with any monitoring results or processes," (2) "did not inform TVA safety officials of repeated complaints regarding health problems due to fly ash," (3) "failed to comply with the provisions of the safety and health plan with respect to the voluntary use of dust masks," (4) "threatened workers when they asked for dust masks or respirators," (5) "communicated to workers that fly ash was safe to consume," and (6) "otherwise failed to train or warn workers about the dangers of excessive fly ash exposure." [Doc. 424, 14 Trial Tr. at 3022, 3024.]

And because Plaintiffs insisted on a general verdict that did not list their six different theories, no one—except the Phase I jurors, who were excused weeks ago—knows which of these theories the jury believed because the verdict form did not ask the jurors which theory or theories had been proven. [Doc. 408 at 2–3.] Based on the evidence and arguments at trial, and the jury's verdict, it could have been just one of them, or even all of them. But "the use of a general verdict makes it impossible . . . to decide which theory of liability persuaded the jury." *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 366 (3d Cir. 1998). Indeed, it is impossible to even know from the verdict form whether the jury settled on any theory of wrongdoing that it believed was a

violation of the contract with TVA, a breach of Jacobs' duties to Plaintiffs, *and* capable of causing Plaintiffs' injuries, much less unanimously.

Because it is impossible to decipher what the jury in Phase I actually found, the jury's answers in the verdict form cannot be relied upon during Phase II. The only guidance this Court can give the Phase II juries is that the Phase I jury decided that Jacobs "failed to adhere to the terms of its contract with TVA" or the "Safety and Health Plan," in some unknown way, "failed to exercise reasonable care" in some unknown way, and that this unknown breach of the contract and failure to exercise reasonable care "was capable of causing" ten specific medical conditions. [Doc. 408 at 2–5.] To make their own findings, the Phase II juries will be forced to decide *again*: How did Jacobs breach the contract or violate the Safety and Health Plan? How did Jacobs fail to exercise reasonable care? And which act was capable of causing those ten medical conditions?

The failure to specify the theories of negligence on the verdict form is not just a problem of efficiency and case management; if the verdict findings stand, they will guarantee a violation of the Seventh Amendment's re-examination clause. As explained below, the juries in Phase II cannot decide how Jacobs breached the contract or violated the Safety and Health Plan or any of the other necessary specifics without re-examining facts decided by the Phase I jury. And the Court cannot tell the juries in Phase II that Plaintiffs proved all six or any subset of their theories of wrongdoing because there is no factual basis for that assertion, and doing so would also violate the Seventh Amendment.

In sum, the Court is left with jury verdict findings that provide no guidance to the Phase II juries and, if relied upon, will result in a procedural, practical, and constitutional morass. Accordingly, the Court should vacate the verdict findings and order a new trial on the Phase I issues.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1)(A) permits a court to grant a motion for a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." As the Supreme Court and Sixth Circuit have explained, "'the authority of trial judges to grant new trials' pursuant to Rule 59(a) 'is large.'" *Bell v. Johnson*, 404 F.3d 997, 1002 (6th Cir. 2005) (quoting *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996)).

"[T]he trial judge has the duty as well as the power to order a new trial" to "prevent an injustice." *Park West Galleries, Inc. v. Hochman*, 692 F.3d 539, 544 (6th Cir. 2012) (quoting *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990)); 12 James Wm. Moore et al., Moore's Federal Practice ¶ 59.13[1] (3d ed. Supp. 2018) ("[A] district court has broad discretion to grant a new trial when necessary to prevent injustice."); *see also* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2805 (3d ed. 2012) ("Any error of law, if prejudicial, is a good ground for a new trial."). A new trial is also warranted where there are errors in the verdict forms, particularly when those errors would lead to a Seventh Amendment violation. *See Blyden v. Mancusi*, 186 F.3d 252, 268–69 (2d Cir. 1999) (ordering a new trial on the ground, among others, that the failure to separate theories of liability in the Phase I verdict form caused a Seventh Amendment violation); *cf. In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1302–04 (7th Cir. 1995) (granting mandamus relief on the ground, among others, that a bifurcation plan violated the Seventh Amendment).

