# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# <u>AT KNOXVILLE</u>

| | | |
|---|---|---|
| GREG ADKISSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:13-CV-00505-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | *Lead case consolidated with* |
| _____ | ) | |
| KEVIN THOMPSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:13-CV-00666-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| JOE CUNNINGHAM, et al., | ) | *as consolidated with* |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:14-CV-00020-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| BILL ROSE, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. 3:15-CV-00017-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| CRAIG WILKINSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-00274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| ANGIE SHELTON, as wife and next of kin | ) | |
| on behalf of Mike Shelton, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-00420-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| _____ | ) | |
| JOHNNY CHURCH, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No.: 3:15-CV-00460-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |

| DONALD R. VANGUILDER, JR., | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No. 3:15-CV-00462-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |
| JUDY IVENS, as sister and next of kin, | ) | |
| on behalf of JEAN NANCE, deceased, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:16-CV-00635-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |
| PAUL RANDY FARROW, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:16-CV-00636-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF JACOBS ENGINEERING GROUP, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

## TABLE OF CONTENTS

                                                         **Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY.......................................................... 2

    A.     TVA's Conduct of Remediation Activities as Lead Agency. ........................... 2

    B.     Application of the Discretionary-Function Exemption to Jacobs' Immunity Defense.... 3

LEGAL STANDARD........................................................................................................ 5

ARGUMENT..................................................................................................................... 5

    A.     *Thacker* Materially Changed the Law This Court Previously Relied Upon. ................... 5

    B.     Jacobs Should be Granted Judgment as a Matter of Law Based On *Thacker*.................. 6

        1.     Jacobs Is Entitled to Derivative Sovereign Immunity........................................ 7

        2.     Jacobs Was Performing a Governmental Function in its Remediation Efforts............... 9

        3.     This Lawsuit Gravely Interferes with Jacobs' Governmental Activity of Remediation. ......................................................................................... 11

CONCLUSION................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
    790 F.3d 641 (6th Cir. 2015) ........................................................................ 2, 3, 4, 5-6

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
    No. 3:13-CV-505-TAV-HBG, 2014 WL 4384327 (E.D. Tenn. Sept. 3, 2014) ........................3

*Brewer v. Sheco Constr. Co.*,
    327 F. Supp. 1017 (W.D. Ky. 1971) ..........................................................................10

*Cadillac Fairview/California, Inc. v. Dow Chem. Co.*,
    840 F.2d 691 (9th Cir. 1988) ....................................................................................10

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) ........................................................................................7, 8, 9

*Doe v. Am. Nat'l Red Cross*,
    847 F. Supp. 643 (W.D. Wis. 1994) ..........................................................................12

*Edwards v. Tennessee Valley Auth.*,
    255 F.3d 318 (6th Cir. 2001) ..................................................................................5, 10

*Grant v. Tennessee Valley Auth.*,
    49 F. Supp. 564 (E.D. Tenn. 1942) .......................................................................10, 11

*Hendy v. Bello*,
    555 F. App'x 224 (4th Cir. 2014) ..............................................................................12

*Hill v. Tennessee Valley Auth.*,
    842 F. Supp. 1413 (N.D. Ala. 1993) ..........................................................................10

*Latch v. Tennessee Valley Auth.*,
    312 F. Supp. 1069 (N.D. Miss. 1970) ........................................................................10

*Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*,
    590 F.3d 381 (6th Cir. 2009) .....................................................................................5

*Mays v. Tennessee Valley Auth.*,
    699 F. Supp. 2d 991 (E.D. Tenn. 2010) ......................................................................9

*McCarthy v. Foltz*,
    1994 WL 468030 (6th Cir. Aug. 29, 1994) ..................................................................5

*Morris v. Tennessee Valley Auth.*,
    345 F. Supp. 321 (N.D. Ala. 1972) ............................................................................. 10

*Pac. Nat'l Fire Ins. Co. v. Tennessee Valley Auth.*,
    89 F. Supp. 978 (W.D. Va. 1950) ............................................................................... 10

