| | |
|---|---|
| GREG ADKISSON, et al., ) | |
|    Plaintiffs, ) | |
| v. ) | No. 3:13-CV-00505-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|    Defendant. ) | *Lead case consolidated with* |
| _____ ) | |
| KEVIN THOMPSON, et al., ) | |
|    Plaintiffs, ) | |
| v. ) | No. 3:13-CV-00666-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|    Defendant. ) | |
| _____ ) | |
| JOE CUNNINGHAM, et al., ) | *as consolidated with* |
|    Plaintiffs, ) | |
| v. ) | No. 3:14-CV-00020-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|    Defendant. ) | |
| _____ ) | |
| BILL ROSE, ) | |
|    Plaintiff, ) | |
| v. ) | No. 3:15-CV-00017-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|    Defendant. ) | |
| _____ ) | |
| CRAIG WILKINSON, et al., ) | |
|    Plaintiffs, ) | |
| v. ) | No.: 3:15-CV-00274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|    Defendant. ) | |
| _____ ) | |
| ANGIE SHELTON, as wife and next of kin ) | |
| on behalf of Mike Shelton, et al., ) | |
|    Plaintiffs, ) | |
| v. ) | No.: 3:15-CV-00420-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|    Defendant. ) | |
| _____ ) | |
| JOHNNY CHURCH, ) | |
|    Plaintiff, ) | |
| v. ) | No.: 3:15-CV-00460-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|    Defendant. ) | |

| | |
|---|---|
| DONALD R. VANGUILDER, JR., ) | |
|     Plaintiff, ) | |
| v. ) | No. 3:15-CV-00462-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|     Defendant. ) | |
| _____ ) | |
| JUDY IVENS, as sister and next of kin, ) | |
| on behalf of JEAN NANCE, deceased, ) | |
|     Plaintiff, ) | |
| v. ) | No. 3:16-CV-00635-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|     Defendant. ) | |
| _____ ) | |
| PAUL RANDY FARROW, ) | |
|     Plaintiff, ) | |
| v. ) | No. 3:16-CV-00636-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|     Defendant. ) | |
| _____ ) | |

## **REPLY BRIEF IN SUPPORT OF JACOBS ENGINEERING GROUP INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

## TABLE OF CONTENTS

                                                                                                           **Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    A.      Plaintiffs Misconstrue Jacobs' Argument. ....................................................................... 2

    B.      Jacobs Is Entitled to Derivative Sovereign Immunity Under *Thacker* .............................. 3

        1.      *Thacker* Explicitly Rejected the Discretionary Function Test and, Under the New Test, TVA (and Thus Jacobs) Has Immunity. ............................................................................ 4

        2.      Jacobs Is Entitled to Derivative Immunity. ..................................................................... 5

    C.      Jacobs' Motion Is Properly Before the Court.................................................................. 8

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Meat Inst. v. Pridgeon*,
   724 F.2d 45 (6th Cir. 1984) ................................................................................................. 9

*Andersen Corp. v. Fiber Composites, LLC*,
   474 F.3d 1361 (Fed. Cir. 2007) ......................................................................................... 10

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988) ............................................................................................................ 3

*Campbell-Ewald Company v. Gomez*,
   136 S. Ct. 663 (2016) ................................................................................................ *passim*

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988) .......................................................................................................... 10

*Coll. Loan Corp. v. SLM Corp.*,
   396 F.3d 588 (4th Cir. 2005) ............................................................................................ 10

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
   888 F.3d 640 (4th Cir. 2018) .............................................................................................. 7

*D'Avanzo v. Copper Cellar Corp.*,
   No. 3:12-CV-655-TAV-HBG, 2014 WL 1608368 (E.D. Tenn. Apr. 22, 2014) ................. 5

*Ford v. Cty. of Grand Traverse*,
   535 F.3d 483 (6th Cir. 2008) .............................................................................................. 9

*Gadsden Indus. Park, LLC v. United States*,
   111 F. Supp. 3d 1218 (N.D. Ala. 2015) ............................................................................. 3

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
   527 F. Supp. 2d 1076 (N.D. Cal. 2007) ............................................................................. 9

*Kathrein v. City of Evanston, Ill.*,
   752 F.3d 680 (7th Cir. 2014) ............................................................................................ 10

*Key v. Rutherford*,
   645 F.2d 880 (10th Cir. 1981) .......................................................................................... 10

