UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GREG ADKISSON, et al.,
        Plaintiffs,
v.
JACOBS ENGINEERING GROUP, INC.,
        Defendant.

No.: 3:13-CV-505-TAV-HBG

*Lead Case Consolidated with*

KEVIN THOMPSON, et al.,
        Plaintiffs,
v.
JACOBS ENGINEERING GROUP, INC.,
        Defendant.

No.: 3:13-CV-666-TAV-HBG

as c*onsolidated with*

JOE CUNNINGHAM, et al.,
        Plaintiffs,
v.
JACOBS ENGINEERING GROUP, INC.,
        Defendant.

No.: 3:14-CV-20-TAV-HBG

BILL ROSE,
        Plaintiff,
v.
JACOBS ENGINEERING GROUP, INC.,
        Defendant.

No.: 3:15-CV-17-TAV-HBG

CRAIG WILKINSON, et al.,
        Plaintiffs,
v.
JACOBS ENGINEERING GROUP, INC.,
        Defendant.

No.: 3:15-CV-274-TAV-HBG

ANGIE SHELTON, as wife and next of
kin on behalf of Mike Shelton, et al.,
        Plaintiffs,
v.
JACOBS ENGINEERING GROUP, INC.,
        Defendant.

No.: 3:15-CV-420-TAV-HBG

JOHNNY CHURCH,                              )
                    Plaintiff,              )
v.                                          )        No.:   3:15-CV-460-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,             )
                    Defendant.              )
                                            )
_____         )
                                            )
DONALD R. VANGUILDER, JR.,                  )
                    Plaintiff,              )
v.                                          )        No.:   3:15-CV-462-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,             )
                    Defendant.              )
                                            )
_____         )
                                            )
JUDY IVENS, as sister and next of kin,      )
on behalf of JEAN NANCE, deceased,          )
                    Plaintiff,              )
v.                                          )        No.: 3:16-CV-635-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,             )
                    Defendant.              )
                                            )
_____         )
                                            )
PAUL RANDY FARROW,                          )
                    Plaintiff,              )
v.                                          )        No.: 3:16-CV-636-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,             )
                    Defendant.              )
                                            )
_____         )

## ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Compel Production of Documents [Doc. 683], filed on November 6, 2020. Defendant subsequently filed a Response [Doc. 701] in opposition, to which Plaintiffs filed a Reply [Doc. 706]. Additionally, the Court previously ordered Plaintiffs to produce the challenged documents for *in camera* inspection. [Doc. 710]. The Court has completed the *in camera* review of the challenged documents. Accordingly, for the

reasons set forth below, Plaintiffs' Motion to Compel [Doc. 683] will be **DENIED**.

## I.    POSITIONS OF THE PARTIES

Plaintiffs seek [Doc. 683] an order compelling the production of certain documents that Defendant Jacobs Engineering has withheld based upon various claims of privilege and work product protection.  Plaintiffs first review the procedural background of discovery, including Defendant's produced privilege logs and clawback notices, and assert that the requested discovery is necessary to conduct a Rule 30(b)(6) deposition of Defendant's corporate representative. Moreover, Plaintiffs claim that in reviewing the produced privilege logs and recent disclosures, "many entries—and corresponding privilege claims—lack legitimate bases for being shielded from discovery."  [*Id.* at 7].  First, Plaintiffs allege that the titles of certain authors and recipients of email conversations, such as the inclusion of information technology personnel, undermines Defendant's claims of attorney-client privilege.   Plaintiffs claim that several emails were forwarded to or sent from third parties, thus waiving any confidentiality when these emails were sent to third parties who do not share a common interest with Defendant.  Plaintiffs assert that certain communications were improperly withheld based upon attorney-client privilege when Defendant's in-house legal counsel is acting as a business advisor, rather than legal counsel.

Next, Plaintiffs also maintain that Defendant improperly asserts that the work product doctrine shields several documents that were to be "provided to [an] attorney for purposes of seeking legal advice regarding [the] pending lawsuit."  [*Id.* at 16]; *see* [Doc. 683-8].  Plaintiffs claim that this information gathered for attorneys is properly classified as fact work product, and that the work product protection should not apply.  Here, Plaintiffs allege that the fact work product is relevant to the current litigation, that they have a substantial need to access such information, and that they would be unable to obtain this information from any other source without material

3

hardship. Therefore, Plaintiffs request that the Court order the disclosure of these communications, "in full or partially redacted to exclude an attorney's mental impressions, opinions, conclusions, judgments, or legal theories." [Doc. 683 at 16].

