| | | |
|---|---|---|
| GREG ADKISSON, ET AL., | ) | |
|     Plaintiffs, | ) | No. 3:13-CV-505-TAV-HBG |
| v. | ) | |
| JACOBS ENGINEERING GROUP, INC., | ) | *Lead case consolidated with* |
|     Defendant. | ) | |
| KEVIN THOMPSON, ET AL., | ) | |
|     Plaintiffs, | ) | No. 3:13-CV-666-TAV-HBG |
| v. | ) | |
| JACOBS ENGINEERING GROUP, INC., | ) | *as consolidated with* |
|     Defendant. | ) | |
| JOE CUNNINGHAM, ET AL., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:14-CV-20-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| BILL ROSE, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. 3:15-CV-17-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| CRAIG WILKINSON, ET AL., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. 3:15-CV-274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| ANGIE SHELTON, as wife and next of kin on behalf of Mike Shelton, et al., | ) ) | |
|     Plaintiffs, | ) | No. 3:15-CV-420-TAV-HBG |
| v. | ) | |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| JOHNNY CHURCH, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. 3:15-CV-460-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |

1

| | |
|---|---|
| DONALD R. VANGILDER, JR., ) | |
|     Plaintiff, ) | |
| v. ) | No. 3:15-CV-462-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|     Defendant. ) | |
| | |
| JUDY IVENS, as sister and next of kin, ) | |
| on behalf of JEAN NANCE, deceased, ) | |
|     Plaintiff, ) | |
| v. ) | No. 3:16-CV-635-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., ) | |
|     Defendant. ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO THE TENNESSEE SILICA CLAIMS PRIORITIES ACT**

Come Plaintiffs, by and through counsel, and hereby respond to Defendant Jacobs Engineering Group, Inc.'s ("Jacobs") supplemental brief (Doc. 780) in support of its Motion for Summary Judgment Pursuant to the Tennessee Silica Claims Priorities Act. Jacobs filed its supplemental brief on August 19, 2021, claiming that recent deposition testimony from one of Plaintiffs' experts—Elizabeth Ward, PhD.— "confirms that Plaintiffs have brought 'silica claims,' and are therefore subject to the requirements of Tennessee's Silica Claims Priorities Act ("TSCPA")." This is demonstrably false. To support its specious claim, Jacobs has presented the Court with an absurd mischaracterization of Dr. Ward's testimony, cherry picking select statements and citing them out of context while completely ignoring (and failing to cite for the Court) the considerable testimony from Dr. Ward directly contradicting Jacobs' position.

Jacobs makes much of the fact that Dr. Ward acknowledged in her deposition, as she did in her Rule 26 reports, that a large percentage of coal fly ash is "amorphous silica" and "crystalline silica" and thus that some of the fine particles of coal fly ash (i.e. PM 2.5) that caused many of the Plaintiffs injuries may have been silica particles. Jacobs insists that this confirms that Plaintiffs are

2

alleging injuries due to silica exposure. However, a simple, more complete reading of Dr. Ward's testimony on the topic belies this assertion.

Though acknowledging that some of the fine particulates in the Kingston fly ash may have been silica particles, as well as heavy metals and radionuclides, Dr. Ward made clear that PM 2.5 is harmful because of its small particle size, not its chemical composition.

> Q. So if I understand you correctly, the problem with small particulates, being 2.5, is the size of the particles, right? Not so much what the particles are made of.
>
> A. Yes. The medical – you know the scientific studies of PM 2.5 generally demonstrate that particles of that size cause an array of health effects that are . . . independent of the exact composition of that material. . . .

