# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

GREG ADKISSON, et al., )
    Plaintiffs, )
v. )   No.:  3:13-CV-505-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )
_____ )   *Lead case consolidated with*

KEVIN THOMPSON, et al., )
    Plaintiffs, )
v. )   No.:  3:13-CV-666-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )
_____ )   *as consolidated with*

JOE CUNNINGHAM, et al., )
    Plaintiffs, )
v. )   No.:  3:14-CV-20-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )
                       )

BILL ROSE, )
    Plaintiff, )
v. )   No.:  3:15-CV-17-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )
_____ )

CRAIG WILKINSON, et al., )
    Plaintiffs, )
v. )   No.:  3:15-CV-274-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )
_____ )

ANGIE SHELTON, as wife and next of kin )
on behalf of Mike Shelton, et al., )
    Plaintiffs, )
v. )   No.:  3:15-CV-420-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
    Defendant. )
_____ )

JOHNNY CHURCH, )
        Plaintiff, )
v. )      No.: 3:15-CV-460-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
        Defendant. )
_____)

DONALD R. VANGUILDER, JR., )
        Plaintiff, )
v. )      No.: 3:15-CV-462-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
        Defendant. )
_____)

JUDY IVENS, as sister and next of kin, )
on behalf of JEAN NANCE, deceased, )
        Plaintiff, )
v. )      No.: 3:16-CV-635-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
        Defendant. )
_____)

ROBERT MUSE, et al., )
        Plaintiffs, )
v. )      No.: 3:17-CV-282-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
        Defendant. )
_____)

HARRY HEMINGWAY, et al., )
        Plaintiffs, )
v. )      No.: 3:17-CV-547-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
        Defendant. )
_____)

VERNON D. ALLEN, et al., )
        Plaintiffs, )
v. )      No.: 3:18-CV-153-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
        Defendant. )
_____)

JAMES ANDERSON, et al., )
        Plaintiffs, )
v. )      No.: 3:19-CV-219-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
        Defendant. )

2

## <u>CERTIFICATION ORDER</u>

This matter is before the Court on defendant Jacobs Engineering Group, Inc.'s ("Jacobs") motion for summary judgment in *Adkisson*, *Thompson*, *Cunningham*, *Rose*, *Wilkinson*, *Shelton*, and *Ivens* [Doc. 765][1] and motion to dismiss in *Muse*, *Hemingway*, *Allen*, and *Anderson* [Case No. 3:17-cv-282, Doc. 51], under the Tennessee Silica Claims Priorities Act ("TSCPA"), Tenn. Code Ann. § 29-34-301, *et seq.* These motions have been fully briefed [Docs. 766, 770, 771, 774, 780, 788; Case No. 3:17-cv-282, Docs. 56, 57], and are now ripe for the Court's review. For the reasons stated below, the Court will **CERTIFY** the following questions to the Tennessee Supreme Court, pursuant to Tennessee Supreme Court Rule 23:

> (1)     Are the requirements of the TSCPA an affirmative defense that must be pleaded in a responsive pleading, or are they prima facie requirements which can be raised at any stage of litigation?

> (2)     Do the TSCPA's requirements apply to all cases involving exposure to silica or mixed dust, or, if coal ash is silica or mixed dust within the meaning of the TSCPA, are plaintiffs' claims exempted from the TSCPA's requirements because they are raised under the common law?

> (3)     Does coal ash, which contains silica, fibrogenic dusts, and other components that may cause injury, but are not "fibrogenic dusts," constitute "silica" or "mixed dust" such that the requirements of the TSCPA would apply in these cases?

> (4)     If coal ash does qualify as silica or mixed dust, does the TSCPA apply even if plaintiffs' claims are based on injury resulting from exposure to elements of coal ash that are not silica or fibrogenic dusts?

---

[1]  Unless otherwise indicated, all citations refer to the docket of *Adkisson et al. v. Jacobs Engineering Group, Inc.,* 3:13-cv-505-TAV-HBG.

3

In light of this order, the Court will **STAY** the *Adkisson* line of cases pending a ruling by the Tennessee Supreme Court on these issues. Likewise, the currently stayed cases (*Muse*, *Hemingway*, *Allen*, and *Anderson*) will remain stayed pending such a ruling. In light of this order, the parties' joint motion for a status conference [Doc. 751] is **DENIED as moot**.

## I.    BACKGROUND

The facts of these cases are well-known, but some brief background is warranted here. Jacobs was hired by the Tennessee Valley Authority ("TVA") to manage cleanup and remediation efforts at the Kingston Fossil Fuel Plant following the December 2008 coal-ash spill. TVA and Jacobs entered into a contract, according to which Jacobs developed a comprehensive Site Wide Safety and Health Plan ("SWSHP") governing the site. The plaintiffs here are individuals who worked on the remediation efforts, plus some of their spouses. The workers suffer from a variety of medical conditions, which they claim were caused by Jacobs's negligence with respect to air monitoring, dust control, the use of personal protective equipment, and worker training, all in violation of Jacobs's contract with TVA and the SWSHP.

This Court ultimately consolidated 10 actions[2] for discovery, motion practice, and Phase I trial, and bifurcated the trial proceedings into two phases:

> **Phase I** will be a consolidated trial for all cases and will involve issues and
> evidence relating to: (1) whether defendant owed plaintiffs a legal duty;

---

[2] Specifically, the Court consolidated the following cases for discovery, motion practice, and Phase I trial: *Adkisson*, 3:13-cv-505, *Thompson*, 3:13-cv-666, *Cunningham*, 3:14-cv-20, *Rose*, 3:15-cv-17, *Wilkinson*, 3:15-cv-274, *Shelton*, 3:15-cv-420, *Church*, 3:15-cv-460, *Vanguilder*, 3:15-cv-462, *Ivens*, 3:16-cv-635, and *Farrow*, 3:16-cv-636 [Doc. 136]. *Farrow* has since been dismissed upon plaintiff's motion [Case No. 3:16-cv-636, Doc. 482].

4

(2) whether defendant breached that duty; and (3) whether defendant's breach was capable of causing plaintiffs' alleged injuries.

**Phase II** will involve issues and evidence relating to: (1) specific causation with respect to individual plaintiffs; (2) each plaintiff's alleged injuries; and (3) the extent to which individual plaintiffs are entitled to damages.