## THE JURY'S PHASE I VERDICT FINDINGS CANNOT BE USED IN ANY PHASE II TRIALS WITHOUT VIOLATING THE SEVENTH AMENDMENT

At Plaintiffs' urging, the verdict form in this case did not ask the jury which of Plaintiffs' six different theories of wrongdoing the jury believed had been proven by a preponderance of the evidence. That fatal flaw in the verdict renders it useless for determining liability in Phase II.

4

The only way to fix that fundamental flaw without violating the Constitution is to vacate the Phase I jury verdict findings.

### A. The Phase I Jury's Verdict Form Answers Are Too Vague to Be of Any Use In This Case.

The bifurcation and sequencing of the trial in this case turned on the five related, but separate, propositions that Plaintiffs need to prove to establish liability. First, Plaintiffs must prove that Jacobs breached the contract with the TVA (because otherwise Jacobs is immune). [Doc. 353 at 5]; *see also In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014) (a contractor "is entitled to derivative sovereign immunity only if it adhered to the terms of its contract with the government"); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963). Second, Plaintiffs must prove that the *same* breach of the contract with the TVA was also a breach of a duty of care Jacobs owed to Plaintiffs. [Doc. 424, 14 Trial Tr. at 3025 (The Court: "If Plaintiffs prove any of these six acts or omissions [violating the contract] by a preponderance of the evidence, you must then decide whether each amounts to a breach of Defendant's duty of reasonable care. In other words, you do not have to find that any of these acts or omissions, if any, in fact, did occur, necessarily amount to a breach of any of the duties that I have previously discussed.").] Third, Plaintiffs need to show that this *same* breach of both the contract and the duty of care was capable of causing Plaintiffs' compensable injuries. [Doc. 353 at 4; *see also* Doc. 424, 14 Trial Tr. at 3020; Doc. 302 at 9 (explaining that Plaintiffs must prove that the conduct alleged to have violated the TVA contract or Safety and Health Plan "is capable of causing" the alleged injury).] Fourth, Plaintiffs need to prove that this *same* breach of both the contract and the duty of care specifically caused each individual Plaintiff's injuries. [Doc. 353 at 4; Doc. 424, 14 Trial Tr. at 3020; Doc. 302 at 9.] And fifth, Plaintiff must prove damages from those injuries. [Doc. 353 at 4; Doc. 424, 14 Trial Tr. at 3020]; *see also Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) (listing as an essential

element of a negligence claim under Tennessee law "an injury or loss"). Only then, at the conclusion of both phases of this litigation, could Plaintiffs prove that Jacobs was in any way liable.

As explained above, Phase I was supposed to answer the first three questions to enable the Phase II trials to use the Phase I findings to determine the remaining two questions, specific causation and damages, as to each individual Plaintiff. But because Plaintiffs convinced the Court not to ask the jury which of their six theories of wrongdoing they believed, it is "impossible . . . to decide which theory of liability persuaded the jury." *Wilburn*, 139 F.3d at 366. The jury could have agreed with one or more of Plaintiffs' six disparate theories: that Jacobs (1) "deliberately manipulated or tampered with any monitoring results or processes," (2) "did not inform TVA safety officials of repeated complaints regarding health problems due to fly ash," (3) "failed to comply with the provisions of the safety and health plan with respect to the voluntary use of dust masks," (4) "threatened workers when they asked for dust masks or respirators," (5) "communicated to workers that fly ash was safe to consume," or (6) "otherwise failed to train or warn workers about the dangers of excessive fly ash exposure." [Doc. 424, 14 Trial Tr. at 3022, 3024.] But because the verdict only indicated generally that Jacobs had "failed to adhere to the terms of its contract with TVA" or the "Safety and Health Plan," "failed to exercise reasonable care," everyone is now "left in the dark as to" which of Plaintiffs' six theories the jury found proved by preponderance of the evidence. *See Blyden*, 186 F.3d at 267; *Loesel v. City of Frankenmuth*, 692 F.3d 452, 467–68 (6th Cir. 2012) (cannot determine what the jury found because "nothing on the verdict form indicated which theory formed the basis for the jury's

decision").[1]