*Peoples Nat'l Bank of Huntsville, Ala. v. Meredith*,
    812 F.2d 682 (11th Cir. 1987) .................................................................................... 10

*Quapaw Tribe of Okla. v. Blue Tee Corp.*,
    No. 03-CV-0846-CVE-PJC, 2008 WL 2704482 (N.D. Okla. July 7, 2008) ........................ 11

*Queen v. TVA*,
    689 F.2d 80 (6th Cir. 1982) ................................................................................. 10, 11

*Sligh v. Tennessee Valley Auth.*,
    532 F. Supp. 168 (E.D. Tenn. 1980) ........................................................................... 10

*Smith v. Tennessee Valley Auth.*,
    436 F. Supp. 151 (E.D. Tenn. 1977) ........................................................................... 10

*Thacker v. Tennessee Valley Auth.*,
    773 F. App'x 598 (11th Cir. 2019) ................................................................................ 6

*Thacker v. Tennessee Valley Authority*,
    139 S. Ct. 1435 (2019) ..................................................................................... passim

*Yearsley v. W.A. Ross Constr. Co.*,
    309 U.S. 18 (1940) ............................................................................... 6, 7, 9, 12

**Rules**

Fed. R. Civ. P. 50(a) ............................................................................................................ 5

**Regulations**

40 C.F.R. § 300.5 ............................................................................................................. 10

iii

**INTRODUCTION**

Jacobs Engineering Group, Inc. moves the Court to reconsider its February 28, 2019 order denying Jacobs' motion for judgment as a matter of law, Dkt. 462, ("JMOL Order") based on a subsequent change in controlling law.[1]  The JMOL Order held, among other things, that Jacobs was not entitled to derivative immunity, because its conduct did not fall within the discretionary-function exception to the Federal Tort Claims Act ("FTCA").  In so ruling, the JMOL Order relied upon the Sixth Circuit's previous ruling in this case that the scope of Jacobs' immunity hinged on application of the discretionary-function exception.

Two months after the JMOL Order, in April 2019, the Supreme Court issued its decision in *Thacker v. Tennessee Valley Authority*, 139 S. Ct. 1435 (2019), rejecting long-standing Sixth Circuit precedent that the discretionary-function exception defined the scope of the Tennessee Valley Authority's ("TVA") immunity.  Because Jacobs' immunity is derivative of the TVA's, *Thacker* necessarily dictates that the discretionary-function exception also does not apply to Jacobs' claim for immunity in this case.  Under the new binding test under *Thacker*, TVA is immune from suit if (1) the allegedly negligent conduct was "governmental" "in nature;" and (2) "prohibiting the type of suit at issue is necessary to avoid grave interference with that function's performance." *Thacker*, 139 S. Ct. at 1444 (quotations and alterations omitted).

Jacobs is entitled to derivative immunity under this new standard so long as (1) Jacobs did not violate "federal law [or] the Government's explicit instructions" *Campbell-Ewald Company v. Gomez*, 136 S. Ct. 663, 672 (2016), and (2) TVA would be immune under the new *Thacker* test. The Phase I trial confirms that both of these elements have been met.  Jacobs complied with

---

[1] On June 12, 2019, Jacobs informed the Court that in light of *Thacker* it would "file a renewed motion for judgment as a matter of law after the stay is lifted." Dkt. 477.  The stay was lifted on April 28, 2020.  Dkt. 519.

1

"federal law and the Government's explicit instructions," and immunity extends to all claims in the present action under *Thacker* because Jacobs was assisting TVA in performing the governmental function of "lead agency" in charge of a large-scale environmental remediation, and allowing tort suits arising from such conduct would pose a "grave interference" with this governmental function. Jacobs respectfully requests that this Court reconsider the JMOL Order based on new controlling legal authority and enter judgment as a matter of law for Jacobs.