*Kusens v. Pascal Co.*,
   448 F.3d 349 (6th Cir. 2008) .............................................................................................. 9

*Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*,
    9 F.3d 422 (6th Cir. 1993) ..................................................................................................9

*NE Ohio Coal. for the Homeless v. Brunner*,
    652 F. Supp. 2d 871 (S.D. Ohio 2009) ...............................................................................9, 10

*New Mexico on behalf of New Mexico Env't Dep't v. U.S. Envtl. Prot. Agency*,
    310 F. Supp. 3d 1230 (D.N.M. 2018) ................................................................................2, 3

*Ratliff v. Wellington Exempted Vill. Sch. Bd. of Educ.*,
    820 F.2d 792 (6th Cir. 1987) ..............................................................................................10

*Richland-Lexington Airport Dist. v. Atlas Properties, Inc.*,
    854 F. Supp. 400 (D.S.C. 1994) ...........................................................................................3

*Swanson v. Summit Med. Grp., PLLC*,
    No. 3:14-CV-39-TAV-HBG, 2014 WL 2208948 (E.D. Tenn. May 28, 2014) .........................5

*Thacker v. Tenn. Valley Auth.*,
    773 F. App'x 598 (11th Cir. 2019) .......................................................................................4

*Thacker v. Tenn. Valley Authority*,
    139 S. Ct. 1435 (2019) ................................................................................................ *passim*

*The Heil Co. v. Evanston Ins. Co.*,
    No. 1:08-cv-244, 2014 WL 11395157 (E.D. Tenn. Mar. 21, 2014) .........................................9

*Yearsley v. W.A. Ross Const. Co.*,
    309 U.S. 18 (1940) ..................................................................................................... *passim*

**Rules**

E.D. Tenn. Local Rule 7.2 .............................................................................................................5

Fed. R. Civ. P. 50 ......................................................................................................................8, 9

# INTRODUCTION

The intervening law set forth in *Thacker v. Tennessee Valley Authority*, 139 S. Ct. 1435 (2019) has fundamentally changed the legal standard for Jacobs' right to derivative immunity. Jacobs is now entitled to judgment in its favor based on derivative immunity because (1) Jacobs did not violate "both federal law and the Government's explicit instructions," *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), and (2) the Tennessee Valley Authority ("TVA") would itself be immune under the new *Thacker* test.

In response, Plaintiffs' primary substantive argument is that Jacobs is improperly seeking "derivative government contractor immunity" "under the Comprehensive Environmental Response Compensation and Liability Act ('CERCLA')." *See* Dkt. 553 at 8. But as explained below, that is not and has never been what Jacobs is contending. Jacobs has derivative immunity based on TVA's immunity under *Thacker*—*not* under CERCLA.

Plaintiffs also attempt to evade the U.S. Supreme Court's decision in *Thacker* by asserting the "discretionary function immunity as an implied limitation on TVA's sue and be sued clause . . . can still be relevant." *Id*. at 9. Yet the Supreme Court said the exact opposite: the "discretionary function provision has no relevance" to TVA's immunity. *Thacker*, 139 S. Ct. at 1441.

Next, Plaintiffs argue that even if *Thacker* did change the relevant immunity analysis for TVA (as it did), it does not change this Court's analysis that Jacobs is not entitled to derivative immunity under *Yearsley v. W.A. Ross Construction Company*, 309 U.S. 18 (1940) and *Campbell-Ewald*. But it does, because this Court held that "the discretionary-function exception" "inform[ed] the scope of Jacobs's immunity under *Yearsley*." Dkt. 462 at 24 n.9; *id.* at 4. Because of the Supreme Court's unanimous and emphatic rejection of the discretionary-function exception, this Court should reexamine its determinations regarding both TVA's immunity and Jacobs'

1

derivative immunity. And Plaintiffs did not even attempt to rebut Jacobs' showing that this case meets the new standard adopted by *Thacker.*

Finally, Plaintiffs devote a large portion of their opposition to waiver and timeliness arguments based on the fact that Jacobs did not know in advance how the law of TVA's sovereign immunity would change under *Thacker*. But a subsequent change in controlling law is not a basis for waiver.

At bottom, Plaintiffs' opposition cannot obscure that *Thacker* radically changes the analysis here, and Jacobs is entitled to immunity under the new governing standard.