Lastly, Plaintiffs claim that certain documents and communications including TVA were improperly withheld under the common-interest exception. Plaintiffs allege that Defendant has failed to meet its burden of establishing a common interest with TVA, as TVA is not a party to this litigation; the status of any indemnification between Defendant and TVA is unclear; and Defendant and TVA do not have identical or nearly identical legal interests. Plaintiffs maintain that "[e]ven if Jacobs' role at the Kingston Ash Recovery Site was as a contractor hired by TVA, merely sharing common goals *for the clean-up* are fundamentally different than sharing common legal interests with respect to this litigation." [*Id.* at 19].

Defendant responds [Doc. 701] that its privilege log fully complies with the minimal showing required under applicable Sixth Circuit law, as the log describes, where applicable, the author, recipient, date, subject matter, and basis for withholding the document at issue. Defendant proceeds to address the various categories of documents challenged by Plaintiffs, first addressing communications in which Defendant's counsel was allegedly acting as a business advisor. Here, Defendant claims that Plaintiffs merely speculate that Defendant's in-house counsel was acting in a business capacity and provides specific arguments for the subject of the communications at issue.

Defendant then claims that while Plaintiffs fail to identify specific documents which appear to not be directed to or shared with any attorneys, "[i]t is well established that a communication can be privileged even if it is not authored or received by an attorney." [*Id.* at 16]. Defendant proceeds to identify twenty-six documents that do not include an attorney, and details that "these documents either include advice from an attorney or information gathered to formulate legal

4

advice," or "reflect restate, or discuss the legal advice an attorney provided." [*Id.* at 16–17]. When addressing communications distributed to non-attorney recipients, Defendant asserts that the attorney-client privilege in a corporate context also extends to communications between attorneys and corporate employees when the communication was for the purposes of obtaining legal advice. Additionally, Defendant provides specific references to the documents at issue involving certain information technology personnel.

Defendant then addresses Plaintiffs' arguments regarding fact work product and claims that Plaintiffs have failed to meet their burden of showing a substantial need for this information, as well as that they would be unable to obtain it without undue hardship. Defendant asserts that Plaintiffs "offer *no* evidence whatsoever that they cannot obtain the equivalent materials elsewhere or even attempt to explain what they believe is critically missing" from the produced discovery. [*Id.* at 20]. Defendant then responds to Plaintiffs' claim that the common interest protection is inapplicable, asserting that the common interest was in anticipated litigation, that Defendant has previously produced a significant amount of discovery reflecting communications between TVA and Defendant, as well as that Plaintiffs know that the applicable contract between TVA and Defendant provides for indemnification.

Plaintiffs' subsequent Reply [Doc. 706] largely focuses on the procedural posture behind their requested Rule 30(b)(6) deposition, as well as the need for *in camera* inspection of the privileged documents, which the Court has already ordered

## II.    LEGAL STANDARD

"Where a party seeks to withhold otherwise discoverable information under a claim of privilege or the work-product doctrine, the withholding party must expressly assert the claim and 'describe the nature of the documents, communications, or tangible things not produced or

disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Ajose v. Interline Brands, Inc.*, No. 3:14-CV-1707, 2016 WL 6893866, at *1 (M.D. Tenn. Nov. 23, 2016) (quoting Fed. R. Civ. P. 26(b)(5)(A)).

 "In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims."[1] *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citing Fed. R. Evid. 501); *see, e.g.*, *Adkisson v. Jacobs Eng'g Grp., Inc.*, 342 F. Supp. 3d 791, 798 n.4 (E.D. Tenn. 2018) ("Because this action is before the Court based on diversity jurisdiction under 28 U.S.C. § 1332, the Court must apply the substantive law of the forum state—here, Tennessee.").

"The party asserting the privilege bears the burden of proving that the privilege is applicable." *Leazure v. Apria Healthcare Inc.*, No. 1:09-CV-224, 2010 WL 3397685, at *1 (E.D. Tenn. Aug. 26, 2010) (citing *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 616 (Tenn. Ct. App. 2006)); *see, e.g.*, *Ajose*, 2016 WL 6893866 at *1 ("The party withholding items under a claim of privilege or the work-product doctrine bears the burden of establishing the item should be withheld.") (citing *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); *Ross v. City of Memphis*, 423 F.3d 596, 606 (6th Cir. 2005)).