Ex. 1 at 93. Dr. Ward further testified as follows:

> Q. So I want to get an understanding from you, what is it about PM 2.5 that is harmful to the body?
>
> A. Well, the essence of my opinion and also Dr. Rajagopalan's opinion, who is really one of the . . . preeminent experts in the world on air pollution and health effects is that it's really the size of the PM 2.5 and not the composition of PM 2.5 that represents the important health hazard related to inhalation of these respirable particles. So these respirable particles are hazardous regardless of their composition.
>
> Q. So even if coal ash contained a number of other toxins beyond silica or arsenic or the other things we've identified, would it be fair to say it's harmful to humans irrespective of that chemical composition? Is that what you are saying, Doctor [Ward]?
>
> A. That is exactly what I am saying, that all of the evidence points to the fact that it's the fact that these very small particles can get to the alveolar regions of the lung and get to other regions of the body that is causing the demonstrated health effects that we see in epidemiological studies.

Ex. 1 at 275.

As this testimony makes clear, Dr. Ward in no way indicated that Plaintiffs' injuries were caused by exposure to silica particles. On the contrary, she was quite clear in stating her opinion

that even if some of the fine particulates in the Kingston fly ash were made of silica, it was not their chemical nature as silica particles, but rather their small size that caused Plaintiffs harm. Indeed, Dr. Ward carefully and articulately illustrated this distinction. Moreover, she consistently disagreed with opposing counsel's leading questions on the topic, and in doing so, explained that, in fact, the classic injuries typically observed with silica and fibrogenic dust exposures were not actually observed in any of the Adkisson plaintiffs:

> Q. And so it's your view that the silica particles in fly ash contributed to all those health effects of the plaintiffs, the respiratory conditions, the cardiovascular conditions, and lung cancer, right?
>
> A. That is actually not my view. So the most important or the most -- and the most prominent results of overexposure to silica is silicosis, which is a pneumoconiosis. It's a specific kind of lung disease. We did not see any of those -- we did not -- none of the plaintiffs whose medical histories I have reviewed were determined to have silicosis; they had other kind of respiratory problems, many of which are associated much more strongly with small respirable particle exposure in air pollution than they are with silica.

Ex. 1 at 99.

> Q. (BY MR. MODLIN) On Page 31 of your December 10th report, you claim that exposure to silica can cause COPD, correct?
>
> A. Right
>
> Q. Are you saying that any of the Kingston workers have COPD because of silica exposure or that silica exposure contributed to any of the plaintiffs' COPD?
>
> A. Again, in my broader understanding of the exposures that I've come to have in the process of, you know, preparing my report and my rebuttal, I believe that probably the most important cause of COPD -- most important occupational cause of COPD in this instance is respirable particulates. I think there's a great deal of evidence about, you know, from the air pollution literature, about PM2.5 causing asthma exacerbations, causing COPD exacerbations, causing respiratory irritation. I think that's what we are seeing here in this cohort.

4

> Q. And we've already established that some of the respirable particulate in fly ash is silica, right
>
> A. We are not disagreeing that some of the respirable particulate in fly ash is silica.
>
> Q. So if the respirable particulate in fly ash caused the plaintiffs' COPD, then silica contributed to that.
>
> MR. RINGGER: Object to the form.
>
> A. Yeah, I don't think that's – I mean again, that is not the inference that I am making based on my broad understanding of the exposures -- of the exposures at this site or the silica literature. Certainly silicosis is the predominant health effect associated with silica. COPD is sometimes seen or has been documented in some of the studies, but the classical health effect, the one that you see the most of is silicosis.
>
> Q. I'm not asking about silicosis, I'm asking about COPD. And your claim is that the fine particulate in the fly ash contributed to some of the plaintiffs' COPD cases, correct?
>
> A. Yes, that is correct.
>
> Q. And you've already testified that some of the fine particulate in fly ash is silica, right?
>
> A. But the inference I'm making, the causal inference I'm making is based on data from small particulates, regardless of what's in there -- regardless of their composition. That's the primary scientific fact that I'm referring to.

Ex. 1 at 106-08.