[Doc. 136]. These 10 cases proceeded to trial on Phase I. During those four weeks, the jury heard evidence that, among other things, employees of Jacobs:

- Manipulated monitoring results by watering down stationary monitors and taking readings only when wet or raining [Doc. 412, Tr. Vol II at 156:18–157:1][3];
- Tampered with personal dust monitors by "tapping out" the contents [Doc. 411, Tr. Vol I at 95:13–24]];
- Failed to provide decontamination stations for workers [Doc. 411, Tr. Vol I at 77:2];
- Did not allow workers to wear dust masks, threatening to fire those who did [Doc. 413, Tr. Vol. III at 391:9–15; 450:20–24; 459:11–23], taking dust masks away from employees who wore them [Doc. 414, Tr. Vol. IV at 561:23–24], and destroying dust masks that were available on the site [Doc 411, Tr. Vol. I at 85:7-13; 87:4–88:9];
- Did not warn workers about the dangers of exposure to fly ash [Doc. 411, Tr. Vol. 1 at 70:20–71:18; 72:3–16; 73:2–8; 74:13–15; Doc. 412, Tr. Vol. 2 151:4–152:5; 154:1–155:22; 189:5–19]; and
- Told workers that fly ash was safe to consume [Doc. 414, Tr Vol IV at 701:11–702:22], which is not true [Tr. Vol. VIII at 1958:22–1960:9].

Also presented was testimony and evidence about the large amount of fly ash—even airborne clouds of it—present at the site [*e.g.*, Tr. Vol. III at 328:21-25; Pls. Exs. 334, 337, 328, 327]. And plaintiffs' expert witness, epidemiologist Dr. Paul Terry, testified that fly

---

[3] Citations to the trial transcript use the pagination running consecutively through all volumes.

ash exposure is capable of causing the diseases from which plaintiffs claim to suffer [Doc. 421, Tr. Vol. 421, at 1482–1631].

The Court submitted to the jury a verdict form that asked: (1) whether Jacobs violated its contract with TVA; (2) whether Jacobs failed to exercise reasonable care in carrying out the duties owed to plaintiffs; and (3) whether that breach was capable of causing each of ten medical conditions [Doc. 408]. The jury answered "yes" to all and returned a verdict for plaintiffs [*Id.*]. The Court thereafter denied "post-judgment" motions as to the Phase I issues [Doc. 462].[4]

While the Court managed the 10 consolidated cases, several additional cases were filed, raising similar claims. Specifically, the following cases were filed (or removed to this Court) after the Court's January 30, 2017, consolidation order [Doc. 136]: *Muse*, 3:17-cv-282, *Hemingway*, 3:17-cv-547, *Allen*, 3:18-cv-153, *Anderson*, 3:19-cv-219, and *Fair*, 3:19-cv-499.[5] The Court ultimately ordered each of these cases stayed pending resolution of Phase I of the *Adkisson* case series [Case No. 3:17-cv-282, Doc. 29;

---

[4] The Court does note that, earlier this year, it denied a renewed motion for judgment as a matter of law on the Phase I issues, specifically relating to the previously litigated issue of derivative contractor immunity, which was raised again in light of a 2019 Supreme Court decision [Doc. 759]. Although the Court denied that motion, it also certified the issue to the Sixth Circuit Court of Appeals for an interlocutory appeal [Doc. 759], which the Sixth Circuit has accepted and which remains pending before the Sixth Circuit [Docs. 785, 786].

[5] *Fair* was previously referred to by the name of the lead plaintiff, Jeffrey Elliott, and Jacobs refers to the case as "*Elliott*" in its motion. However, plaintiff Jeffrey Elliott and Jacobs settled their dispute, and the parties stipulated to dismissal of Elliott's claims [Case No. 3:19-cv-499, Doc. 23]. Accordingly, the Court finds that this case should now be referred to by the name of the next named plaintiff, Terry Fair, and the Court will refer to this case as *Fair* throughout this order, and in future orders.

6

Case No. 3:17-cv-547, Doc. 20; Case No. 3:18-cv-153, Doc. 20; Case No. 3:19-cv-219, Doc. 25; Case No. 3:19-cv-499, Doc. 22]. After the Phase I trial in the *Adkisson* line of cases was completed, the parties in these non-consolidated cases moved for summary judgment based on collateral estoppel in light of the jury's Phase I verdict in the *Adkisson* series of cases [Case No. 3:17-cv-282, Doc. 32; Case No. 3:17-cv-547, Doc. 27; Case No. 3:18-cv-153, Doc. 56; Case No. 3:19-cv-219, Doc. 44; Case No. 3:19-cv-499, Doc. 36].[6] Those motions remain pending before the Court, and the non-consolidated cases have remained stayed at this juncture.

Meanwhile, the *Adkisson* series of cases have now proceeded on discovery and the filing of dispositive motions as to the Phase II issues. Of particular relevance, Jacobs previously filed a motion for summary judgment on Phase II as to plaintiffs Angie Shelton, as wife and next of kin of Mike Shelton, Rickey Dean Shelton, brother of decedent, and Billy Isley, arguing that these plaintiffs could not satisfy the prima facie requirements for lung cancer or wrongful death claims under the TSCPA, Tenn. Code Ann. § 29-34-301, *et seq*. [Doc. 568]. This Court exercised its inherent power to manage its docket and denied this initial motion with leave to refile, instructing Jacobs to refile any summary judgment motion based on the TSCPA including argument regarding any and all plaintiffs against whom Jacobs believed summary judgment was appropriate under the TSCPA [Doc. 757].

---

[6] In *Hemingway*, the plaintiffs moved to lift the stay in light of the *Adkisson* Phase I verdict [Case No. 3:17-cv-547, Doc. 22], but in *Allen*, the plaintiffs moved to continue the stay through Phase II of the *Adkisson* series of cases [Case No. 3:18-cv-153, Doc. 22]. These motions remain pending at this juncture. The plaintiffs in the remaining non-consolidated cases did not file motions regarding the stays in light of the Phase I verdict.

7

In so ruling, the Court stated that "the applicability of the TSCPA appears to be a novel issue, and preliminary research has revealed a dearth of case law addressing any aspect of the TSCPA," and noted the late stage at which Jacobs had raised the TSCPA issue [*Id.* at 3].