Everyone is also "left in the dark as to" whether the Phase I jury unanimously settled on any single theory of wrongdoing that was *capable of causing* Plaintiffs' ten listed injuries. It may have been the case that, for example, the jury believed that the breach was caused by a Jacobs employee telling workers that fly ash was safe to consume, but the only theory that was capable of causing Plaintiffs' alleged injuries was Jacobs' alleged manipulation of the monitoring equipment. Or, perhaps the jury believed one of Plaintiffs' other theories for how Jacobs violated its contract with TVA (e.g., the alleged failure to inform TVA of complaints regarding health problems), but determined that conduct was not capable of causing any of Plaintiffs' injuries. But we will never know, because the verdict form's vagueness makes it impossible to determine what the jury found. *Cf.* Federal Civil Jury Instructions of the Seventh Circuit § 7.25, cmt. f. (2017) ("Where the plaintiff relies on multiple theories of [§ 1983] liability . . . the court should strongly consider presenting the jury with special interrogatories regarding the bases on which it is imposing liability, or should consider giving a separate elements instruction for each theory, in essence treating each as a separate claim."), *available at* http://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf.

Because it is impossible to know which of Plaintiffs' six theories the Phase I jury believed (or even whether the jury settled on one theory of wrongdoing that it believed was a violation of the contract, a breach of Jacobs' duties to Plaintiffs, *and* capable of causing Plaintiffs' injuries), there is no way to use the verdict findings in any Phase II trial. Under black-letter law—and basic common sense—to determine whether some wrongdoing specifically caused an injury and if so

---

[1]     To the extent Plaintiffs believe they were not limited to those six theories, the jury instructions say otherwise, [Doc. 424, 14 Trial Tr. at 3022, 3024], and adding even more theories would only make what the jury found more of a mystery.

by how much, one must know what the specific wrongdoing was. *See* 1 Dan B. Dobbs et al., The Law of Torts § 183 (2d ed. 2011) ("The factual cause rule requires the plaintiff to prove that *the defendant's conduct* caused legally recognized damages." (emphasis added)). The second jury cannot be "left in the dark as to which actions toward which plaintiffs had been found to be" negligent and then "expect[]" the second jury to do the "unfathomable" and deduce whether that unknown wrongdoing caused a specific harm and the quantity of that harm. *Blyden*, 186 F.3d at 267. Put differently, a jury needs to know the wrongdoing to determine whether it caused a specific injury, and the quantity of that injury. *See id.*; Dobbs et al., *supra*, § 183.

This is not a problem in many cases: "In the typical case where a single plaintiff sues over acts arising out of a single incident, there is rarely any question about what the jury found" even with a barebones, general verdict. *Blyden*, 186 F.3d at 267. And, as this Court previously noted, the Sixth Circuit has sanctioned Kentucky's "'barebones'" approach to jury instructions. [Doc. 424, 14 Trial Tr. at 2897 (quoting *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000)).] But *King* and other "typical" cases do not involve multiple theories of liability, dozens of individual plaintiffs with disparate alleged injuries, *and* a bifurcated trial with different juries empaneled to determine liability. In a bifurcated, procedurally complex case like this one with multiple theories of liability, the special verdict form must "ask the jury to specify which acts were found to be [negligent] and which were not" to avoid a Seventh Amendment violation. *Blyden*, 186 F.3d at 268; *see also In re Bendectin Litig.*, 857 F.2d 290, 295–96 (6th Cir. 1988) (noting the court used two specific questions at the first phase of a trifurcated trial). Specifically, the "court must carefully craft the verdict form for the first jury so that the second jury knows what has been decided already." Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705, 736–37 (2000); *see also DSG Corp. v. Anderson*, 754 F.2d 678, 681–82 (6th Cir. 1985) ("[T]he 'bare bones'

8

approach does not prevent a court from giving instructions regarding material issues raised by a litigant's pleadings and proof at trial . . . .").