## BACKGROUND AND PROCEDURAL HISTORY

### A. TVA's Conduct of Remediation Activities as Lead Agency.

It is well-established that TVA has acted in the governmental capacity of the lead agency conducting cleanup of coal ash following the December 2008 incident. As the Sixth Circuit described: "TVA and [EPA] responded to the coal-ash spill as required by [federal law]. . . During this initial emergency-response phase, the EPA delegated its authority to TVA to remove the coal ash . . . TVA has been the lead agency authority for all further coal-ash cleanup, removal, and remediation since the EPA terminated the initial emergency-response phase on January 11, 2009." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 643–44 (6th Cir. 2015).

TVA's governmental status was confirmed in a May 2009 Administrative Order and Agreement on Consent (the "Consent"), which expressly recognized that TVA was acting pursuant to the President's delegated authority to perform environmental cleanups under Section 104(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Pl. Ex. 59. In February 2009, TVA contracted with Jacobs to assist TVA in performing its function as lead agency for the coal ash cleanup, including assisting with "project planning, management and oversight." Dkt. 11-1 at 4. The project was completed in April 2015.

2

### B. Application of the Discretionary-Function Exemption to Jacobs' Immunity Defense.

Plaintiffs are workers, not employed by Jacobs, who assisted with the massive cleanup project. They allege that Jacobs' actions during the cleanup caused a variety of health issues. *See* Dkt. 1. In its initial response to the complaint, Jacobs moved to dismiss for lack of subject matter jurisdiction on the grounds that it was derivatively immune from suit by virtue of its government contractor relationship with TVA. Dkt. 11. This Court agreed and found that because Jacobs did not violate any mandatory directives, it was entitled to derivative sovereign immunity under the FTCA—which insulates federal agencies from suit when the claim arises out of a federal employee's performance of a discretionary-function. *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2014 WL 4384327, at *9, *16 (E.D. Tenn. Sept. 3, 2014), *rev'd and remanded*, 790 F.3d 641 (6th Cir. 2015).

On appeal, the Sixth Circuit held that "Jacobs's exemption from liability [would] depend on whether its specific conduct at issue would fall under the corollary of the discretionary-function exception of the FTCA." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d at 648. However, the Court of Appeals disagreed that immunity was jurisdictional, holding that the District Court should have considered Jacobs' motion under Rule 12(b)(6), which—unlike a jurisdictional motion under Rule 12(b)(1)—does not permit a court to resolve factual disputes. *Id.* at 647. Because the District Court "made numerous references to documents outside of the pleadings in discussing the application of the discretionary-function exception," the Sixth Circuit found that the different standards for resolving factual issues under Rules 12(b)(1) and 12(b)(6) "almost certainly affected its analysis here." *Id.* at 648. The Court of Appeals therefore remanded to the District Court in order to determine whether "Jacobs's conduct qualifies for the [discretionary-function] exception under the narrower Rule 12(b)(6) standard." *Id.* To assist the District Court in making this

3

determination, the Sixth Circuit proceeded to "clarify the scope of conduct to which the discretionary-function exception potentially applies." *Id.* at 648.

Jacobs subsequently presented its immunity defense by motion for summary judgment, which the Court denied on February 15, 2017, finding genuine fact issues for trial. Dkt. 137. During the Phase I trial, the Court instructed the jury that Jacobs was not immune from suit if Jacobs deviated from its contract with TVA or the Site Wide Health and Safety Plan ("SWSHP"). Dkt. 424, 14 Trial Tr. at 3021-22. The Court proceeded to instruct the jury that Jacobs would have violated those agreements only if the jury determined that Jacobs performed any of six specific factual acts. *Id.* at 3022, 3024. There was no other basis for the jury to find that Jacobs violated its contract with TVA. *Id.* Each of the fact issues identified in the Court's instruction related to Jacobs' work assisting TVA in the cleanup. The Phase I jury found against Jacobs, but due to the general verdict form submitted to the jury, it is impossible for anyone, aside from the Phase I jury, to know on which if these fact issues the jury decided. *See* Dkt. 440.