## ARGUMENT

Under the intervening controlling precedent of *Thacker*, Jacobs is entitled to immunity from Plaintiffs' suit—despite Plaintiffs' attempts to distort Jacobs' arguments. There is a two-step analysis for determining Jacobs' immunity: first, whether Jacobs is entitled to derivative immunity under *Yearsley* and *Campbell-Ewald*—*i.e.*, whether it is entitled to whatever immunity TVA may have; and second, whether TVA itself is entitled to immunity for the activities at issue. Jacobs meets both elements because Jacobs did not violate any federal law or TVA directive and Plaintiffs fail to rebut Jacobs' showing that TVA would be immune from suit under *Thacker*. Plaintiffs' arguments in response are meritless, as explained below.

### A. Plaintiffs Misconstrue Jacobs' Argument.

Plaintiffs' primary substantive argument is based on a false premise: that Jacobs is arguing it is entitled to immunity under CERCLA. Dkt. 553 at 11. Plaintiffs then point to three out-of-circuit district court cases that purport to establish and apply an inapplicable test to determine whether EPA's contractor performing a CERCLA remediation is entitled to EPA's sovereign immunity. *See New Mexico on behalf of New Mexico Env't Dep't v. U.S. Envtl. Prot. Agency*, 310

2

F. Supp. 3d 1230 (D.N.M. 2018); *Gadsden Indus. Park, LLC v. United States*, 111 F. Supp. 3d 1218 (N.D. Ala. 2015); *Richland-Lexington Airport Dist. v. Atlas Properties*, *Inc.*, 854 F. Supp. 400 (D.S.C. 1994). These courts adapted the Supreme Court's formulation of immunity for military procurement contracts in the products liability setting set forth in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

But Plaintiffs did not—and cannot—point to anything in Jacobs' brief that indicates it *is* seeking immunity under CERCLA or *Boyle*. The very first page of Jacobs' brief succinctly sets forth its argument: "Jacobs is entitled to derivative immunity under this new standard so long as (1) Jacobs did not violate 'federal law [or] the Government's explicit instructions' *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), and (2) TVA would be immune under the new *Thacker* test." Dkt. 546 at 6.

Jacobs did highlight TVA's role as lead federal agency to illustrate the governmental, rather than commercial, function TVA was exercising in performing the cleanup. *Id*. at 14-16. This was not some convoluted effort to invoke CERCLA, but a direct response to the first step under the new *Thacker* test: is "the conduct alleged to be negligent [] governmental"? *Thacker*, 139 S. Ct. at 1444. The conduct at issue here is governmental because—as Plaintiffs do not dispute, Dkt. 553 at 2—TVA was "performing the governmental function of 'lead agency' in charge of a large-scale environmental remediation," Dkt. 546 at 7.[1]

### B.   Jacobs Is Entitled to Derivative Sovereign Immunity Under *Thacker*.

Plaintiffs' other arguments fare no better. Plaintiffs cannot sidestep *Thacker*'s impact on this case by claiming (1) the discretionary-function test survived *Thacker*, or (2) the discretion-

---

[1] Even under the *Boyle* test, Jacobs would still be entitled to sovereign immunity because Jacobs "performed the clean-up according to the specifications issued by [TVA]." *Richland-Lexington Airport Dist.*, 854 F. Supp. at 423.

3

function test is still appropriate under the *Yearsley* analysis.

### 1. *Thacker* Explicitly Rejected the Discretionary Function Test and, Under the New Test, TVA (and Thus Jacobs) Has Immunity.

As Plaintiffs do not dispute, Jacobs' immunity rises and falls with TVA's immunity under *Thacker*. Nonetheless, Plaintiffs argue that, under *Thacker*, "discretionary function immunity as an implied limitation on TVA's sue and be sued clause . . . can still be relevant . . . after TVA shows that the conduct alleged to be negligent is governmental and not commercial in nature." Dkt. 553 at 9. In essence, Plaintiffs contend that the discretionary-function exception is a third hurdle TVA must pass to establish immunity. *See id.*

This appears nowhere in the Supreme Court's opinion and is contradicted by the Court's holding: "We granted certiorari to decide whether the waiver of sovereign immunity in TVA's sue-and-be-sued clause is subject to a discretionary function exception, of the kind in the FTCA . . . . **We hold it is not**." *Thacker*, 139 S. Ct. at 1440 (emphasis added). In the event any doubt remained, the Court explained that the "FTCA's discretionary function provision has ***no relevance*** to this case." *Id.* at 1441 (emphasis added). And not surprisingly, the Eleventh Circuit agreed on remand, holding that the "implied restriction" on TVA's immunity turned on the Supreme Court's two-part test, *not* the discretionary-function test. *Thacker v. Tenn. Valley Auth.*, 773 F. App'x 598, 598-99 (11th Cir. 2019). The days of analyzing TVA's immunity under the discretionary-function analysis are well and truly over.