### A.    Attorney-Client Privilege

As stated above, Rule 501 of the Federal Rules of Evidence provides that in diversity cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of

---

[1] The Court notes that Plaintiffs and Defendant have largely cited federal common law on the applicable privilege issues, with the exception of the common interest exception. While the Court has attempted to review Tennessee law and precedent where applicable, "the federal common law standards appear to be in line with the Tennessee privilege." *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2015 WL 13729725, at *2 n.2 (M.D. Tenn. Dec. 1, 2015)

6

decision." "As well as being recognized at common law, the attorney-client privilege is also codified in Tennessee." *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2015 WL 13729725, at *2 (M.D. Tenn. Dec. 1, 2015) (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)). The applicable state statute provides that:

> No attorney, solicitor or counselor shall be permitted, in giving testimony against a client or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person during the pendency of the suit, before or afterward, to the person's injury.

Tenn. Code Ann. § 23-3-105. "Although T.C.A. § 23-3-105 refers to communications made to an attorney by a client, communications made by a client to an attorney are privileged to the extent those communications are based upon a client's confidential communication or would reveal the nature of a confidential communication if disclosed." *Terrell v. Memphis Zoo, Inc.*, No. 17-CV-2928-JPM-TMP, 2018 WL 3245003, at *2 (W.D. Tenn. July 3, 2018) (citing *State v. Buford*, 216 S.W.3d 323, 326 (Tenn. 2007)). Additionally, this privilege is narrowly construed, as Tennessee law "favors making all relevant evidence available to the trier of fact." *Boyd*, 88 S.W.3d at 212 (internal citation omitted).

"The [attorney-client] privilege is not absolute nor does it encompass all communications between the client and the attorney." *Bryan v. State*, 848 S.W.2d 82, 80 (Tenn. Crim. App. 1992). The party asserting the privilege bears the burden of showing that the purported privileged communications "were made in the confidence of the attorney-client relationship." *Id.* The party asserting the privilege must establish that:

1. The asserted holder of the privilege is or sought to become a client;

2. The person to whom the communication was made is a member of the bar of a court, or his subordinate and in connection with this communication is acting as a lawyer;

3. The communication relates to a fact of which the attorney was informed by his

client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding and not for the purpose of committing a crime or tort; and

4. The privilege has been claimed and not waived by the client.

*Terrell*, 2018 WL 3245003 at *3 (internal citations omitted); *see also Boyd*, 88 S.W.3d at 213 ("The communications must involve the subject matter of the representation and must be made with the intention that they will be kept confidential.").

## B.    Work-Product Doctrine

The work-product doctrine "is distinct from and broader than the attorney client privilege." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 304 (6th Cir. 2002). Work-product extends beyond confidential communications between the attorney and client to "any document prepared in anticipation of litigation by or for the attorney." *Id.* The doctrine is codified in Federal Rule of Civil Procedure 26(b)(3)(A), which states that a party may not ordinarily discover—save for a showing of "undue hardship"—documents or tangible things that are prepared in anticipation of litigation . . . by or for another party or its representative."

There are two types of work product. *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981). The first type, opinion work product, involves an "attorney's mental impressions, opinions, conclusions, judgments, or legal theories." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). The Sixth Circuit has found that "absent waiver, a party may not obtain the 'opinion' work product of his adversary." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 304–05 (quoting *In re Antitrust Grand Jury*, 805 F.2d at 163–64). "Fact" work product—which reflects information received by the lawyer—receives less protection than "opinion" work product. *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 892 (M.D. Tenn. 2010).

In determining whether a document is protected by the work product doctrine because it

8

was "in anticipation of litigation" or for trial the Court must consider: "(1) whether that document was prepared because of a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co*., 578 F.3d 432, 439 (6th Cir. 2009) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)).

Documents that are protected as work product may still be discoverable if the requesting party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A). "While 'fact' work product may be discoverable upon such a showing, 'opinion' work product is entitled to near absolute protection against disclosure." *Gard v. Grand River Rubber & Plastics Co.*, No. 1:20-CV-125, 2021 WL 75655, at *11 (N.D. Ohio Jan. 8, 2021) (citing *In re Columbia/HCA Healthcare Corp. Billing Practices Litig*., 293 F.3d 289, 294 (6th Cir. 2002)).

## III. ANALYSIS

### A. Communications in which Defendant's In-House Legal Counsel is Allegedly Acting as a Business Advisor

Plaintiffs first argue that Defendant improperly withheld several communications, including Entries 19, 21, 23, 34, 43, 44, 45, and 77 in the Disputed Privilege Log [Doc. 683-8], where Defendant's in-house counsel was acting as a business advisor, rather than legal counsel. Plaintiffs submit that "[a]lthough in-house counsel for Jacobs was copied on the communications, these documents do not appear to be communications in which in-house counsel is *rendering legal advice*." [Doc. 683 at 12–13].