Moreover, Dr. Ward later explains that PM2.5 is not a fibrogenic dust (such as silica), as it does not, in and of itself, cause the same sort of fibrosis-type injury – such as in silicosis or pneumoconiosis – that is the concern with fibrogenic dust exposure.

> Q. Can PM2.5 cause interstitial lung disease?
>
> A. I'm not aware that there's any evidence that PM2.5 causes interstitial lung disease.
>
> Q. Or what about silicosis?

5

> A. PM2.5, none of the PM2.5 studies in the general population have identified silicosis as a health effect -- or a health -- or a condition that's in excess among people exposed to PM2.5.
>
> Q. Would PM2.5, without knowledge of its constituents, constituent be considered a fibrogenic dust?
>
> A. No, it would not.
>
> Q. Does a dust that causes fibrogenic injury differ from the type of injury or the type of dust that can lead to COPD?
>
> A. My understanding, and it is reflected my report, is that interstitial lung disease and pneumoconiosis do have distinct etiologies compared to asthma and COPD, that there are only a certain class of compounds that causes these kind of fibrogenic diseases, and there are many other types of exposures that are associated with COPD and asthma, including -- including PM2.5.
>
> Q. Is COPD a distinct condition from silicosis?
>
> A. I'm not a pulmonologist, but it is my understanding as a generalist that it is distinct condition from silicosis.

Ex. 1 at 276-77.

Not only does the above testimony directly contradict the brazen mischaracterizations of Dr. Ward's testimony presented to this Court by Jacobs, it should thoroughly dispel the notion that any of the Adkisson plaintiffs are claiming injury due to silica or any other fibrogenic dust exposure. Accordingly, contrary to Jacobs' continued assertions, Plaintiffs claims are not "silica claims" subject to the TSCPA, and for the reasons stated in Plaintiffs original Response (Doc. 770), this Court should deny the subject Motion.

6

Date: August 26, 2021                                RESPECTFULLY SUBMITTED,

*/s/ Louis W. Ringger, III*
Gregory F. Coleman, TN Bar No. 14092
Louis W. Ringger, III, TN Bar No. 33674
Adam A. Edwards, TN Bar No. 23253
Mark E. Silvey, TN Bar No. 13415
Justin G. Day, TN Bar No. 33267
William A. Ladnier, TN Bar No. 34316
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
First Horizon Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: (865) 247-0080
F: (865) 522-0049
gcoleman@milberg.com
bringger@milberg.com
aedwards@milberg.com
msilvey@milberg.com
jday@milberg.com
wladnier@milberg.com

**DAVIS & WHITLOCK, P.C.**
Gary A. Davis, TN Bar No. 009766
James S. Whitlock NC Bar No. 34303 (admission
 *Pro Hac Vice*)
21 Battery Park Ave, Suite 206
Asheville, NC 28801
T: (828) 622-0044
F: (828) 398-0435
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

**MARKET STREET LAW, PLLC**
James K. Scott, TN BPR No. 16893
Keith D. Stewart, TN BPR No. 17574
John Tyler Roper, TN BPR No. 21927
625 Market Street, 14th Floor
Knoxville, TV 37902
T: (865) 888-9995
F: (866) 245-0989
jimscott264@gmail.com
keithdstewart@gmail.com
tylerroperlaw@gmail.com

7

**BRIDGEFRONT LAW GROUP PLLC**
John B. Dupree
616 W. Hill Ave, 2nd Floor
Knoxville, TV 37902
T: (865) 223-5184
john.dupree@knoxtnlaw.com

**FRIEDMAN, DAZZIO, ZULANAS & BOWLING, PC**
Jeffrey E. Friedman, AL Bar No. asb-6868-n77j
 (admission *Pro Hac Vice*)
3800 Corporate Woods Drive
Birmingham, AL 35242
T: (205) 278-7000
F: (205) 278-7001
jfriedman@friedman-lawyers.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 26, 2021, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

*/s/ Louis W. Ringger, III*
Louis W. Ringger, III

*Attorney for Plaintiffs*