Thereafter, Jacobs refiled its motion for summary judgment under the TSCPA, in seven of the nine remaining consolidated cases: *Adkisson*, *Thompson*, *Cunningham*, *Rose*, *Wilkinson*, *Shelton*, and *Ivens* [Doc. 765]. Jacobs contends that the following plaintiffs' claims are barred under the TSCPA for the following reasons:

(1)  Mike Shelton's claims, brought by Angie Shelton and Ricky Lee Shelton, in light of the 10-year lung cancer latency requirement of § 29-34-304(b)(2);

(2)  Jean Nance's claims, brought by Judith Ivens, and Bill Rose's claims, brought by Kaleb Rose, in light of the five-year substantial occupational exposure requirement of § 29-34-304(c)(4);

(3)  Greg Adkisson, Tim Bandy, Philip Crick, Joe Cunningham, David Jones, Glenn Knight, Ralph Ramey, Brian Summers, Jeff Townsley, Timothy Turner, and Michael Watkins's claims, in light of the "competent medical authority" requirement of § 29-34-304(a), as defined in § 29-34-303(9)(A)(ii); and

(4)  Gabriel Billingsley, Jeffrey Brewer, Ansol Clark,[7] Dan Cody, Timothy Gibson, William Hedgecoth, Stan Hill, David Johnson, Fred Christopher Jones, Jimmy Kilby, Clint Mannis, Michael McCarthy, Frankie Norris, James Phillips, Shaun Travis Smith, Robert Tedder, and Jason Williams's claims, in light of the requirements that their treating medical doctor have

---

[7] The Court notes that plaintiffs recently filed a suggestion of death, indicating that plaintiff Ansol Clark died on or about May 1, 2021 [Doc. 790]. No motion for substitution of party has been filed at this time.

8

certain board certifications and provide a causation opinion, as
set forth in §§ 29-34-303(9)(A)(i) and 29-34-304(a).

[Doc. 765, p. 3]. Jacobs also contends that several spouse plaintiffs cannot recover for loss of consortium, as such claims are derivative, and their spouses cannot recover for the reasons stated above [*Id.* at 4]. Jacobs likewise filed a motion to dismiss in *Muse*, *Hemingway*, *Allen*, and *Anderson* under the TSCPA, in relevant part, raising the same arguments regarding the applicability of the TSCPA as in the summary judgment motions filed in *Adkisson* [Case No. 3:17-cv-282, Doc. 52]. Specifically, as to these non-consolidated cases, Jacobs argues that plaintiffs have not filed a report as to the required prima facie showings within 120 days of their complaints, as required by the TSCPA, and therefore, the complaints should be dismissed without prejudice [Case No. 3:17-cv-282, Doc. 52]. Jacobs contends that the TSCPA also applies to *Fair*, but they have not filed a motion to dismiss in that case because the Court stayed the case before the 120-day deadline expired [*Id.* p. 6 n.2].

**Parties' Arguments**[8]

As to the applicability of the TSCPA to these cases, Jacobs argues that fly ash is both "silica" and "mixed dust" for purposes of the TSCPA [Doc. 768, p. 16]. Specifically, Jacobs cites to both the *Adkisson* amended complaint and plaintiffs' expert witness during

---

[8] The following summary of the parties' arguments are taken from the *Adkisson* line of cases summary judgment briefing; however, the Court has fully reviewed the briefing on the motions to dismiss in the non-consolidated cases, and the issues regarding the applicability of the TSCPA are identical. Accordingly, for clarity, the Court will only reference and cite to the *Adkisson* summary judgment briefing.

9

the Phase I trial, both of which reference exposure to silica in fly ash, as well as plaintiff's epidemiologist for Phase II, who has noted that coal ash "is 40-60% silica" [*Id.*]. Further, Jacobs states that fly ash is "mixed dust" because it contains at least one fibrogenic dust, such as asbestos or beryllium [*Id.* at 16–17]. Jacobs notes that the West Virginia Supreme Court, construing Ohio's similar silica statute, found that coal ash was properly classified as a mixed dust under the Ohio statute, which, Jacobs states, contains the same definition of mixed dust as the TSCPA [*Id.* at 17–18 (citing *State ex rel American Electric Power Co. v. Swope*, 801 S.E. 2d 485 (W. Va. 2017)].

Jacobs continues on to assert that plaintiffs Angie and Ricky Dean Shelton's claims, as to Mike Shelton, should be dismissed, because they cannot make a prima facie showing of the TSCPA's latency requirement for lung-cancer claims, as Mike Shelton was diagnosed with lung cancer less than seven years after he began working at the Kingston site, and, in fact, passed away less than seven years after beginning such work [*Id.* at 18–19]. Additionally, Jacobs contends that plaintiff Kaleb Rose's claims, as to Bill Rose, and Judith Ivens's claims, as to Jean Nance, should be dismissed, because they cannot make a prima facie showing of the TSCPA's five-year substantial occupational exposure requirement for wrongful death claims [*Id.* at 19]. Specifically, Jacobs contends that Bill Rose only worked at the Kingston plant for a total of five months, and Nance worked at Kingston for less than three-and-a-half years [*Id.* at 20].

Jacobs also contends that 11 other plaintiffs have not provided testimony from a treating medical doctor, and therefore cannot satisfy the TSCPA's requirement that they

10

provide the "opinion of a competent medical authority," as the statute defines "competent medical authority" as a "medical doctor" who "is actually treating, or has treated, the exposed person and has or had a doctor-patient relationship with the exposed person" [*Id*. at 20–21 (quoting Tenn. Code Ann. § 29-34-303(9)(A))]. Furthermore, Jacobs argues that 17 additional plaintiffs have provided inadequate medical opinions that cannot satisfy the TSCPA's prima facie requirements [*Id*. at 21]. Jacobs states that a "competent medical authority" under the TSCPA must be "board-certified in occupational medicine, a board-certified oncologist, a board-certified pathologist, or a board-certified pulmonary specialist" and 16 out of the 17 named plaintiffs, charted in their motion, do not have opinions from medical authorities with the appropriate board certifications [*Id*. at 21–22 (quoting Tenn. Code Ann. § 29-34-303(9)(a)(i))]. Jacobs also states that the competent medical authority must offer an opinion that a plaintiff's "exposure to silica or mixed dust is a substantial contributing factor to [that plaintiff's] physical impairment," and 14 of the 17 named plaintiffs, charted in their motion, do not have an appropriate causation opinion [*Id*. (quoting Tenn. Code Ann. § 29-34-304(a))].