To be sure, a barebones verdict form can often be the better, simpler approach. There are fewer questions to explain to the jury and a smaller risk of inconsistent answers. But when faced with the risk that a party's basic constitutional rights will be trampled by procedural shortcuts, the law mandates "crisp rules with sharp corners." *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 881 (6th Cir. 1997)). Or, as the Seventh Circuit explained when discussing the Seventh Amendment concerns with bifurcation in a massive products liability case, "the district judge must carve at the joint." *In re Rhone-Poulenc Rorer*, 51 F.3d at 1302. In the context of this case, maintaining sharp corners and carving at the joint meant taking care to ensure that the Phase II juries would properly receive the results of the Phase I trial. Plaintiffs' proposed verdict form failed to do so, and as a result, a serious procedural defect has emerged to everyone's detriment.

### B. The Only Viable Solution Is to Vacate the Phase I Jury Verdict Findings.

Forging ahead with the amorphous Phase I verdict findings will necessarily violate the Seventh Amendment and create a procedural morass. The only solution to this problem created by Plaintiffs is vacating the Phase I jury's verdict.

*First*, the Court cannot have the juries in Phase II supply the necessary specifics of how Jacobs allegedly violated its contract with the TVA and breached its duties of care because that would violate the Seventh Amendment. Specifically, Plaintiffs may want the Court to simply tell the juries in Phase II that they must find that Jacobs committed some wrongdoing that was capable of causing Plaintiffs' harms (given those findings in the Phase I verdict), and then let the Phase II juries determine which of the six theories they believe, so that they can then proceed to determine

specific causation and damages.

This approach would run headlong into the Seventh Amendment, which provides that "no fact tried by a jury[] shall be otherwise re-examined in any Court of the United States." U.S. Const. amend. VII. It is, of course, permissible for "issues [to] be divided and tried separately" without violating the Seventh Amendment. *Blyden*, 186 F.3d at 268. "[B]ut a given issue may *not* be tried by different, successive juries." *Id.* (emphasis added). A fact found by a first jury cannot be "re-examined" by any second fact-finder, whether judge or jury. U.S. Const. amend. VII; *In re Rhone-Poulenc Rorer*, 51 F.3d at 1302–03; *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750–51 (5th Cir. 1996).

In *Rhone-Poulenc Rorer*, the Seventh Circuit granted mandamus relief to the defendants in a products liability case involving 400 plaintiffs *before* the first trial even got under way to stop an impending violation of the Seventh Amendment. The district court's procedure in that case would have allowed the first jury to examine foreseeability and proximate causation to determine negligence, and then later juries would also examine foreseeability and proximate causation to determine comparative negligence. *In re Rhone-Poulenc Rorer*, 51 F.3d at 1303. In other words, the plan was "inconsistent with the principle" of the Seventh Amendment "that the findings of one jury are not to be reexamined by a second, or third, or nth jury." *Id.*; *see also Castano*, 84 F.3d at 750–51 (holding the same because a second jury's task of determining comparative negligence creates a risk that the "second jury could reevaluate the defendant's fault").

Here, this Court has a similar opportunity to stave off the impending constitutional violations. The second jury cannot determine *how* Jacobs breached the contract or violated the Safety and Health Plan, *how* Jacobs failed to exercise reasonable care, and *whether* that specific wrongdoing was capable of causing Plaintiffs' injuries because the Phase I jury was already

presented with, and determined, these issues. Specifically, the Phase I jury had to agree that Jacobs breached its contract with the Government and violated its duty of care to Plaintiffs in at least one of the six ways theorized by Plaintiffs and that this breach was capable of causing Plaintiffs' ten specific harms. [Doc. 408; Doc. 424, 14 Trial Tr. at 3022, 3024.] The Phase I jury may have concluded that the wrongdoing was that Jacobs "did not inform TVA safety officials of repeated complaints regarding health problems due to fly ash," or that it "communicated to workers that fly ash was safe to consume," or some of the other four remaining theories. [Doc. 424, 14 Trial Tr. at 3022, 3024.] As the verdict form indicates, the Phase I jury found that Plaintiffs proved at least one of those theories by a preponderance of the evidence. [Doc. 408 at 2–3.] The need for the Phase II juries to now re-examine those factual questions collides with the Seventh Amendment. *Blyden*, 186 F.3d at 268–69; *In re Rhone-Poulenc Rorer*, 51 F.3d at 1302–03.