Following the Phase I trial, Jacobs moved for judgment as a matter of law on the immunity issue, which the Court denied in an order dated February 28, 2019. After reviewing the Court's instruction to the jury concerning the six fact issues relating to immunity, the Court noted that Jacobs could not object to this instruction, because "the conduct at issue falls outside the discretionary-function exception." JMOL Order, Dkt. 462 at 24. Relying on the Sixth Circuit's guidance, the Court went on to apply the two-part test for the discretionary-function exception, finding that "Jacobs's argument does not get the discretionary-function exception quite right." *Id.* at 25.

Two months after the Court's ruling, on April 29, 2019, the governing law changed when the United States Supreme Court rejected the discretionary-function exception as the standard for

4

TVA's immunity. *Thacker*, 139 S. Ct. at 1443. Instead, the Supreme Court instructed that TVA is immune from suit if the "suit challenges governmental activities" and the suit would cause "grave interference" with that governmental activity. *Id*. at 1443-44 (quotations omitted).

## LEGAL STANDARD

A court should grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Notably, such a motion is appropriate when claims cannot be maintained under controlling law. *McCarthy v. Foltz*, 1994 WL 468030, at *1 (6th Cir. Aug. 29, 1994) (per curiam).[2] Reconsideration of any previous ruling is appropriate when there is "an intervening change of controlling law." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citation and quotations omitted).

## ARGUMENT

The discretionary-function immunity test that this Court previously applied in deciding that Jacobs was not entitled to derivative immunity is no longer valid. Under the new binding law provided by *Thacker*, Jacobs is immune and judgment should be entered in its favor.

### A. *Thacker* Materially Changed the Law This Court Previously Relied Upon.

Courts in the Sixth Circuit, as well as others, have long held that TVA's sovereign immunity is decided under the FTCA's discretionary-function exception test. *See, e.g.*, *Edwards v. Tennessee Valley Auth.*, 255 F.3d 318, 322 (6th Cir. 2001). Not surprisingly, that long-standing view of the law also governed this case. For example, the Sixth Circuit expressly held that "TVA,

---

[2] As these consolidated cases have proceeded through only the first part of the bifurcated trial plan, the Court has not entered a judgment in any of them. In the event that any of these cases proceed to judgment, Jacobs reserves the right to renew this Motion.

5

as a federal agency, is a beneficiary of the FTCA's discretionary-function exemption." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d at 645. So did this Court. Dkt. 39 at 19; Dkt. 137 at 26; Dkt. 462 at 25.

The lower courts in *Thacker*, relying on long-standing precedent, also found the FTCA's discretionary-function exception was the governing framework for cases against TVA. In *Thacker*, the plaintiff drove his boat into a power line that had fallen into the water as TVA employees were attempting to replace it. *Thacker*, 139 S. Ct. at 1440. He sued, alleging that TVA was negligent in replacing the power line and in failing to warn boaters of the danger. *Id.* The district court and Eleventh Circuit held that TVA, as a government agency, "is entitled to immunity from any suit based on an employee's exercise of discretionary functions." *Id.*

The Supreme Court disagreed. The Court held that TVA is entitled to immunity if (1) "the conduct alleged to be negligent is governmental" and, (2) "prohibiting the type of suit at issue is necessary to avoid grave interference with the function's performance." *Id.* at 1444 (quotations and alterations omitted); *see also Thacker v. Tennessee Valley Auth.*, 773 F. App'x 598 (11th Cir. 2019). The discretionary-function exception plays no part in the analysis. "Nothing in the statute establishing the TVA … expressly recognizes immunity for discretionary functions" and "the FTCA's exception for discretionary functions [does not] apply to the TVA." *Thacker*, 139 S. Ct. at 1440.

Because the JMOL Order in this case relied on pre-*Thacker* law, it should be reexamined.