Under the new governing test from *Thacker*, TVA has immunity so long as the "conduct alleged to be negligent is governmental" and that "prohibiting the 'type[] of suit [at issue] is necessary to avoid grave interference' with that function's performance." *Thacker*, 139 S. Ct. at 1444 (citation omitted). Jacobs has demonstrated that TVA, and derivatively Jacobs, would be immune from suit for the cleanup of the Site because it was performing a governmental function,

4

as illustrated by its role as lead agency under CERCLA, and suits like Plaintiffs' gravely interfere with that governmental function.

Plaintiffs make no effort to show that under *Thacker* TVA is not entitled to immunity. Rather, Plaintiffs purport to "reserve their arguments" on "whether TVA's coal ash cleanup would be immune from suit under *Thacker*." Dkt. 553 at 3. In dodging the *Thacker* analysis and declining to respond, Plaintiffs have waived their right to argue it. E.D. Tenn. Local Rule 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."); *D'Avanzo v. Copper Cellar Corp.*, No. 3:12-CV-655-TAV-HBG, 2014 WL 1608368, at *8 (E.D. Tenn. Apr. 22, 2014); *Swanson v. Summit Med. Grp., PLLC*, No. 3:14-CV-39-TAV-HBG, 2014 WL 2208948, at *4 (E.D. Tenn. May 28, 2014).

### 2. Jacobs Is Entitled to Derivative Immunity.

Given that Plaintiffs have made no attempt to show TVA is not entitled to immunity under *Thacker*, the only remaining issue is whether Jacobs is entitled to derivative immunity. Derivative immunity flows to a government contractor so long as it has not "exceeded [its] authority" and that authority was "validly conferred." *Yearsley*, 309 U.S. at 21. *Campbell-Ewald* recently clarified that this means that a contractor cannot violate "federal law and the Government's explicit instructions." *Campbell-Ewald*, 136 S. Ct. at 672. Jacobs did not violate any directive in either its contract with TVA or the Site Wide Health and Safety Plan ("SWSHP"), which provided broad guidelines but not directives.

Plaintiffs make two arguments to the contrary, neither of which has any legal or factual basis. First, Plaintiffs contend that *Thacker* does not address derivative immunity and thus this Court should not reexamine its analysis. Dkt. 553 at 8. While it is true that *Thacker* did not address derivative immunity, *Thacker does* fundamentally change this Court's derivative immunity

5

analysis, which rested on its holding that "the discretionary-function exception" "inform[ed] the scope of Jacobs's immunity under *Yearsley*." Dkt. 462 at 24 n.9; *id.* at 4.

Despite Jacobs raising this precise argument in its motion, Dkt. 546 at 13-14, Plaintiffs have no response. And there is none. Not only was the Court explicit about how it used the discretionary-function exception to "inform" its derivative immunity analysis (Dkt. 462 at 24 n.9; *id.* at 4), but the six theories of liability that it allowed to be presented to the jury are predicated on a discretionary-function analysis. Those six theories do not turn solely on whether Jacobs violated "both federal law and the Government's explicit instructions"—the test for discretionary immunity under *Campbell-Ewald*. *Campbell-Ewald*, 136 S. Ct. at 672. Rather, the Court held that even if the conduct did not violate an explicit instruction, Jacobs could still be liable if the conduct is "not susceptible to public-policy analysis" under the discretionary function test. Dkt. 462 at 25.

Take, for example, Plaintiffs' third theory of liability: that Jacobs "[f]ailed to comply with the provisions of the Safety and Health Plan with respect to voluntary use of dust masks." Dkt. 462 at 23-24. Neither the TVA contract nor the SWSHP required Jacobs to provide respirators to each worker who requested one. While, as the Court pointed out, the SWSHP "provided that '[r]espirator use is encouraged, even when exposures are below the exposure limit, to provide an additional level of comfort and protection for workers,'" *id*. at 29 (quoting Pls. Ex. 5f, at Att. C-2-1), that same document clarified that workers were only permitted to wear respirators voluntarily "with the approval of their Supervisor," Dkt. 11-3 at 96. The SWSHP went on to mandate that "[t]he Site HSE Supervisor and Supervisor will evaluate requests for voluntary respirator use to determine if the worker can perform the activities safety and respirator use will not in itself create a hazard. . . . A medical evaluation . . . will also be provided for all workers who are permitted to use respirators voluntarily, prior to their use of a respirator." *Id*.