First, the Court notes that Plaintiffs largely failed to cite applicate Tennessee state law, but that "the federal common law standards appear to be in line with the Tennessee privilege." *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2015 WL 13729725, at *2 n.2 (M.D.

9

Tenn. Dec. 1, 2015) (noting "[t]he parties have not cited, and the Magistrate Judge has not found, Tennessee precedent" on the issue of communications with in-house counsel claimed to be privileged).

"It is now generally accepted that communications between an attorney and client of primarily a business nature are outside the scope of the privilege." *Leazure v. Apria Healthcare Inc.*, No. 1:09-CV-224, 2010 WL 3397685, at *2 (E.D. Tenn. Aug. 26, 2010). In *Leazure*, this Court found that several cases nationwide "which focus on the primary nature of the communications between client and attorney to determine if the communications are privileged comports seamlessly with the purpose of the attorney-client privilege under Tennessee law: 'the purpose of the privilege is to shelter the confidences a client shares with his or her attorney *when seeking legal advice,* in the interest of protecting a relationship that is a mainstay of our system of justice.'" *Id.* at *3 (quoting *Bryan v. State*, 848 S.W.2d 72, 79 (Tenn. Crim. App. 1992) (emphasis added)). "Copying an attorney on an e-mail is not in itself sufficient to make the communication privileged." *EPAC Techs., Inc.*, 2015 WL 13729725 at *2 (M.D. Tenn. Dec. 1, 2015) (citing *Leazure*, 2010 WL 3397685 at *4 (E.D. Tenn. Aug. 26, 2010) (requiring production of e-mails on which in-house counsel was copied when the communication was not made for the purpose of obtaining legal advice)).

The Court has reviewed the challenged documents and has determined that these communications qualify as privileged pursuant to the attorney-client privilege. After an *in camera* inspection of Entries 19, 21, 23, 34, 43, 45 and 77, the Court agrees with Defendant's depiction of the documents as set forth in its Response [Doc. 701 at 14–15]. Defendant's in-house counsel, Gary Draper, was the recipient in email chains reflecting his legal advice about potential litigation and the investigation at the Kingston site in Entries 19 and 21. Moreover, Defendant correctly

states that Mr. Draper was the sender on emails listed in Entries 23 and 34, and the Court finds that he was acting in a legal capacity. With respect to Entries, 43, 45, and 77, the Court agrees with Defendant that Mr. Draper was either the recipient of information provided at his request regarding pending litigation, the solicitation of additional information for legal analysis, or the discussion of legal advice. Although not reviewed by Defendant, the Court finds that Entry 44 also includes the solicitation of information to the LaCroix Litigation. Lastly, although Entry 34 relates to a provision in a contract, the Court finds that it entails legal review, rather than negotiation. *Cf. Georgia Pacific Corp. v. GAF Roofing Mfg. Corp.,* No. 93-CIV-5125-RPP, 1996 WL 29392, at *3–4 (S.D.N.Y. Jan. 25, 1996) (holding that in-house counsel who acted as negotiator as to certain provisions of a contract between two corporations was acting in a business capacity thereby rendering the attorney-client privilege inapplicable), *cited in Leazure*, 2010 WL 3895727 at *1.

Ultimately, the Court finds that Mr. Draper was acting in a legal capacity and the communications at issue were made for the purpose of obtaining legal advice. "Communications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services." *EPAC Techs., Inc.*, 2015 WL 13729725 at *2 (quoting *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006)). Defendant has also included that affidavit of Gary Draper, stating that the documents found at these entries "all reflect communications to or from [him] in [his] legal capacity." [Doc. 701-6 at ¶ 5]. After the Court's review, Defendant's representations regarding Entries 19, 21, 23, 34, 43, 45 and 77 were accurate. Additionally, the Court finds that Entry 44 is also properly withheld as privileged. *See, e.g.*, *ePlus Inc. v. Lawson Software, Inc.*, 3:09-CV-620, 2012 WL 6562735, at *7–8 (E.D. Va. Dec. 14, 2012) (holding, after an *in camera* review, that certain "communications

11

between non-attorneys reflecting legal advice" were privileged, where attorneys were carbon copied on the communications).