While Jacobs contends that summary judgment is appropriate under the TSCPA, in the alternative, it asks the Court to certify questions regarding the TSCPA's applicability to the Tennessee Supreme Court under Rule 23 of the Rules of the Tennessee Supreme Court [*Id*. at 23–24]. Specifically, Jacobs proposes the following three questions for certification to the Tennessee Supreme Court:

11

(1) Does the TSCPA apply to personal-injury cases for exposure to coal ash, given that coal ash is made up principally of silica, along with other fibrogenic dusts?

(2) Does the TSCPA apply to Plaintiffs' common-law claims given that it applies "to all civil actions that allege a silica or mixed dust disease claim that are filed on or after July 1, 2006," and "civil actions" is defined to "mean[] all suits or claims of a civil nature in a court of record"?

(3) Are the TSCPA's requirements part of Plaintiff's prima-facie burden or an affirmative defense?

[*Id*. at 24].

In response, plaintiffs first argue that Jacobs have waived reliance on the TSCPA by failing to raise it as an affirmative defense [Doc. 770, pp. 12–13]. Further, plaintiffs contend that, even if the delay itself in raising the TSCPA argument is not sufficient to constitute a waiver of the affirmative defense, they have been prejudiced such that the TSCPA claim should be waived [*Id*. at 13–15].

As to the merits, plaintiffs argue that the TSCPA only applies to injuries caused by exposure to silica or other fibrogenic dusts, but their claims are based on medical conditions allegedly caused by exposure to coal fly ash, rather than exposure to silica or other fibrogenic dusts [*Id*. at 15–16]. Plaintiffs contend that all of their expert evidence, at both the Phase I and Phase II stages, indicates that their injuries were caused by exposure to toxic substances other than silica or fibrogenic dusts [*Id*. at 16].

12

Plaintiffs also contend that coal ash is not a "mixed dust" for purposes of the TSCPA,[9] contending that Jacobs's characterization of the TSCPA as applying broadly to cover any claim for damages arising out of exposure to any substance that arguably contains silica or mixed dusts is contrary to the legislative history, which, plaintiffs assert, indicates that the TSCPA was intended to protect workers and provide an avenue for raising silica claims such as silicosis [*Id*. at 16–18]. Plaintiffs acknowledge that coal ash contains silica and other substances that may be "fibrogenic," such as asbestos and beryllium, but state that it also contains numerous toxic constituents that are not defined as fibrogenic dusts, such as heavy metals and radionuclides [*Id*. at 18]. Plaintiffs state that the constituents of coal ash which they identify as causally related to their injuries include only the following: lead, arsenic, cadmium, mercury, chromium, nickel, vanadium, fine particulate matter, and naturally occurring ionizing radiation, none of which have been identified as fibrogenic dusts [*Id*.]. Plaintiffs contend that "it is not the potential fibrogenic nature of coal ash, but rather the toxicity of certain non-fibrogenic heavy metals and radionuclides within coal ash that gives rise to [their] claims," and therefore, their claims are not "mixed dust" claims [*Id*. at 19].

Plaintiffs also contend that the TSCPA does not create an exclusive remedy for injuries related to exposure to silica or fibrogenic dusts [*Id*. at 20]. Plaintiffs state that the "TSCPA simply describes a procedure for stating a *prima facie* case that an alleged injury

---

[9] The Court does note that, in briefing on the initial TSCPA motion, the plaintiffs argued that "the composition of the fly ash is neither disputed nor relevant" [Doc. 586, p. 6].

was caused by exposure to silica or 'mixed dust' that occurred years prior to the manifestation of symptoms" and has no application here, "where the exposure was of such intensity that its harmful effects occurred much more rapidly than the time periods related to the pulmonary fibrosis types of illnesses contemplated by the" statute [*Id.*]. Plaintiffs also argue that, because the TSCPA does not create an exclusive remedy, it does not apply to their claims, which are raised under common law [*Id.* at 20–29].

Finally, plaintiffs argue that certification of questions regarding the applicability of the TSCPA to the Tennessee Supreme Court is inappropriate, because Jacobs failed to raise the TSCPA as an affirmative defense or timely challenge the adequacy of plaintiff's evidence under the TSCPA [*Id.* at 29–30]. Further, plaintiffs contend that, for the reasons stated in their prior arguments, the evidence unequivocally illustrates that the TSCPA is not applicable, and therefore, there is no need for the Tennessee Supreme Court to consider the proposed questions [*Id.* at 30–31].

Jacobs replies that there are no factual disputes at issue in this motion, and plaintiffs do not dispute that, if the TSCPA applies in these cases, summary judgment should be entered in Jacobs's favor on the claims of the 40 plaintiffs at issue [Doc. 776, p. 7]. Jacobs argues that it has not waived its right to raise the TSCPA, because the TSCPA is not an affirmative defense, but rather, as plaintiffs concede, a procedure for stating a prima facie case, and when a defendant negates an element that the plaintiff is required to prove as part of their prima facie case, it is not raising an affirmative defense that must be pleaded in an answer [*Id.* at 8–9]. Nevertheless, even if it was obligated to raise the TSCPA as an

14

affirmative defense previously, Jacobs contends that it still has not waived the argument because plaintiffs have not shown, and cannot show, any prejudice [*Id*. at 10–12].

Next, Jacobs reiterates that the TSCPA applies to these claims [*Id*. at 13]. Jacobs contends that the TSCPA applies to "any claim for damages . . . based on, or in any way related to inhalation of, exposure to, or contact with" silica or mixed dust [*Id*. at 13 (quoting Tenn. Code Ann. § 29-34-303(14), (24))]. Jacobs states that plaintiffs cannot seriously contest that their claims are in some way related to "exposure" to silica or mixed dust [*Id*.]. Regardless, Jacobs argues that plaintiffs have plainly alleged that this action is for personal injuries caused by exposure to mixed dust and concede such when they state that coal ash contains silica and other substances that may be "fibrogenic" [*Id*. at 14]. And, because plaintiffs claim injury from exposure to fly ash, they necessarily are claiming injures from that mixed dust [*Id*.]. Furthermore, Jacobs argues that, despite plaintiffs now claiming that they are not alleging that any of their conditions were caused by exposure to silica, their amended complaint specifically references the development of illnesses resulting from exposure to silica-quartz, and numerous of plaintiffs' experts cite exposure to silica [*Id*. at 16–18].