*Blyden* illustrates the danger of moving forward with ambiguous jury verdict findings in a phased trial like this one. There, the district court bifurcated the issues of liability and damages in a constitutional tort case involving prison guards' actions after quelling a prison riot. *Blyden*, 186 F.3d at 257–58. To determine plaintiffs' claims against a guard supervisor, the court asked the first-phase jury to determine whether guards under the supervisor's control engaged in "reprisals" against the prisoners after retaking control of the prison, and whether the supervisor caused those reprisals. *Id.* at 259. The first-phase verdict form, in relevant part, asked whether (1) plaintiffs proved that officer engaged in reprisals, and (2) whether the supervisor engaged in, directed, or was deliberately indifferent to those reprisals. *Id.* at 260. The verdict form did not ask the first-phase jury to indicate *which* reprisals the plaintiffs actually proved. *Id.* In the second phase, new juries were empaneled to determine the damages individual plaintiffs incurred as a result of the reprisals found by the first-phase jury. *Id.* at 261. But because the verdict form from the first

phase did not ask the jury to list which acts of reprisals were proven, all the second phase jurors could be told was "that there had been 'reprisals.'" *Id.* at 271. The second-phase juries were therefore "left free to determine whether any particular act constituted a 'reprisal' . . . without regard to how the [first-phase] jury viewed that particular act." *Id.* at 269. Reversing and ordering a new trial, the Second Circuit held that because the vague first-phase verdict form required the second-phase jury to determine for itself which reprisals occurred—a determination previously made by the first-phase jury—"[t]his procedure clearly violated the Seventh Amendment." *Id.* at 268–69.

The outcome in *Blyden* is precisely what will happen here if the Court allows the Phase II juries to fill in the missing details from the ambiguous verdict findings from Phase I. In violation of the Seventh Amendment, the Phase II juries will be forced to determine which acts Jacobs committed, whether those acts violated a duty of care, and whether that breach of duty was capable of causing a specific plaintiff's injuries, all of which the Phase I jury has already determined.

*Second*, the Court cannot avoid this problem by telling the Phase II juries that the Phase I jury found *all* of Plaintiffs' theories proved by a preponderance of the evidence because it is "impossible to decide" that. *Wilburn*, 139 F.3d at 366. The Court's instructions were clear: the Phase I jury could find that Plaintiffs had proved "by a preponderance of the evidence that *any* of" their six theories of wrongdoing "did, in fact, occur" to prove both that Jacobs was not immune and that Jacobs breached its duties of care. [Doc. 424, 14 Trial Tr. at 3023 (emphasis added); *id.* at 3025 ("If Plaintiffs prove any of these six acts or omissions by a preponderance of the evidence . . .")]. Removing any doubt, those same instructions listed Plaintiffs' six theories of wrongdoing in the disjunctive, using the word "or." [*Id.* at 3022, 3024, 3026.] The Court further explained in the general instruction on the issues to be decided that "[i]f [they] conclude that *any*

breach of duty by Defendant was capable of causing the injuries the Plaintiffs have alleged, these cases will proceed to another phase." [*Id.* at 3019–20 (emphasis added).]

Given these clear instructions, assuming that the Phase I jury found that Plaintiffs had proved all of their six theories would be error. Indeed, the only way for the Court to conclude that Plaintiffs proved their six theories, given the instructions and verdict findings in this case, would be for the Court to act as fact finder, which would also violate the Seventh Amendment. *In re Rhone-Poulenc Rorer*, 51 F.3d at 1303. That is because "[t]he right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them (provided there are no errors warranting a new trial), and not reexamined by another finder of fact. This would be obvious if the second finder of fact were a judge." *Id.* Moreover, even putting aside the Seventh Amendment, the Court cannot conclude that Plaintiffs proved all their six theories of wrongdoing because each of those claims fails as a matter of law and the jury's verdict is against the weight of the evidence. [*See* Jacob's Brief in Support of Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for a New Trial at Sections A & B.]