### B.     Jacobs Should be Granted Judgment as a Matter of Law Based On *Thacker*.

Jacobs, as TVA's contractor, is derivatively entitled to the sovereign immunity conferred on TVA. In considering derivative immunity of a federal contractor, courts first determine whether the contractor has a right to derivative immunity under *Yearsley v. W.A. Ross Constr. Co.*, 309

6

Case 3:13-cv-00505-TAV-HBG   Document 546   Filed 06/04/20   Page 11 of 19   PageID #: 17540

U.S. 18 (1940). If such a right exists, then the scope of the immunity is governed by—and coextensive with—the scope of immunity afforded to the contracting federal agency. Because that agency is TVA, the scope of immunity here is controlled by the Supreme Court's reformulated *Thacker* test.

Jacobs is entitled to derivative immunity under *Yearsley*, because it complied with all federal directions. This immunity extends to all claims in the present action under *Thacker*, because (1) TVA—and by extension Jacobs—was performing governmental functions; and (2) the Plaintiffs' suit gravely interferes with the administration of those functions. Because no reasonable jury could have found otherwise, and because neither the discretionary-function exception nor the six fact issues submitted to the Phase I jury have any bearing on these issues, Jacobs is derivatively immune from Plaintiffs' claims as a matter of law.

### 1. Jacobs Is Entitled to Derivative Sovereign Immunity.

Jacobs benefits from TVA's sovereign immunity because it did not violate any TVA directives or federal law. Derivative sovereign immunity flows to a government contractor such as Jacobs so long as it has not "exceeded [its] authority" and that authority was "validly conferred." *Yearsley*, 309 U.S. at 21. At bottom, a contractor cannot violate "federal law and the Government's explicit instructions." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), as revised (Feb. 9, 2016).

The key question under *Yearsley* and its progeny is whether the contractor violated a government directive. In *Campbell-Ewald*, the Navy instructed its contractor to only send text messages to individuals who had opted in to receiving such messages, but in violation of this explicit directive, the contractor sent text messages to other individuals. *Id*. at 673–674. Because the contractor violated the government's explicit instruction, the Court held that it did not qualify

for derivative sovereign immunity. *Id*.

Here, Jacobs' contract with TVA provided that Jacobs would act as "prime contractor providing project planning, management and oversight to assist TVA in overall recovery and remediation associated with this incident." Dkt. 11-1 at 4. It was tasked with developing a Corrective Action Plan, reviewing and developing dredging plans, creating a project management structure, reviewing and developing TVA's public relations plans, and assisting in managing, with TVA's oversight, the KIF Dredge Cell Incident Recovery Program. *See* generally Dkt. 11-1. Jacobs was also bound to abide by the SWSHP, which contained broad guidelines *but not directives*. *Id*. at 30; Dkts. 11-3, 11-4, 11-5. There is no evidence that Jacobs violated any specific directives issued by TVA or federal law. *See Campbell-Ewald Co.*, 136 S. Ct. at 672; Dkt. 438 at 11-15 (explaining the lack of evidence at trial showing a violation of an explicit instruction). The analysis stops there.

This Court's prior analysis, however, went further. It determined that Jacobs would not be entitled to immunity if it engaged in six specific alleged acts or omissions in performing TVA's function and assisting with the cleanup that were untethered to any directive or prohibition from TVA:

(A) Deliberately manipulated or tampered with any monitoring results or processes;

(B) Did not inform TVA safety officials or repeated complaints regarding health problems due to fly ash;

(C) Failed to comply with the provisions of the Safety and Health Plan with respect to voluntary use of dust masks;

(D) Threatened workers when they asked for dust masks or respirators;

(E) Communicated to workers that fly ash was safe to consume; or

(F) Otherwise failed to train or warn workers about the dangers of excessive fly-ash exposure.

JMOL Order, Dkt. 462 at 23–24.

The Court previously believed those six specific acts were relevant to derivative immunity based on its holding that "the discretionary-function exception" "inform[ed] the scope of Jacobs's immunity under *Yearsley*." *Id.* at 24, n.9; *id.* at 4. In light of *Thacker,* whether a given act "falls outside the discretionary-function exception" no longer has any relevance to whether TVA has immunity, and thus it cannot inform whether Jacobs has derivative immunity under *Yearsley*. Instead, the question reverts to the much simple formulation from *Campbell-Ewald Co.*: did Jacobs violate "federal law and the Government's explicit instructions." *Campbell-Ewald Co.*, 136 S. Ct. at 672. The answer is no. There is no basis for concluding, that any the six theories of wrongdoing presented to the jury would constitute a violation of an explicit federal law or government instruction.