6

Thus, even if Jacobs did "tak[e] dust masks away from employees who wore them," Dkt. 462 at 29, that did not violate "federal law and the Government's explicit instructions," *Campbell-Ewald Co.*, 136 S. Ct. at 672. Rather, the Court allowed the voluntary-use-of-dust-masks theory to go to the jury—and then survive Jacobs' post-trial motions—based on its belief that under the old law, this conduct was "not 'the kind that the discretionary function exception was designed to shield,' because it is not 'susceptible to policy analysis.'" Dkt. 462 at 27 (citation omitted). Now that the discretionary-function exception has "no relevance" to TVA's immunity, *Thacker*, 139 S. Ct. at 1441, the voluntary-use-of-dust-masks theory no longer has any validity in this case.

The same analysis could be performed for each of the other five specific acts the Court set forth in its summary judgment ruling and jury charge. And even if some of the theories could be tied to the "federal law and the Government's explicit instructions," *Campbell-Ewald Co.*, 136 S. Ct. at 672, it is impossible for anyone, aside from the Phase I jury, to know which theories the Phase I jury agreed with due to the verdict form, Dkt. 462 at 19. Simply put, *Thacker* upends the entire predicate for the Phase I jury verdict and requires judgment to be entered in Jacobs' favor (or at least a new trial).

Second, and contrary to Plaintiffs' assertions, Jacobs is not arguing that "derivative immunity should be analyzed, not under *Yearsley* but under *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)." Dkt. 553 at 9. The U.S. Supreme Court's decisions in *Yearsley* and *Campbell-Ewald* do not create different legal standards for derivative immunity. Rather, *Campbell-Ewald*, which was issued 75 years after *Yearsley,* "reaffirmed [*Yearsley*'s] test and expressly stated that as long as the authorization was validly conferred, there is no liability on the part of the contractor who simply performed as the Government directed." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646 (4th Cir. 2018) (quotations and citations omitted).

7

Plaintiffs cannot escape that the discretionary-function exception no longer plays any role in determining whether Jacobs is afforded derivate immunity, and under *Yearsley* and *Campbell-Ewald*, Jacobs is derivatively immune.

### C. Jacobs' Motion Is Properly Before the Court.

Plaintiffs also devote nearly half of their brief to raising various wavier arguments in an effort to avoid the merits. The crux of Plaintiffs' argument is that Jacobs cannot bring its motion under Federal Rule of Civil Procedure 50(a), Federal Rule of Civil Procedure 50(b), or a motion for reconsideration, because it did not raise its sovereign immunity arguments earlier. But Jacobs did raise the immunity issue previously, and in any event could not have known that the Supreme Court was going to transform the landscape for TVA's immunity and, therefore, for Jacobs' derivative immunity after the Phase I verdict. As explained previously and above, *Thacker* is an intervening change of law that impacts both the basis for TVA's sovereign immunity and this Court's assessment of Jacobs' derivative immunity.

Plaintiffs begin by incorrectly asserting that Jacobs must be moving for judgment as a matter of law under Rule 50(a), because Jacobs cites that rule in the legal section of its brief. Dkt. 553 at 3. But Jacobs cited Rule 50(a) for the simple reason that it provides the legal standard under which a renewed motion under Rule 50(b) may be brought. Nothing more; nothing less.

Nor is Jacobs' motion untimely, as Plaintiffs erroneously contend. Plaintiffs fail to point to any time limitations on Jacobs' ability to bring a motion to reconsider an interlocutory order. Even under Rule 50(b), the clock has not even begun to run because there has been no judgment in any of these cases—as Plaintiffs have previously conceded, Dkt. 467 at 15. Plaintiffs have no authority, and Jacobs is not aware of any, that would preclude Jacobs from asking the Court to consider an intervening change in law simply because the case happens to be between phases in a

multi-phase trial plan.