### B.       Communications Without Attorneys

Plaintiffs also challenge several documents "withheld under the auspices of 'attorney-client communications' and, at times, 'work product,' despite the fact that *none* of those email conversations appear to be directed to or shared with any attorneys." [Doc. 683 at 13]. Defendant correctly states that Plaintiffs do not identify the specific entries listed in the Privilege Log under this category but proceed to list twenty-six such documents. Additionally, Defendant maintains that these withheld documents "either reflect the client's communications to counsel or the client's understanding of or advice of counsel." [Doc. 701 at 16].

Again, the Court notes that "[c]ommunications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services." *EPAC Techs., Inc.*, 2015 WL 13729725 at *2 (quoting *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006)). "In the corporate context, the attorney-client privilege may extend to communications between employees that convey legal advice given by an attorney to the corporation." *Ajose v. Interline Brands, Inc.*, No. 3:14-CV-1707, 2016 WL 6893866, at *8 (M.D. Tenn. Nov. 23, 2016) (citing *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219 (W.D. Ky. 2006)); *see, e.g.*, *McCall v. Procter & Gamble Co.*, No. 1:17-CV-406, 2019 WL 3997375, at *4 (S.D. Ohio Aug. 22, 2019) ("In the corporate context, the attorney-client privilege extends to communications, between non-attorney employees, made to obtain or relay legal advice.") (collecting cases). "[W]hile it is possible that communications between non-legal individuals may be privileged, the withholding party must identify through a privilege log or through other means why the communication is privileged." *Ajose*, 2016 WL 6893866, at *8 (citing *Sid Mike 99, L.L.C.*

12

*v. Suntrust Bank*, No. 2:07-CV-02453-STADKV, 2009 WL 3255209, at \*5 (W.D. Tenn. Oct. 6, 2009), *aff'd in part*, 2010 WL 11493194 (W.D. Tenn. Jan. 14, 2010)).

The Court concludes, based on its review of the challenged documents that do not include an attorney, that these entries were properly withheld as privileged. *See Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at \*7 (S.D. Ohio Nov. 13, 2012) ("Courts have extended the protection outlined in *Upjohn* to communications between non-attorney corporate employees where the communications were made for purposes of securing legal advice from counsel.") (collecting cases). The Court finds that Defendant's representations were accurate regarding Entries 5, 10, 20, 25, 29, 31, 37, 39, 50, and 82, as these withheld documents include either legal advice or the gathering of necessary information to obtain legal advice. Similarly, Entries 15, 16, 32, 33, 61, and 86–93 restate or discuss provided legal advice, including relating to pending litigation. *See, e.g.*, *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2015 WL 13729725, at \*3 (M.D. Tenn. Dec. 1, 2015) (finding "[t]hese entries are privileged" where corporate "employees were tasked with providing [in-house counsel] with information about the EPAC contract so that [he] may render a legal opinion" or where they "reflect legal advice received from [in-house counsel] with regard to the attached EPAC agreement materials").

Defendant, however, claims that Entries 35, 78, and 84 were either withheld because they involve the "negotiation of provisions in Jacobs' contract with a client (No. 35)" or were redacted "because they involve 'in-house counsel providing legal advice with respect to the negotiation of a provision in a contract (Nos. 78 and 84).'" [Doc. 701 at 17]. "Documents created for an ordinary business purpose by an attorney functioning as a business advisor will not be considered as having been created in anticipation of litigation, even if one could foresee that the document would become relevant if litigation were eventually commenced." *Leazure v. Apria Healthcare Inc.*, No.

13

1:09-CV-224, 2010 WL 3895727, at *4 (E.D. Tenn. Sept. 30, 2010); *see also Georgia Pacific Corp. v. GAF Roofing Mfg. Corp.,* No. 93-CIV-5125-RPP, 1996 WL 29392, at *3–4 (S.D.N.Y. Jan. 25, 1996) (holding that in-house counsel who acted as negotiator as to certain provisions of a contract between two corporations was acting in a business capacity thereby rendering the attorney-client privilege inapplicable), *cited in Leazure*, 2010 WL 3895727 at *1.

First, the Court finds that Documents 78 and 84 were properly withheld due to Defendant's in-house counsel providing legal advice regarding the negotiation of certain contract provisions. Document 84 reflects an email from Steve Richardson, Program Manager, to Nancy Walker, consisting of an "email chain regarding attorney's advice regarding the negotiation of certain provisions in a TVA contract with Jacobs." *See* [Doc. 683-8 at 7]. Defendant also correctly states that Mr. Draper sent earlier messages on the email chain. Similarly, Document 78 includes a redacted email chain from John Moebes, Program Manager, to Edward Scott, Project Controls Manager, as well as Jack Howard, Engineering Manager/Program Manager for the Kingston Recovery Project, "involving in-house counsel providing legal advice with respect to the negotiation of a provision in a contract." *See* [Doc. 683-10 at 6]. Additionally, Entry 35 consists of an email chain between Susan Bilhorn and Sean Healey, HSE Manager – Federal Operations and Corporate Industrial Hygiene Manager, reflecting Mr. Draper's legal advice regarding the negotiation of provisions in Defendant's contract with a client.