Jacobs also replies to plaintiffs' argument regarding whether the TSCPA is an exclusive remedy, arguing that the TSCPA does not provide any remedy, but rather imposes prima facie requirements that apply in all civil actions, regardless of the legal basis for the remedy in such actions [*Id*. at 18–19]. Thus, Jacobs argues that the Court cannot determine the appropriate relief in a cognizable cause of action, such as plaintiffs' common

law claims, without reference to the TSCPA's requirements [*Id*. at 19]. Although Jacobs argues that the Court need not examine the legislative history, since the statutory language is unambiguous, it nevertheless argues that the legislative history shows that the TSCPA was intended to purposefully restrict who may bring silica or mixed dust claims, to preserve resources for potentially meritorious claims [*Id*. at 20–22].

Thereafter, Jacobs filed a supplemental brief, arguing that the August 5, 2021, deposition of plaintiffs' expert epidemiologist Dr. Elizabeth Ward provided further confirmation that plaintiffs' claims are "silica claims" subject to the TSCPA [Doc. 780, p. 1]. Jacobs cites portions of Dr. Ward's deposition testimony that some of plaintiffs' health conditions were caused by "PM2.5" which is "ma[d]e up" of "amorphous silica" and "crystalline silica[.]" [*Id.* at 3–4].

Plaintiffs respond that, in full context, Dr. Ward's testimony makes clear that PM2.5 is harmful because of its small particle size, not its chemical composition [Doc. 788, pp. 2–3]. Thus, plaintiffs state that Dr. Ward's testimony in no way indicated that plaintiffs' injuries were caused by exposure to silica particles [*Id.* at 3]. According to plaintiffs, Dr. Ward also explained that the "classic injuries" typically observed with silica and fibrogenic dust exposures were not actually observed in any of the *Adkisson* plaintiffs [*Id.* at 4].

Jacobs sought to file a supplemental reply [Doc. 789], and plaintiffs opposed the request, but, in the alternative, sought to file a supplemental sur-reply [Doc. 792]. The

Court denied these motions and declined to allow the parties to file supplemental reply and sur-reply briefs, in light of the extensive briefing on these issues [Doc. 793].

## II.    LEGAL STANDARD

Under Tennessee Supreme Court Rule 23, this Court may certify a question of law to the Tennessee Supreme Court when it "determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23 § 1. Whether to certify a question of state law is a decision that "lies within the sound discretion of the district court." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449–50 (6th Cir. 2009) (quoting *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995)). "Certification 'is most appropriate when the question is new and state law is unsettled.'" *Id.* at 450 (quoting *Transam Ins. Co.*, 50 F.3d at 372). "[H]owever, the federal courts generally 'will not trouble our sister state courts every time an arguably unsettled question of law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves.'" *Id.* (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)). Thus, this Court may decide to certify the questions of law at issue here if they (1) will be determinative of the cause and (2) have no controlling precedent in Tennessee Supreme Court decisions.

17

## III.  ANALYSIS

There are several relevant questions regarding the application of the TSCPA to this case, based on the parties' arguments in this summary judgment motion:

(1)     Are the requirements of the TSCPA an affirmative defense that must be pleaded in a responsive pleading, or are they prima facie requirements which can be raised at any stage of litigation?

(2)     Do the TSCPA's requirements apply to all cases involving exposure to silica or mixed dust, or, if coal ash is silica or mixed dust within the meaning of the TSCPA, are plaintiffs' claims exempted from the TSCPA's requirements because they are raised under the common law?

(3)     Does coal ash, which contains silica, fibrogenic dusts, and other components that may cause injury, but are not "fibrogenic dusts," constitute "silica" or "mixed dust" such that the requirements of the TSCPA would apply in these cases?

(4)     If coal ash does qualify as silica or mixed dust, does the TSCPA apply even if plaintiffs' claims are based on injury resulting from exposure to elements of coal ash that are not silica or fibrogenic dusts?

In addressing whether there is any controlling law on these questions, the Court finds it appropriate to discuss the several relevant sections of the TSCPA at issue.  The TSCPA appears to set forth requirements for various claims based on exposure to silica or "mixed dust."  First, the TSCPA states that:

No person shall bring or maintain a civil action alleging a *silica or mixed dust disease claim* based on a nonmalignant condition in the absence of a prima facie showing that, in the opinion of a competent medical authority, the exposed person has a physical impairment, and that the person's exposure to silica or mixed dust is a *substantial contributing factor* to the physical impairment.  The prima facie showing shall include:

(1) Evidence that a competent medical authority has taken from the exposed person a detailed medical history . . . includ[ing] . . . the occupational and exposure history of the exposed person . . .

18

(2) Evidence verifying that there has been a sufficient latency period . . .

(3) A diagnosis by a competent medical authority . . . that . . . [t]he exposed person [meets certain medical requirements]; and

(4) Verification that the competent medical authority has concluded that exposure to silica or mixed dust was a substantial contributing factor to the exposed person's impairment. A diagnosis that states that the medical findings and impairment are consistent with or compatible with silica or mixed dust exposure does not meet the requirements of this subdivision (a)(4).

Tenn. Code Ann. § 29-34-304(a) (emphasis added).

The TSCPA then goes on to set forth specific standards for lung cancer claims and wrongful death claims. Tenn. Code Ann. § 29-34-304(b), (c). As to lung cancer, the TSCPA states:

No person shall bring or maintain a civil action alleging that silica or mixed dust caused that person to contract lung cancer in the absence of a prima facie showing that, in the opinion of a competent medical authority, the person has a primary lung cancer, and that the person's exposure to silica or mixed dust is a substantial contributing factor to the lung cancer. The prima facie showing shall include:
. . .
(2) Evidence sufficient to demonstrate that at least ten (10) years have elapsed form the date of the exposed person's first exposure to silica or mixed dust until the date of diagnosis of the exposed person's primary lung cancer; [and]
. . .
(5) Verification that the competent medical authority has concluded that exposure to silica or mixed dust was a substantial contributing factor to the exposed person's lung cancer[.]