*Finally*, the Court cannot pick and choose among Plaintiffs' six theories of wrongdoing and tell the juries in Phase II that Plaintiffs proved those theories by a preponderance of the evidence for the exact same reasons. Even if the Court believed there were "substantial evidence" supporting one of Plaintiffs theories (*but see id.*), any "assumption that this is what the" Phase 1 jury found would be "entirely conjectural." *Blyden*, 186 F.3d at 267. Again, the ambiguous verdict form used for Phase I "makes it impossible . . . to decide which" of Plaintiffs' six theories of wrongdoing "persuaded the jury." *Wilburn*, 139 F.3d at 366. And this Court cannot make that factual determination itself without violating both Jacobs' Seventh Amendment right to a jury trial

and the Seventh Amendment's prohibition on a judge reexamining the factual findings of the Phase I jury.[2]

### C. Jacobs Objected to the Jury Verdict Form on the Ground that It Did Not Ask the Jury to Choose Among Plaintiffs' Theories.

Plaintiffs cannot escape the verdict form error they invited by claiming that Jacobs "expressly waived Seventh Amendment objections." [Doc. 431 at 4.] While Jacobs did propose bifurcation, that alone is not the source of the constitutional and procedural dilemma in which the Court and parties now find themselves. As explained above, Plaintiffs led the court astray by proposing a verdict form that failed to ask the jury which of Plaintiffs' six theories of wrongdoing it believed had been proven by a preponderance of the evidence. Jacobs specifically objected to an ambiguous verdict form and extensively argued for a form that would "identify exactly what conduct constituted a breach of duty" [Doc. 424, 14 Trial Tr. 2895]:

> There's just different types of harm that result from the different types of breaches that you're talking about. And if the jury doesn't break those out, then you've got one jury that might determine that [on] nine of ten [allegations of misconduct], Jacobs [did not commit the alleged acts], and messed up one of them. And, in Phase II, the jury would be invited to reweigh that and consider all ten [allegations of misconduct] because we would have just a blanket finding of a breach of duty whereas they may have found in Jacobs' favor on nine of the ten issues they're going to be deciding.

[Doc. 422, 13 Trial Tr. at 2862; *see also id.* at 2859–71; Doc. 424, 14 Trial Tr. at 2895, 2898–99 (Court recognizing Jacobs' arguments).] As a result, Jacobs clearly preserved this argument

---

[2]     Moreover, as explained in Jacobs' concurrently filed Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for a New Trial, at least three of Plaintiffs' theories of wrongdoing fail as a matter of law (and were against the weight of the evidence). A new trial is thus necessary for that reason too because there is no way to know from the verdict form whether the jury's verdict rested on one of the theories not "sustained by the evidence." *Wilburn*, 139 F.3d at 366 (3rd Cir. 1998); *Loesel*, 692 F.3d at 467 (same substantively); *see also* Jacob's Brief in Support of Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for a New Trial at Section C.

because it "state[d] the issue with sufficient clarity to give the court and opposing parties notice that it is asserting an issue" and provided far more than the "minimal level of argumentation" required for preservation. *Lucaj v. Fed. Bureau of Investigation*, 852 F.3d 541, 547 n.4 (6th Cir. 2017) (quoting *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009)).

<u>CONCLUSION</u>

In light of the fatal flaws in the Phase I verdict, moving forward with Phase II trials would not only fail to correct those defects, but would further compound them in violation of the Seventh Amendment. The Court should vacate the Phase I verdict findings, order a new trial, and then reassess how this case should move forward.

Respectfully submitted,

**NEAL & HARWELL, PLC**
By: /s/ James F. Sanders
James F. Sanders        (No. 005267)
jsanders@nealharwell.com
J. Isaac Sanders        (No. 029372)
isanders@nealharwell.com
Marie T. Scott          (No. 032771)
mscott@nealharwell.com
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee  37203
Telephone:  (615) 244-1713
Facsimile:  (615) 726-0573

**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous, Jr. (*pro hac vice* pending)
tboutrous@gibsondunn.com
Theane Evangelis (*pro hac vice* pending)
tevangelis@gibsondunn.com
Jeremy S. Smith (*pro hac vice* pending)
jssmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:    (213) 229-7000
Facsimile:    (213) 229-7520
*Attorneys for Defendant*
*Jacobs Engineering Group, Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of December, 2018, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

      /s/ James F. Sanders      