### 2. Jacobs Was Performing a Governmental Function in its Remediation Efforts.

Jacobs' derivative immunity extends to the Plaintiffs' claims in the present action under the two-pronged *Thacker* test. First, all of these claims arise from Jacobs' alleged acts or omissions in performing TVA's governmental function of conducting remediation of the coal ash spill. *Thacker*, 139 S. Ct. at 1443. As this Court has acknowledged, while "pars[ing] the conduct or activities of TVA into the distinct categories of commercial and governmental conduct" is difficult and in some instances could "lead to disparate and inconsistent results," this case squarely falls into the latter category without the need for painstaking hair splitting. *Mays v. Tennessee Valley Auth.*, 699 F. Supp. 2d 991, 1009 (E.D. Tenn. 2010).

When TVA "exercises the power of eminent domain" or "its law enforcement powers," it is acting in a governmental capacity. *Thacker*, 139 S. Ct. at 1443. In contrast, when TVA "acts

9

like any other company producing and supplying electric power," it is performing "commonplace commercial functions" and thus not entitled to immunity. *Id.* at 1439, 1443.

Under this dichotomy, courts have found that TVA acts in a government capacity—and is immune from suit—under a wide variety of circumstances, including navigation and flood control, *Grant v. Tennessee Valley Auth.*, 49 F. Supp. 564, 566 (E.D. Tenn. 1942); *Sligh v. Tennessee Valley Auth.*, 532 F. Supp. 168, 170 (E.D. Tenn. 1980), *aff'd*, 698 F.2d 1223 (6th Cir. 1982), public statements concerning energy conservation, *Queen v. TVA*, 689 F.2d 80, 86 (6th Cir. 1982), press releases, *Hill v. Tennessee Valley Auth.*, 842 F. Supp. 1413, 1420 (N.D. Ala. 1993), the "development and administration of [a] loan program," *Peoples Nat'l Bank of Huntsville, Ala. v. Meredith*, 812 F.2d 682, 685 (11th Cir. 1987), blasting in connection with building a dam, *Pac. Nat'l Fire Ins. Co. v. Tennessee Valley Auth.*, 89 F. Supp. 978, 979 (W.D. Va. 1950), and the operation of dams, *Edwards*, 255 F.3d at 322; *Morris v. Tennessee Valley Auth.*, 345 F. Supp. 321, 323 (N.D. Ala. 1972). On the other hand, TVA has been sued for actions in connection with its commercial activities, including blasting performed to create a power plant for the sale of electric energy, *Smith v. Tennessee Valley Auth.*, 436 F. Supp. 151, 154 (E.D. Tenn. 1977); *Brewer v. Sheco Constr. Co.*, 327 F. Supp. 1017, 1019 (W.D. Ky. 1971), and the provision of its electric power, *Latch v. Tennessee Valley Auth.*, 312 F. Supp. 1069, 1072 (N.D. Miss. 1970).

In this litigation, Plaintiffs' claims are based on allegations that Jacobs acted negligently while assisting TVA in acting as lead agency for the remediation. As lead agency, TVA was required "to plan and implement response actions under the NCP." *See* 40 C.F.R. § 300.5. This included "examining information and determining appropriate responses to environmental hazards." *See Cadillac Fairview/California, Inc. v. Dow Chem. Co.*, 840 F.2d 691, 694 (9th Cir. 1988). In this capacity, TVA was not "engag[ing] in the same activities of its citizens" or

10

competing with a private company. *See Grant*, 49 F. Supp. at 566. Indeed, TVA's actions action did not aspire to profitability, but involved the expenditure of over one billion dollars to remediate coal ash in TVA's capacity as the lead agency under CERCLA. Just as TVA could not be sued for public statements to "advise consumers about [a] matter of important public concern" when the "public relie[d] on the TVA as a Governmental source of information on energy conservation," so too here TVA cannot be sued for actions taken to remediate an environmental disaster. *Queen*, 689 F.2d at 86.