Plaintiffs further argue that, even if timely, Jacobs waived its right to argue sovereign immunity under *Thacker* in three ways. First, Plaintiffs wrongly assert that because Jacobs did not raise the argument in its Rule 50(a) motion, it is barred from raising it in a renewed Rule 50(b) motion.[2] However, in its previous Rule 50(a) motion, Jacobs argued that it was "immune from liability as to conduct that complied with the SWSHP," and that none of the alleged wrongdoing violated any of Jacobs' agreements with TVA. Dkt. 389 at 6; *id*. at 8 n.2. This was more than sufficient to preserve any argument based on sovereign immunity for a motion after the verdict. Courts take a "liberal view" of what is sufficient to preserve an issue for post-verdict resolution under Rule 50(b). *See, e.g.*, *Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422, 426 (6th Cir. 1993) (requiring that a party need only "alert the trial court to the need to treat [an] issue" to avoid waiving it); *Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th Cir. 2008).

Moreover, even if the Court were to hold that Jacobs did not adequately preserve the legal standard prior to trial in its Rule 50(a) motion, *Thacker*'s status as an intervening change of law excuses any alleged delay. *See Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 527 F. Supp. 2d 1076, 1081 (N.D. Cal. 2007). Plaintiffs' cases are not to the contrary. *See Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 493 (6th Cir. 2008); *The Heil Co. v. Evanston Ins. Co.*, No. 1:08-cv-244, 2014 WL 11395157, at *9-10 (E.D. Tenn. Mar. 21, 2014); *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984). In *Brunner*, for example, the Court found that an intervening case did not provide grounds for reconsideration when it (1) was not controlling, and (2) discussed different and inapplicable grounds for standing from which the plaintiffs were arguing. *NE Ohio*

---

[2] While Plaintiffs attempt to buttress their waiver assertions by framing Jacobs' argument as its entitlement to immunity under CERCLA—which Jacobs is not arguing—Jacobs' actual argument, that it is entitled to sovereign immunity under *Thacker*, is likewise preserved.

9

*Coal. for the Homeless v. Brunner*, 652 F. Supp. 2d 871, 880-81 (S.D. Ohio 2009). That is not the case here.

Second, Plaintiffs rely on the law of the case doctrine to preclude Jacobs from raising its sovereign immunity arguments now. However, regardless of whether the law of the case was properly invoked in the first instance, it has no application "when there has been an intervening change in the law underlying the decision." *See, e.g.*, *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 685 (7th Cir. 2014).

Finally, Plaintiffs argue that Jacobs did not object to the Court's jury instructions at the time they were issued and, accordingly, cannot do so post-verdict. Dkt. 553 at 6. But a party need not object to a jury instruction if, as was the case here, it already raised and lost the legal issue prior to the jury instruction. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 118-21 (1988); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1371 n. 2 (Fed. Cir. 2007); *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 600 n.10 (4th Cir. 2005). Even if waived, that procedural defect should be overcome when neither Jacobs nor this Court had "the benefit of the [*Thacker*] decision when [it] formulated [its] instructions." *Key v. Rutherford*, 645 F.2d 880, 883 (10th Cir. 1981). The Sixth Circuit recognized that a party may "challenge for the first time on appeal a jury instruction that was arguably correct when given but that is now clearly incorrect under a Supreme Court ruling issued during the pendency of the appeal." *Ratliff v. Wellington Exempted Vill. Sch. Bd. of Educ.*, 820 F.2d 792, 798 (6th Cir. 1987). That is true of *Thacker*.

## **CONCLUSION**

The Court's decision on immunity after the Phase I trial turned on a view of the law the Supreme Court has now rejected. Under *Thacker*, Jacobs is immune and judgment should be entered in its favor.

Respectfully submitted,

**NEAL & HARWELL, PLC**
By: /s/ *James F. Sanders*
James F. Sanders (No. 005267)
jsanders@nealharwell.com
J. Isaac Sanders (No. 029372)
isanders@nealharwell.com
Marie T. Scott (No. 032771)
mscott@nealharwell.com
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573

**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous, Jr. (*pro hac vice*)
tboutrous@gibsondunn.com
Theane Evangelis (*pro hac vice*)
tevangelis@gibsondunn.com
Peter Modlin (*pro hac vice*)
pmodlin@gibsondunn.com
Jeremy S. Smith (*pro hac vice*)
jssmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

**PAINE TARWATER BICKERS, LLP**
Dwight E. Tarwater
det@painetarwater.com
Catherine Williams Anglin
cwa@painetarwater.com
900. S. Gay Street, Suite 2200
Knoxville, TN 37902-1821
Telephone: (865) 525-0880
Facsimile: (865) 229-7441

*Attorneys for Defendant*
*Jacobs Engineering Group Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd day of July, 2020, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ *James F. Sanders*