The included affidavit of Gary Draper also states that he advised several employees, including Sean Healey, Steve Hodges, John Moebes, Ira Nadelman, Steve Richardson, Fed Stuart, and Nancy Walker "on legal issues attendant to their contractual negotiations with TVA related to the Kingston project." [Doc. 701-6 at ¶ 4]; *see Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 215 n. 18 (Tenn. Ct. App. 2002) ("An affidavit of an attorney is an appropriate way to provide the

14

evidence needed to support a common interest privilege claim. Lawyers, as officers of the court, are held to the utmost good faith in the discharge of their duties. *White v. McBride,* 937 S.W.2d 796, 802 (Tenn. 1996). Accordingly, the courts accept affidavits from lawyers as sufficient to invoke attorney-client privilege and the work product doctrine.").

Although these withheld/redacted communications involved contract provisions, they included legal advice with respect to the certain provisions. *See, e.g.*, *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2015 WL 13729725, at *3 (M.D. Tenn. Dec. 1, 2015) ("Although the drafter of this particular version of the draft termination letter is not identified, the creation of the document was overseen by [in-house counsel] and the document was repeatedly submitted to him for legal advice. Either this draft was created by [in-house counsel] or submitted to [him] for advice."). Therefore, after *in camera* review, the Court finds that these Entries were properly withheld or redacted as privileged.

### C.    Communications Distributed to Non-Attorney Recipients

Plaintiffs contend that for certain withheld documents, including Entries 12, 55, and 76, the "attorney-client privilege may have been waived through disclosure to non-attorney third parties," such as Defendant's information technology personnel.    [Doc. 683 at 14].    The confidentiality of communications between an attorney and a client "is destroyed when those communications take place in the presence of a third party." *State v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d 602, 616 (Tenn. Ct. App. 2006); *see, e.g.*, *MAKS, Inc. v. EOD Tech., Inc.*, No. 3:10-CV-443, 2012 WL 3443730, at *2 (E.D. Tenn. Aug. 15, 2012).

After review, the Court finds that challenged Entries are properly withheld under the attorney-client privilege.  "In *Upjohn v. United States*, 449 U.S. 383, 394 (1981), the Supreme Court held that the privilege applies to communications by any corporate employee regardless of

position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, No. 10-13181, 2011 WL 13217827, at *2 (E.D. Mich. Oct. 13, 2011). Plaintiffs cannot point to, and the Court's research did not discover, any waiver of privileged information as a result of communications with a company's information technology personnel in similar factual circumstances.

Moreover, Defendant correctly details how Entries 12 and 55 were communications sent by Mr. Draper to corporate employees, including, information technology personnel, comprising of legal advice related to a litigation hold in the pending LaCroix litigation. *See, e.g.*, *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2015 WL 13729725, at *6 (M.D. Tenn. Dec. 1, 2015) ("Generally, litigation holds letters are privileged and are not discoverable."). Similarly, Entry 76 includes redacted communications to various individuals, including information technology personnel, regarding discovery requests in ongoing litigation. In his Affidavit, Mr. Draper states that he "sent the emails found on Jacobs' Privilege Log at Reference Nos. 12, 55, and 76 to effectuate [his] legal advice related to litigation holds and document requests," as he "needed the assistance of Jacobs' IT professionals in order to ensure proper compliance with the litigation holds" previously issued. [Doc. 701-6 at ¶ 6].

Plaintiffs also claim that they "are unable to determine the roles of several individuals on the distribution list for entries in the Disputed Privilege Log," such as the recipients of Entry 32. [Doc. 683 at 14]. However, Defendant asserts that it produced a privilege log legend identifying the role of nearly every individual listed [Doc. 683-10] and have since produced a supplemental privilege log legend [Doc. 683-11], detailing the specific individuals listed in Entry 32. Therefore,

the Court will decline to order Defendant to produce further information on the identities of each individual on the distribution list.