Tenn. Code Ann. § 29-34-304(b). The TSCPA then states, as to wrongful death actions:

No person shall bring or maintain a civil action alleging a silica or mixed dust disease claim based on the wrongful death of an exposed person in the absence of a prima facie showing that, in the opinion of a competent medical authority, the death of the exposed person was the result of a physical

19

impairment, and that the person's exposure to silica or mixed dust was a substantial contributing factor to the physical impairment causing the person's death. The prima facie showing shall include:

. . .

(4) Evidence of the exposed person's substantial occupational exposure to silica or mixed dust;

[and]

(5) Verification that the competent medical authority has concluded that exposure to silica or mixed dust was a substantial contributing factor to the exposed person's death[.]

Tenn. Code Ann. § 29-34-304(c).

The TSCPA "shall apply to all civil actions that allege a silica or mixed dust disease claim that are filed on or after July 1, 2006." Tenn. Code Ann. § 29-34-309. The TSCPA defines a "civil action" as "all suits or claims of a civil nature in a court of record, whether cognizable as cases at law or in equity or admiralty" but excludes specific types of civil actions not at issue in these cases. Tenn. Code Ann. § 29-34-303(8). The Act defines "mixed dust" as "a mixture of dusts composed of silica and one (1) or more other fibrogenic dusts capable of inducing pulmonary fibrosis if inhaled in sufficient quantity." Tenn. Code Ann. § 29-34-303(13).[10] The Act then defines "mixed dust disease claim" and "silica claim" as "any claim for damages, losses, indemnification, contribution, or other relief arising out of, based on, or in any way related to inhalation of, exposure to, or contact with" mixed dust or silica, respectively, and includes "a claim made by or on behalf of any person who has been exposed to" mixed dust or silica "for injury, including mental or emotional injury, death, or loss to the person, risk of disease or other injury, costs of medical

---

[10] Of note, the TSCPA does not contain any definition of the term "fibrogenic dusts."

20

monitoring or surveillance, or any other effects on the person's health that are caused by the person's exposure to" mixed dust or silica. Tenn. Code Ann. § 29-34-303(14), (24).

The Act also defines "substantial occupational exposure to mixed dust" and "substantial occupational exposure to silica" as "employment for a cumulative period of at least five (5) years in an industry and an occupation in which, for a substantial portion of a normal work year for that occupation, the exposed person" handled silica or mixed dust, fabricated products containing silica or mixed dust, altered, repaired, or otherwise worked with a silica or mixed dust-containing product, or worked in close proximity to other workers who experienced substantial occupational exposure to silica or mixed dust in a manner that exposed the person on a regular basis to silica or mixed dust. Tenn. Code Ann. § 29-34-303(27), (28).

Furthermore, the Act defines a "competent medical authority" as a medical doctor who meets several requirements, including that "[t]he medical doctor is board-certified in occupational medicine, a board-certified oncologist, a board-certified pathologist, or a board-certified pulmonary specialist" and that the doctor be "actually treating, or ha[ve] treated, the exposed person and has or had a doctor-patient relationship with the exposed person[.]" Tenn. Code Ann. § 29-34-303(9)(A). The Act contains definitions for the appropriate certifications a doctor must have to be deemed "board-certified" for purposes of being a "competent medical authority" under the Act. Tenn. Code Ann. § 29-34-303(2)–(6).

21

Research has uncovered only three cases addressing the TSCPA. The earliest case to address the Act was *Walker v. Moldex-Metric, Inc.*, No. 2:08-cv-210, 2009 WL 778775 (E.D. Tenn. Mar. 20, 2009), in which this district court summarily found that the TSCPA applied because plaintiff was raising a silica claim. The district court stated that the TSCPA "requires all plaintiffs to make an early prima facie showing of a physical impairment to which silica or mixed dust exposure was a substantial contributing factor." 2009 WL 778775, at *1. In that case, the district court had extended the deadline for plaintiff to file his prima facie written report, but plaintiff nonetheless did not file his report, and therefore, the district court dismissed the case for failure to make a prima facie showing as required by the TSCPA. *Id.*

Next, in ruling on the constitutionality of the statute of repose under the Tennessee Products Liability Act and exceptions thereto for asbestos and silicone gel breast implant claims, but not for silica-related claims, the Tennessee Court of Appeals, in a footnote, acknowledged the plaintiff's arguments under the TSCPA, but stated that, because the latest date that plaintiff first used or consumed the products at issue was in 1991, the TSCPA had no application. *Adams v. Air Liquide America, L.P.*, No. M2013-02607-COA-R3-CV, 2014 WL 6680693, at *1, *5 n.3 (Tenn. Ct. App. Nov. 25, 2014) (citing language in the TSCPA that the Act applies only to products first purchased for use or consumption after July 1, 1996). And, most recently, the Supreme Court of Montana cited the TSCPA in a worker's compensation claim for the proposition that some states have used class

22

ratings as a cutoff for silicosis litigation. *Hensley v. Montana State Fund*, 402 Mont. 277, 286 n. 2, 477 P. 3d 1065, 1070 n. 2 (Mont. 2020).

Notably, none of these cases address the complex questions regarding the TSCPA's application in this case, nor provide any relevant guidance as to the interpretation of the TSCPA's provisions. And, a plain reading of the TSCPA itself does not answer either the procedural questions or the complex issues of applicability in these cases, which have been raised by the instant motions.

The Court first finds that the following procedural question is appropriate for certification to the Tennessee Supreme Court:

> Are the requirements of the TSCPA an affirmative defense that must be pleaded in a responsive pleading, or are they prima facie requirements which can be raised at any stage of litigation?