Because Jacobs' activities at issue here were all performed to assist TVA in fulfilling its governmental duties as lead agency for the remediation, the first prong of the *Thacker* analysis is satisfied.

### 3. This Lawsuit Gravely Interferes with Jacobs' Governmental Activity of Remediation.

Jacobs has likewise met *Thacker's* second prong. Plaintiffs' lawsuit has already and will continue to gravely interfere with TVA's governmental activity of remediating areas containing potentially hazardous materials. Decisions concerning conduct of the remediation and protection of remediation workers and the surrounding community require a careful balancing of interests and subjective judgments that are exactly the types of decisions that juries should not be invited to "second guess." *See, e.g.*, *Quapaw Tribe of Okla. v. Blue Tee Corp.*, No. 03-CV-0846-CVE-PJC, 2008 WL 2704482, at *20 (N.D. Okla. July 7, 2008) (declining to "second-guess" the EPA's assessment of different health hazards).

Remediating sites with potentially hazardous materials is also a considerable undertaking that requires a vast degree of manpower and resources. TVA has already spent over a billion dollars remediating the Site. Tennessee Valley Authority, Annual Report (Form 10-K) at 99 (Sept. 30, 2015), available at https://www.snl.com/Cache/IRCache/c5f7adde1-21c3-d5b6-09b2-

11

b2bc07aff0de.html (last accessed May 21, 2020). And by virtue of indemnification agreements that are commonplace among government contractor relationships, governmental entities cannot avoid this grave interference by delegating its authority to contractors. Lawsuits would undoubtedly place a "strain on [TVA's] financial resources and on its ability to carry out the services it performs on behalf of the government." *Doe v. Am. Nat'l Red Cross*, 847 F. Supp. 643, 649 (W.D. Wis. 1994).

Finally, TVA and other government agencies rely on a variety of contractors to perform vital and time sensitive functions that it cannot complete on its own. Allowing companies that step in to respond to national disasters to become targets of massive tort cases will have a chilling effect that could reverberate far beyond this case and this discrete event. A suit against TVA's contractors will dampen their willingness to work with TVA and other agencies and thereby "disturb the federal agency's internal functions." *See Hendy v. Bello*, 555 F. App'x 224, 226 (4th Cir. 2014). Or, recognizing the liability inherent in environmental cleanup work (or responses to other dangerous situations such as pandemics), contractors may demand extraordinary fees commensurate with the level of their potential legal exposure. In either scenario, the government's (and specifically TVA's) ability to fulfill its governmental duties would be hampered.

As with the standard for derivative immunity under *Yearsley,* the six fact issues submitted to the Phase I jury have no relevance to the new two-prong test for the scope of that immunity under *Thacker.* Because Jacobs is entitled to derivative immunity under *Yearsley,* and that immunity extends to all of Plaintiffs' claims under *Thacker,* the Court should reconsider the JMOL Order and hold that Jacobs is entitled to immunity as a matter of law.

# CONCLUSION

The Court's decision on immunity after the Phase I trial turned on a view of the law the Supreme Court has now rejected. Under *Thacker*, Jacobs is immune and judgment should be entered in its favor.

Respectfully submitted,

**NEAL & HARWELL, PLC**
By: /s/ *James F. Sanders*
James F. Sanders (No. 005267)
jsanders@nealharwell.com
J. Isaac Sanders (No. 029372)
isanders@nealharwell.com
Marie T. Scott (No. 032771)
mscott@nealharwell.com
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573

**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous, Jr. (*pro hac vice*)
tboutrous@gibsondunn.com
Theane Evangelis (*pro hac vice*)
tevangelis@gibsondunn.com
Jeremy S. Smith (*pro hac vice*)
jssmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
*Attorneys for Defendant*
*Jacobs Engineering Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 4th day of June, 2020, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                                    /s/ *James F. Sanders*