### D.  Fact Work Product

Plaintiffs claim that Defendant improperly asserts that the work product doctrine shields several documents.  Plaintiffs contend that "[f]or several communications in the Privilege Log, Jacobs stated that information was gathered to be 'provided to attorney for purposes of seeking legal advice regarding pending lawsuit.'"  [Doc. 683 at 16].   However, Plaintiff allege that while "the information gathered for attorneys may be categorized as 'fact work product,'" Plaintiffs have a substantial need to access this information and would be unable to obtain it without material hardship.  [*Id.*].  Therefore, Plaintiffs seek for the Court to order Defendant to produce the Disputed Privilege Log B communications, "in full or partially redacted to exclude an attorney's mental impressions, opinions, conclusions, judgments, or legal theories."  [*Id.*].

Defendant responds that Plaintiffs have failed to meet their burden that they would be unable to obtain the substantial equivalent of the materials without undue hardship, as "[t]hey offer *no* evidence whatsoever that they cannot obtain the equivalent materials elsewhere or even attempt to explain what they believe is critically missing from the hundreds of thousands of pages previously produced, as well as deposition and trial testimony."  [Doc. 701 at 20].

First, Plaintiffs do not dispute that the withheld documents constitute fact work product, and Defendant does not argue that the entries are opinion work product.  Therefore, the question before the Court at this time is whether Plaintiffs have established that they have a substantial need for such material and whether they would be unable to obtain the substantial equivalent without undue hardship.

As stated above, Federal Rule of Civil Procedure 26(b) states that work product documents

17

may be discovered if "they are otherwise discoverable under Rule 26(b)(1)" and "the party [requesting discovery] shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii). "A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared in 'anticipation of litigation.'" *United States v. Roxworthy,* 457 F.3d 590, 593 (6th Cir. 2006) (internal citations omitted). Once this burden is met, the burden then shifts to the requesting party to show substantial need and undue hardship. *Biegas v. Quickway Carriers, Inc.,* 573 F.3d 365, 382 (6th Cir. 2009) (citing *In re Powerhouse Licensing, LLC,* 441 F.3d 467, 473 (6th Cir. 2006)). "This test generally requires a balancing of the relative importance of the information to the party's case against the party's ability to obtain the information by other means." *U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 WL 2190747, at *7 (E.D. Mich. June 14, 2012) (citing *Stampley v. State Farm Fire & Casualty Co.*, 23 F. App'x 467, 471 (6th Cir. 2001)). However, "as a general rule, inconvenience and expense do not constitute undue hardship." *Id.*

Here, Plaintiffs have failed to make a showing of substantial need and undue burden. Defendant correctly states that Plaintiffs do not provide any support for their argument that they cannot obtain the equivalent materials elsewhere. Rather, Plaintiffs appear to base their arguments on relevance, by claiming that the "'fact work product' is directly relevant to the coal ash disaster at Kingston, Jacobs' knowledge of the risks Plaintiffs faced, and its knowledge of the circumstances that resulted in the injuries that are the subject of this litigation." [Doc. 683 at 16]. Plaintiffs' only specific argument, with respect to Entry 10, consists of the claim that no attorney was included on the communication, and that the document would be "indicative of [Defendant's] knowledge in March 2011." [*Id.* at 17]. Plaintiffs then make the unsupported allegation that they

"are unlikely to be able to obtain this information by any other reasonable means."  [*Id.*].

Ultimately, there has been no showing that Plaintiffs have a "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  Therefore, the Court will decline to order the production of the fact work product withheld in the Disputed Privilege Log B.

### E.    Common Interest

Plaintiffs assert that Defendant has improperly claimed the common interest exception with TVA to withhold several documents from production.  Plaintiffs maintain that Defendant and TVA are not represented by a single attorney and do not share a common defense.  Additionally, Plaintiffs assert that Defendant does not have a common interest with TVA because TVA "a quasi-governmental entity, is not a party in this litigation," and "it remains unclear whether TVA has agreed to indemnify [Defendant], or has refused to do so."  [Doc. 683 at 18].  Plaintiffs state that "[e]ven if Jacobs' role at the Kingston Ash Recovery Site was a contractor hired by TVA, merely sharing common goals *for the clean-up* are fundamentally different than sharing common legal interests with respect to this litigation."  [*Id.* at 18–19].

Defendant responds that "[t]he documents at issue here date back to the project and relate to potential legal claims arising from workplace incidents," as "[f]or any accidents or workplace injuries at the Site, both TVA, as the site owner, and Jacobs, as TVA's contractor assisting in the management of the cleanup efforts at safety, had a common interest in learning the facts and mitigating any potential exposure for injuries on the cleanup of the site."  [Doc. 701 at 22]. Defendant further maintains that it has produced hundreds of documents reflecting its communications with TVA, as well as that it has previously informed Plaintiffs that the contract with TVA provides for indemnification.