Although the TSCPA does use "prima facie" language, *see* Tenn. Code Ann. § 29-34-304(a), (b), (c), and sets forth deadlines for plaintiffs to file a report setting forth their "prima facie" case, *see* Tenn. Code. Ann. § 29-34-305(a), it does not address at what stage a defendant must first raise a claim that plaintiffs cannot make the required showing under the TSCPA. The Court does note that Tennessee courts have indicated that "[a]n affirmative defense pleads a matter that is not within the plaintiff's prima facie case." *Admin. Res., Inc. v. Barrow Grp., LLC*, 210 S.W. 3d 545, 556 (Tenn. Ct. App. 2006) (quoting *George v. Alexander*, 931 S.W. 2d 517, 527 (Tenn. 1996) (Reid, J., concurring) (citing 2A James W. Moore, *et al.*, *Moore's Federal Practice* 8.27[1] (2d ed. 1995)). Furthermore, Judge William C. Koch, Jr., in a concurring opinion, explained that "[t]he

23

difference between a general defense which is not required to be specifically pled and an affirmative defense is that a general defense negates an element of the plaintiff's prima facie case, while an affirmative defense excuses the defendant's conduct even if the plaintiff is able to establish a prima facie case." *Brooks v. Davis*, No. 01-A-01-9509-CV00402, 1996 WL 99794, *7 (Tenn. Ct. App. Mar. 8, 1996) (Koch, J., concurring). Nevertheless, the TSCPA does set forth a deadline for a defendant to respond to a plaintiff's prima facie report, challenging the adequacy of the proffered prima facie evidence. Tenn. Code Ann. § 29-34-305(a). In light of this, and in light of the lack of any specific mention about the proper procedure for a defendant to follow if a plaintiff fails to file a report within 120 days, the Court finds that there is no controlling precedent on this question of law.

This procedural question is at least determinative of the *Adkisson* motions for summary judgment, because a significant period of time elapsed, and this case proceeded to a Phase I trial, before Jacobs ever raised any argument under the TSCPA. Thus, if a defendant is required to raise the TSCPA as an affirmative defense or must at least raise a challenge to whether plaintiffs can meet the TSCPA's requirements at some specific pretrial stage, the motion for summary judgment is due no consideration in the *Adkisson* line of cases. Although this procedural question alone is not determinative of the entire action, because, as discussed *infra*, the substantive questions presented may be determinative of these cases, the Court finds it appropriate to certify the threshold procedural question.

24

The Court next finds it appropriate to certify the following question regarding the exclusivity of the TSCPA:

> Do the TSCPA's requirements apply to all cases involving exposure to silica or mixed dust, or, if coal ash is silica or mixed dust within the meaning of the TSCPA, are plaintiffs' claims exempted from the TSCPA's requirements because they are raised under the common law?

As discussed previously, plaintiffs argue that the requirements of the TSCPA do not apply in this case, because their claims are based on common law tort law, and the TSCPA does not contain language indicating that it is an exclusive remedy for injuries related to exposure to silica or fibrogenic dusts [Doc. 770, pp., 20–29]. Jacobs, however, argues that the TSCPA does not provide any remedy, and merely sets forth prima facie requirements for all cases involving exposure to silica or mixed dust [Doc. 776, pp. 18–22]. The Court notes that the TSCPA indicates that its requirements apply to "*any* civil action, alleging a silica claim or a mixed dust disease claim[.]" Tenn. Code Ann. § 29-34-305 (emphasis added). The Act then defines "mixed dust disease claim" and "silica claim" as "*any* claim for damages, losses, indemnification, contribution, or other relief arising out of, based on, or *in any way related to* inhalation of, exposure to, or contact with" mixed dust or silica. Tenn. Code Ann. § 29-34-303(14), (24) (emphasis added). Given this language, it would appear that the TSCPA may apply to all civil cases involving exposure to mixed dust or silica, but the statute does not otherwise specifically address whether it applies to common law tort claims. And, because there is no relevant caselaw interpreting the TSCPA, the Court finds that there is no controlling precedent on this issue.

25

Further, as with the prior question, the Court finds that this question appropriate for certification as a threshold question because, while it is not determinative of the entire action, it is determinative of the instant motions, and the motions themselves, as discussed *infra*, are determinative of these cases. Specifically, if, as plaintiffs argue, the TSCPA does not provide an "exclusive remedy," and therefore, does not apply to this action, the Court need not further address the merits of the TSCPA arguments, and the motions should be denied. However, if, as defendant contends, the TSCPA provides no remedy and, instead, provides prima facie requirements that apply in all cases, the Court must look further into whether these cases are due to be dismissed under the TSCPA.

Third, the Court finds the following question of law appropriate to certify to the Tennessee Supreme Court, involving the applicability of the TSCPA to this case:

> Does coal ash, which contains silica, fibrogenic dusts, and other components that may cause injury, but are not "fibrogenic dusts," constitute "silica" or "mixed dust" such that the requirements of the TSCPA would apply in these cases?

The parties appear to agree that coal ash contains both silica and fibrogenic dusts, such as asbestos or beryllium [Doc. 768, pp. 16–17; Doc. 770 p. 18]. However, plaintiffs contend that coal ash also contains heavy metals and radionuclides, which are toxic constituents that are not fibrogenic dusts [Doc. 770, p. 18].[11] Accordingly, plaintiffs contend that coal ash is not a mixed dust under the TSCPA [*Id.*]. While the TSCPA defines "mixed dust" as "a mixture of dusts composed of silica and one (1) or more other fibrogenic dusts capable

---

[11] Jacobs does not appear to contest the fact that coal ash also contains other toxic constituents that are not fibrogenic dusts [*See generally*, Doc. 774].

of inducing pulmonary fibrosis if inhaled in sufficient quantity" Tenn. Code Ann. § 29-34-303(13), the TSCPA does not address whether a mixture of dusts composed of silica, at least one fibrogenic dust, and other toxic constituents constitutes a "mixed dust" for purposes of the statute. Nor does it address whether such a substance, when alleged to have caused injury other than pulmonary fibrosis would still constitute a mixed dust and trigger application of the TSCPA's requirements. And again, because there is no relevant caselaw addressing the application of the TSCPA in such a circumstance, the Court finds that there is no controlling law on this question of law.

Additionally, the Court finds that whether coal ash can be deemed "silica" or "mixed dust" such that the TSCPA would apply is determinative of many of the plaintiffs' claims in these cases. Notably, there appears to be no dispute that some plaintiffs cannot meet the relevant latency period or substantial occupational exposure requirements. Further, the parties do not appear to dispute that many plaintiffs have not made the required showing from a competent medical authority under the TSCPA. Thus, if the TSCPA applies to these cases, such plaintiffs' claims must necessarily be dismissed. Accordingly, this question of law is determinative of the cause of action, at least as to some plaintiffs. *See Becker v. Ford Motor Co.*, No. 1:13-cv-276, 2013 WL 6046080, at *2 (E.D. Tenn. Nov. 13, 2013) (finding that a question of law was determinative of the cause, for purposes of Rule 23, when it was dispositive of the plaintiffs' claims against a single defendant).