19

The "common interest privilege . . . extends the scope of the attorney-client privilege by providing an exception to the general rule that communications made in the presence of or shared with third parties are not protected by the attorney-client privilege." *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 213–14 (Tenn. Ct. App. 2002). "In Tennessee, the proponent of the common interest privilege has the burden of establishing the necessary elements." *Vanderbilt Univ. v. Scholastic, Inc.*, No. 3:18-CV-00046, 2019 WL 9904449, at *11 (M.D. Tenn. Nov. 27, 2019) (citing *Boyd*, 88 S.W.3d at 214). The proponent must demonstrate:

> (1) that the otherwise privileged information was disclosed due to actual or anticipated litigation;
>
> (2) that the disclosure was made for the purpose of furthering a common interest in the actual or anticipated litigation;
>
> (3) that the disclosure was made in a manner not inconsistent with maintaining its confidentiality against adverse parties; and
>
> (4) that the person disclosing the information has not otherwise waived the attorney-client privilege for the disclosed information.

*Smedley v. Lambert*, No. 3:12-cv-003, 2013 WL 1333320, at *2–3 (M.D. Tenn. Mar. 29, 2013) (citing *Boyd*, 88 S.W. 3d at 214–15).

Here, after *in camera* review, the Court finds that Defendant has met its burden to establish the necessary elements for the common interest exception to apply with respect to the communications at issue with TVA. "[W]hen a party invokes the common interest privilege, the court must focus on the circumstances surrounding the disclosure of the communications or documents rather than on when communications or documents were generated." *Boyd*, 88 S.W.3d at 215. Defendant has demonstrated that the communications at issue were "made for the common purpose of furthering a common interest in . . . anticipated litigation." *Id.* Defendant has detailed the common interest relating to potential legal claims and mitigating any potential legal exposure arising from cleanup efforts from the Kingston site. "Although originally limited to cases

20

involving actual co-defendants, the courts now routinely apply the common interest privilege to potential co-defendants . . . and others who have a community of interest in the subject matter of the communications." *Id.* at 214 (internal citations omitted). After the review of the communications at issue, the Court also does not find that they were made in a manner inconsistent with maintaining confidentiality or were thus otherwise waived.

Therefore, the Court will also decline to order the production of the withheld documents involving communications with TVA, finding that Defendant has met its burden of demonstrating the applicability of the common interest exception.

### F. Remaining Discovery Issues

While reviewing the relevant discovery history, Plaintiffs also challenge Defendant's "letter claiming that [Defendant's predecessor counsel during discovery of the Phase I trial] had inadvertently disclosed an additional set of approximately fifteen (15) privileged documents, which were originally produced in 2017." [Doc. 683 at 5]; *see* [Doc. 683-12]. Plaintiffs disputed that the disclosure of these materials was inadvertent, and "thus Plaintiffs' counsel was not obligated under the operative protective order to destroy or return the documents without Jacobs first making a threshold showing of privilege." [Doc. 683 at 5]. Plaintiffs state that Defendant subsequently asserted that Plaintiffs' counsel failed to comply with the "October 9, 2020 Clawback Notice," as well as "asserting that Plaintiffs' counsel had violated Federal Rule of Civil Procedure 26(b) and Rule 4.4(b) of the Tennessee Rules of Professional Conduct by reviewing documents produced in 2017 that are only now, over three years later, being claimed as privileged." [*Id.* at 6]; *see* [Doc. 683-15].

Defendant claims that "Plaintiffs take issue with, but do not seek affirmative relief regarding: (1) Jacobs' August 20 and October 9 claw back notices; (2) redactions applied to

documents produced pursuant to a subpoena issued to Poinciana Willis; and (3) documents withheld as privileged for which TVA's contract counsel is listed as an email recipient." [Doc. 701 at 7]. Defendant also provides specific arguments for these respective arguments.

Ultimately, the Court finds that these issues are not properly before the Court at this time, as there is no request for sanctions or a protective order. Neither Plaintiffs or Defendant provide support for any additional requested relief, and thus the Court will decline to issue any ruling with respect to the October 9, 2020 Clawback Notice or other discovery issues for which the parties did not seek affirmative relief.

IV.    CONCLUSION

Accordingly, for the reasons set forth above, Plaintiffs' Motion to Compel Production of Documents [**Doc. 683**] is **DENIED**.

**IT IS SO ORDERED**.

ENTER:

H. Bruce Guyton
United States Magistrate Judge