27

Finally, the Court finds it appropriate to certify the following question of law regarding the applicability of the TSCPA to the Tennessee Supreme Court:

> If coal ash does qualify as silica or mixed dust, does the TSCPA apply even if plaintiffs' claims are based on injury resulting from exposure to elements of coal ash that are not silica or fibrogenic dusts?

Somewhat related to the arguments addressed above, plaintiffs contend that the injuries they claim are based on "the toxicity of certain non-fibrogenic heavy metals and radionuclides within coal ash" and not "the potential fibrogenic nature of coal ash" [Doc. 770, p. 19]. Defendant, on the other hand, argues that plaintiffs' claims are clearly related to "exposure to" silica or mixed dust, and thus, they are necessarily claiming injuries related to that mixed dust [Doc. 774, p. 14]. As the Court has noted previously, the TSCPA defines "mixed dust disease claim" and "silica claim" as "*any* claim for damages, losses, indemnification, contribution, or other relief arising out of, based on, or *in any way related to* inhalation of, exposure to, or contact with" mixed dust or silica. Tenn. Code Ann. § 29-34-303(14), (24) (emphasis added). But, again, the TSCPA also defines "mixed dust" with reference to the dust's capability to "induce[] pulmonary fibrosis," *see* Tenn. Code Ann. § 29-34-303(13), which could plausibly be interpreted to tie the definition of "mixed dust claim" to the type of injury at issue. Because the statute itself does not make clear that it applies in such an instance, and because there is no caselaw addressing the TSCPA's applicability, the Court finds that there is no controlling law on this question.

28

Further, as discussed *supra*, the applicability of the TSCPA is determinative of many of the plaintiffs' claims in these cases, as there appears to be no dispute that many plaintiffs cannot meet the relevant latency period, substantial occupational exposure, or competent medical authority opinion requirements. Thus, if the TSCPA applies to these cases, such plaintiffs' claims must necessarily be dismissed.

## IV.   CONCLUSION

Accordingly, it is hereby **ORDERED** that the following questions of law are certified to the Supreme Court of Tennessee:

> (1)    Are the requirements of the TSCPA an affirmative defense that must be pleaded in a responsive pleading, or are they prima facie requirements which can be raised at any stage of litigation?

> (2)    Do the TSCPA's requirements apply to all cases involving exposure to silica or mixed dust, or, if coal ash is silica or mixed dust within the meaning of the TSCPA, are plaintiffs' claims exempted from the TSCPA's requirements because they are raised under the common law?

> (3)    Does coal ash, which contains silica, fibrogenic dusts, and other components that may cause injury, but are not "fibrogenic dusts," constitute "silica" or "mixed dust" such that the requirements of the TSCPA would apply in these cases?

> (4)    If coal ash does qualify as silica or mixed dust, does the TSCPA apply even if plaintiffs' claims are based on injury resulting from exposure to elements of coal ash that are not silica or fibrogenic dusts?

This certification order shall be filed and served pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee. The parties are **DIRECTED** to follow the briefing schedule set forth in that Rule. Pursuant to Rule 23, Defendant Jacobs is **DESIGNATED** as the moving party. The style of the case is Greg Adkisson, *et al.*, v. Jacobs Engineering

Group, Inc.  As required by Rule 23, the following are noted as being the counsel of record for the respective parties:

| Counsel for Plaintiffs | Counsel for Defendant |
|---|---|
| Alex R. Straus<br>Arthur M. Stock<br>***Greg Coleman Law PC***<br>800 S. Gay Street, Suite 1100<br>Knoxville, TN 37929<br>865-247-0080 | Alejandro L. Sarria<br>***Covington & Burling, LLP (DC)***<br>850 Tenth Street, NW<br>Washington, DC 20002<br>(202) 626-5822 |
| Gary A. Davis<br>James S. Whitlock<br>***Davis & Whitlock, PC***<br>21 Battery Park Avenue, Suite 206<br>Asheville, NC 28801<br>828-622-0044 | Dwight E. Tarwater<br>Catherine Williams Anglin<br>***Paine Tarwater & Bickers LLP***<br>900 South Gay Street, Suite 2200<br>Knoxville, TN 37902<br>865-525-0880 |
| Jeff Friedman<br>***Friedman, Dazzio, Zulanas<br> & Bowling, P.C.***<br>3800 Corporate Woods Drive<br>P.O. Box 43219<br>Birmingham, AL 35242<br>205-278-7000 | Diana M. Feinstein<br>Jeremy S. Smith<br>Peter S. Modlin<br>Theane Evangelis<br>Theodore Boutrous, Jr<br>***Gibson, Dunn & Crutcher, LLP***<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>213-229-7000 |
| Keith D. Stewart<br>John Tyler Roper<br>***Market Street Law, PLLC***<br>625 Market Street, 7th Floor<br>Knoxville, TN 37902<br>865-245-0989 | James F. Sanders<br>James Issac Sanders<br>Marie T. Scott<br>Nathan Clay Sanders<br>William J. Harbison , II<br>***Neal & Harwell, PLC***<br>1201 Demonbruen Street, Suite 1000<br>Nashville, TN 37203<br>615-244-1713 |

30

| Counsel for Plaintiffs (continued) |
|---|
| Jonathan B. Cohen<br>Louis W. Ringger III<br>Mark E. Silvey<br>Ryan P. McMillan<br>William Andrew Ladnier<br>Adam Arthur Edwards<br>Greg Frederic Coleman<br>Justin G. Day<br>***Milberg Coleman Bryson Phillips<br>Grossman, PLLC***<br>800 S. Gay Street, Suite 1100<br>Knoxville, TN 37929<br>865-247-0800 |
| John B. Dupree<br>***Bridgefront Law Group, PLLC***<br>616 W. Hill Avenue, 2nd Floor<br>Knoxville, TN 37902<br>(865) 223-5184 |

It is further **ORDERED** that the *Adkisson* line of cases are hereby **STAYED** pending the Tennessee Supreme Court's decision regarding the certified questions, or until such earlier time as the Court may order. Likewise, the currently stayed cases will remain stayed pending the Tennessee Supreme Court's decision. The cases will remain stayed until further order of the Court. In light of this order, the parties' joint motion for a status conference [Doc. 751] is **DENIED as moot**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

31